No. 2022-1249

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,

*Plaintiffs-Appellants*,

*v.*

ANDREW HIRSHFELD, Performing the Functions and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of California in Case No. 5:20-cv-06128-EJD, Judge Edward J. Davila

## BRIEF FOR PLAINTIFFS-APPELLANTS APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, AND EDWARDS LIFESCIENCES LLP

CHRISTY G. LEA
JOHN B. SGANGA
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

*Attorneys for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC*

NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-3343

*Attorney for Plaintiff-Appellant Google LLC*

February 8, 2022

MARK D. SELWYN
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

CATHERINE M.A. CARROLL
DAVID M. LEHN
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

*ADDITIONAL ATTORNEYS LISTED ON INSIDE COVER*

ANDREW T. DUFRESNE
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7492

*Attorney for Plaintiff-Appellant Google LLC*

REBECCA M. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1002

ALYSON M. ZUREICK
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

## CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation certifies the following:

1. **Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc., Cisco Systems, Inc., and Intel Corporation.

2. **Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3. **Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

4. **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

5. **Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: February 8, 2022

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Google LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Google LLC.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

XXVI Holdings Inc.; Alphabet Inc.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

PERKINS COIE LLP: Daniel T. Shvodian, Theresa Nguyen.

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: February 8, 2022

/s/ Nathan K. Kelley

NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 800
Washington, D.C. 20005
(202) 654-3343

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Edwards Lifesciences Corporation and Edwards Lifesciences LLC.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: February 8, 2022

/s/ Christy Green Lea

CHRISTY GREEN LEA
KNOBBE, MARTENS, OLSON
& BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

# TABLE OF CONTENTS

Page

CERTIFICATES OF INTEREST

TABLE OF AUTHORITIES ........ ix

STATEMENT OF RELATED CASES ........ 1

JURISDICTIONAL STATEMENT ........ 1

INTRODUCTION ........ 2

STATEMENT OF ISSUE ON APPEAL ........ 9

STATEMENT OF THE CASE ........ 9

A. IPR's Role In The Patent System ........ 9

B. AIA Provisions Coordinating IPR And Litigation ........ 11

C. The *NHK-Fintiv* Rule ........ 13

D. Proceedings Below ........ 19

SUMMARY OF THE ARGUMENT ........ 23

ARGUMENT ........ 26

I. STANDARD OF REVIEW ........ 26

II. APPELLANTS' CLAIMS ARE JUSTICIABLE UNDER THE APA ........ 27

A. Section 314(d) Does Not Apply ........ 29

1. Section 314(d) applies only to determinations whether to institute IPR ........ 29

2. The district court erred in stretching § 314(d) to bar review of PTO rules governing the institution decision ........ 33

B. Even If § 314(d) Applied In The First Place, Appellants' Claims Would Fall Within Established Exceptions To That Bar ....................39

1. Section 314(d) does not foreclose Appellants' arbitrary-and-capricious and notice-and-comment claims ....................40

2. Section 314(d) does not foreclose Appellants' claim that the *NHK-Fintiv* Rule exceeds the Director's authority under the AIA ....................43

CONCLUSION ....................47

STATEMENT OF CONSENT

ADDENDUM

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abbott Laboratories v. Gardner*,
387 U.S. 136 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)....................*passim*

*Block v. Community Nutrition Institute*,
467 U.S. 340 (1984)....................*passim*

*Bowen v. Michigan Academy of Family Physicians*,
476 U.S. 667 (1986)....................7, 23, 27

*Cuozzo Speed Technologies, LLC v. Lee*,
579 U.S. 261 (2016)....................*passim*

*Department of Homeland Security v. Regents of University of California*,
140 S. Ct. 1891 (2020)....................8, 24, 36, 37

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020)....................31, 42

*Finjan, Inc. v. Symantec Corp.*,
139 F. Supp. 3d 1032 (N.D. Cal. 2015)....................13

*Hyatt v. Office of Management & Budget*,
908 F.3d 1165 (9th Cir. 2018)....................39

*Hyatt v. United States Patent & Trademark Office*,
797 F.3d 1374 (Fed. Cir. 2015)....................26

*Johnson* v. *Robison*,
415 U.S. 361 (1974)....................45

*Judulang v. Holder*,
565 U.S. 42 (2011)....................46

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019)....................41

*Lindahl v. Office of Personnel Management*,
470 U.S. 768 (1985)....................................................................26, 38, 39, 45

*Mach Mining, LLC v. Equal Employment Opportunity Commission*,
575 U.S. 480 (2015)...............................................................................................27

*Motor Vehicle Manufacturers Association of the Uniteds States, Inc. v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983)........................................................................................ 5-6, 42

*Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*,
989 F.3d 1375 (Fed. Cir. 2021), *cert. denied*, __ S. Ct. __, 2022 WL 145242 (Jan. 18, 2022) ...........................................................29, 30, 33, 46

*NFC Technology LLC v. HTC America, Inc.*,
No. 2:13-cv-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015)....................11

*Odyssey Logistics & Technology Corp. v. Iancu*,
959 F.3d 1104 (Fed. Cir. 2020) .........................................................................27

*Pregis Corp. v. Kappos*,
700 F.3d 1348 (Fed. Cir. 2012) .............................................................32, 33, 46

*Sackett v. Environmental Protection Agency*,
566 U.S. 120 (2012)...............................................................................................32

*Saint Regis Mohawk Tribe v. Mylan Pharmaceuticals, Inc.*,
896 F.3d 1322 (Fed. Cir. 2018) .........................................................................34

*SAS Institute Inc. v. Iancu*,
138 S. Ct. 1348 (2018)..................................................................................*passim*

*State Farm Fire & Casualty Co. v. United States ex rel. Rigsby*,
137 S. Ct. 436 (2016)..............................................................................................30

*Stephens v. United States*,
884 F.3d 1151 (Fed. Cir. 2018) ..................................................................... 26-27

*Thryv, Inc.* v. *Click-To-Call Technologies, LP*,
140 S. Ct. 1367 (2020)..................................................................................*passim*

*U.S. Telecom Association v. Federal Communications Commission*,
400 F.3d 29 (D.C. Cir. 2005)........................................................................ 30-31

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) ....................................................................26

**STATUTES AND REGULATIONS**

5 U.S.C.
§ 553..............................................................................................6, 31, 41
§ 701..................................................................................................23, 27
§ 702......................................................................................................1, 27
§ 704..........................................................................................23, 27, 31
§ 706.............................................................................................*passim*
§ 8347..........................................................................................................39

8 U.S.C.
§ 1252..........................................................................................................37

28 U.S.C.
§ 1295..............................................................................................................1
§ 1331..............................................................................................................1

35 U.S.C.
§ 2.................................................................................................................30
§ 311..............................................................................................10, 11
§ 314.............................................................................................*passim*
§ 315...................................................................................11, 12, 13, 14
§ 316.............................................................................................*passim*
§ 325...........................................................................................................13

Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ...........................................1

America Invents Act, 35 U.S.C. §§ 311 *et seq.* .......................................................1

37 C.F.R.
§ 42.2.........................................................................................................13
§ 42.4.........................................................................................................13
§ 42.51.......................................................................................................11
§ 42.100.....................................................................................................11
§ 42.107.....................................................................................................11
§ 42.108.....................................................................................................13

**LEGISLATIVE MATERIAL**

157 Cong. Rec. S1326 (daily ed. Mar. 7, 2011) ....................................................12

157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) ....................................................10

157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011)....................................................12

H.R. Rep. No. 112-98 (2011)........................................................................9, 10

S. 23, 112th Cong. Sec. 5(a), § 315(b) (2011)......................................................12

**P.T.A.B. PROCEEDINGS**

*Apple Inc. v. Fintiv, Inc.*,
No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020)......14, 15, 16

*Apple Inc. v. Fintiv, Inc.*,
No. IPR2020-00019, 2020 WL 2486683 (P.T.A.B. May 13, 2020) ..................18

*Apple Inc. v. Maxell, Ltd.*,
No. IPR2020-00203, 2020 WL 3662522 (P.T.A.B. July 6, 2020).....................17

*Cisco Systems, Inc. v. Ramot at Tel Aviv University Ltd.*,
No. IPR2020-00122, 2020 WL 2511246 (P.T.A.B. May 15, 2020) ..................17

*Edwards Lifesciences Corp. v. Evalve, Inc.*,
No. IPR2019-01479, 2020 WL 927867 (P.T.A.B. Feb. 26, 2020).....................17

*Edwards Lifesciences Corp. v. Evalve, Inc.*,
No. IPR2019-01546, 2020 WL 1486766 (P.T.A.B. Mar. 19, 2020)..................17

*Google LLC v. Ikorongo Technology LLC*,
No. IPR2021-00204, Paper 16 (P.T.A.B. Jan. 25, 2022) ..................................17

*Google LLC v. Ikorongo Technology LLC*,
No. IPR2021-00205, Paper 16 (P.T.A.B. Jan. 25, 2022) ..................................18

*Google LLC v. Uniloc 2017 LLC*,
No. IPR2020-00115, 2020 WL 1523248 (P.T.A.B. Mar. 27, 2020)..................17

*Intel Corp. v. VLSI Technology LLC*,
No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020) ....................18

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*,
No. IPR2018-00752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018) ...........14, 16

*Supercell Oy v. GREE Inc.*,
No. IPR2020-00513, 2020 WL 3455515 (P.T.A.B. June 24, 2020) .................. 16

## OTHER AUTHORITIES

Fitbit Amicus Brief, *Apple v. Iancu*, No. 5:20-cv-6128 (N.D. Cal. Dec. 30, 2020), ECF No. 86 ........................................................................................ 4

HTIA, *Comments of the High Tech Inventors Alliance* (Dec. 2, 2020) https://www.regulations.gov/comment/PTO-C-2020-0055-0819........................ 5

Monolithic Power Systems et al. Amicus Brief, *Apple Inc. v. Iancu*, No. 5:20-cv-6128 (N.D. Cal. Dec. 3, 2020), ECF No. 73-2................................. 4

Patent Trial & Appeal Board, *Standard Operating Procedure 2* (rev. 10 Sept. 20, 2018) ..................................................................................... 3, 16

Pelletier, Pauline et al., *How West Texas Patent Trial Speed Affects PTAB Denials*, Law360.com (Feb. 16, 2021)...................................................... 5

RPX, *Institution Rates Continue Their Downward Slide as* NHK-Fintiv *Rule Limits IPR Access* (Oct. 20, 2021), https://www.rpxcorp.com/data-byte/institution-rates-continue-their-downward-slide-as-nhk-fintiv-rule-limits-ipr-access .................................. 4

Unified Patents, "Portal," https://tinyurl.com/xwmajkyx....................................... 16

Verizon et al. Amicus Brief, *Apple v. Iancu*, No. 5:20-cv-6128 (N.D. Cal. Feb. 4, 2021), ECF No. 100-2 ........................................................................ 4

*VLSI Technology LLC v. Intel Corp.*, No. 1:19-cv-977, Dkt. 568 (W.D. Tex. Nov. 12, 2021) ........................................................................................ 18

*VLSI Technology LLC v. Intel Corp.*, No. 1:19-cv-977, Dkt. 596 (W.D. Tex. Jan. 25, 2022)......................................................................................... 18

*VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057, Dkt. 564 (W.D. Tex. Mar. 2, 2021) .......................................................................................... 19

*VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00299, Dkt. 549 (W.D. Tex. Apr. 21, 2021)......................................................................................... 19

## STATEMENT OF RELATED CASES

No appeal from the same proceeding was previously before this Court or any other appellate court. No case known to be pending in this or any other court or agency will directly affect or be directly affected by this Court's decision here.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331. The Director has waived sovereign immunity for purposes of this suit. 5 U.S.C. § 702. As explained below, this suit is justiciable under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*

The district court dismissed Appellants' amended complaint on November 10, 2021, Appx1-11, and entered final judgment in favor of the Director on December 13, 2021, Appx12. Appellants filed a timely notice of appeal on December 8, 2021. Appx1546-1550. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1) because the district court's order disposed of all parties' claims in an action arising in part under the America Invents Act, 35 U.S.C. §§ 311 *et seq.* ("AIA"), an "Act of Congress relating to patents," 28 U.S.C. § 1295(a)(1).

## INTRODUCTION

This appeal presents the question whether 35 U.S.C. § 314(d) precludes judicial review of agency rules adopted by the Director of the Patent and Trademark Office ("PTO") to establish standards governing the decision whether to institute inter partes review ("IPR"). The district court held that it does. In doing so, the court conflated claims challenging specific institution decisions with claims challenging agency rules governing institution decisions. Section 314(d) applies only to the former, while this case involves only the latter. The district court accordingly had jurisdiction and erred in dismissing the case without addressing the merits.

The district court's approach leaves the PTO free to adopt any rule governing institution, no matter how unlawful or irrational, with no judicial scrutiny. Moreover, even if § 314(d) could shield agency rules—as opposed to institution decisions—the district court further erred in assuming that it applies to the types of claims presented here, which fall within exceptions to § 314(d) established by the Supreme Court. This Court should reverse the district court's expansive interpretation of § 314(d), which undermines the purpose of IPR by allowing the PTO to restrict access to it without judicial oversight.

Since its adoption by the former PTO Director, the rule challenged in this case—the *NHK-Fintiv* Rule—has sharply undermined access to IPR, contrary to

the AIA, which permits IPR to proceed in parallel with pending district court patent-infringement litigation involving the same patent. When an IPR petition challenges a patent that is also at issue in pending patent-infringement litigation, the *NHK-Fintiv* Rule requires the Patent Trial and Appeal Board ("PTAB" or "Board") to deny institution of IPR if it determines that IPR would be inefficient in light of the overlapping lawsuit, with particular weight placed on the PTAB's speculation about the likely trial date. The Director gave no justification for the *NHK-Fintiv* Rule and provided no public notice or opportunity for public comment. He instead decreed it through a nonstatutory internal PTO procedure by designating two decisions of the PTAB "precedential" and therefore "binding" on the PTAB. *See* Patent Trial and Appeal Board, *Standard Operating Procedure 2* ("SOP-2"), at 11 (rev. 10 Sept. 20, 2018). Heeding that requirement, the PTAB has applied the Rule to deny hundreds of IPR petitions due to overlapping infringement litigation, even where the petitioner's patentability arguments are likely to succeed—very often based on trial timing predictions that turn out to be wrong. Appx1140-1143. The PTAB has held that it has no authority to deviate from the Rule, and this Court has held that § 314(d) bars review of individual institution decisions based on the Rule.

Concern about the arbitrariness of the *NHK-Fintiv* Rule and its consequences has been widespread. As commentators and litigants across a range

of industries have expressed, the Rule has dramatically reduced access to IPR, thereby undermining Congress's efforts in the AIA to improve the integrity of the patent system.[1] And the Rule often forecloses the availability of IPR in precisely the circumstances when Congress thought it would be most useful—*i.e.*, when a patent holder asserts infringement of a dubious patent in court.

The *NHK-Fintiv* Rule also yields absurd results that have aggravated forum-shopping by patent-infringement plaintiffs. Because the Rule places so much weight on initial trial dates, infringement plaintiffs have increasingly flocked to district courts known for setting early trial dates and then relied on those initial—entirely notional—scheduling orders to secure denial of the infringement defendant's IPR petition under the *NHK-Fintiv* Rule.[2] That tactic has succeeded in

---

[1] *See, e.g.*, Verizon et al. Amicus Br., *Apple v. Iancu*, No. 5:20-cv-6128 (N.D. Cal. Feb. 4, 2021), ECF No. 100-2; Fitbit Amicus Br., *Apple v. Iancu*, No. 5:20-cv-6128 (N.D. Cal. Dec. 30, 2020), ECF No. 86; Monolithic Power Systems et al. Amicus Br., *Apple Inc. v. Iancu*, No. 5:20-cv-6128 (N.D. Cal. Dec. 3, 2020), ECF No. 73-2; *see also* RPX, *Institution Rates Continue Their Downward Slide as* NHK-Fintiv *Rule Limits IPR Access* (Oct. 20, 2021), https://www.rpxcorp.com/data-byte/institution-rates-continue-their-downward-slide-as-nhk-fintiv-rule-limits-ipr-access.

[2] *E.g.*, Pelletier et al., *How West Texas Patent Trial Speed Affects PTAB Denials*, Law360 (Feb. 16, 2021), https://www.law360.com/articles/1355139/how-west-texas-patent-trial-speed-affects-ptab-denials (finding 845 percent increase in infringement suits from 2018 to 2020 in Waco Division of Western District of Texas); HTIA, *Comments of the High Tech Inventors Alliance* 5 (Dec. 2, 2020) https://www.regulations.gov/comment/PTO-C-2020-0055-0819 (finding the Western and Eastern Districts of Texas together account for nearly 80 percent of *NHK-Fintiv* denials).

dozens of cases even though trials are frequently rescheduled—often after it is too late for the PTAB to correct its denial. Appx1141-1142.

These consequences should never have come to pass because the *NHK-Fintiv* Rule is legally invalid for at least three reasons—reasons the district court should have assessed on the merits. First, the *NHK-Fintiv* Rule violates the AIA, whose text, structure, and purpose show that Congress intended IPR to be available despite parallel infringement litigation so long as the petition is filed within one year after the petitioner was served with the infringement complaint. Although the Director has discretion to deny even timely IPR petitions, he cannot exercise that discretion in a manner that violates the AIA, which allows—even encourages—accused infringers to petition for IPR any time within the one-year period and to raise in IPR the same issues raised in defense of the infringement suit.

Second, the *NHK-Fintiv* Rule is arbitrary and capricious in violation of the APA. It requires the PTAB to speculate about the course of litigation, leading to irrational decisions as the PTAB relies on provisional trial dates that are later rescheduled. The Rule also incentivizes conduct by IPR petitioners and infringement plaintiffs that reduces efficiency—contrary to the agency's (and Congress's) stated goal. The APA required the Director to consider these issues and provide a reasoned explanation for the Rule, *see Motor Vehicle Mfrs. Ass'n of*

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); 5 U.S.C. § 706(2)(A), yet the Director gave no explanation at all.

Finally, the *NHK-Fintiv* Rule violates the APA because the Director adopted it without notice-and-comment rulemaking. *NHK-Fintiv* establishes a substantive rule defining circumstances under which IPR petitions should be denied that the PTAB is bound to follow in every case. The APA requires the Director to provide public notice and an opportunity for public comment when adopting such a rule. 5 U.S.C. § 553(b), (c). Yet the Director provided none.

Appellants, which have each had numerous IPR petitions denied under the *NHK-Fintiv* Rule, brought this lawsuit under the APA to challenge the Rule on these grounds. The complaint does not seek to undo any institution decision. Rather, like any conventional APA challenge to an agency rule, it seeks prospective relief declaring the Rule unlawful, setting it aside, and preventing the PTO from denying future IPR petitions on the basis of that unlawful rule.

The district court nevertheless granted the Director's motion to dismiss for lack of jurisdiction, relying on 35 U.S.C. § 314(d). Appx9-11. In doing so, the district court elided the fundamental distinction between appeals from specific institution decisions and challenges to agency rules governing all institution decisions. This lawsuit does not seek review of any "determination by the Director whether to institute [IPR]." 35 U.S.C. § 314(d). But the district court concluded

that § 314(d) should extend not only to appeals from institution decisions, but also to suits challenging "the Director's determination that parallel litigation is a factor in denying IPR," reasoning that both types of cases require analysis and interpretation of institution-related statutes. Appx10 (citing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 274-275 (2016)).

The district court's decision is wrong as a matter of law. The APA embodies a "strong presumption" of reviewability of agency action, *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986), which can be overcome "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent" to restrict access to judicial review, *Abbott Labs. v. Gardner*, 387 U.S. 136, 140-141 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Section 314(d), which bars review only of "determination[s] by the Director whether to institute [IPR]," 35 U.S.C. § 314(d), evinces no such intent to preclude judicial review of the PTO's rules and regulations governing institution of IPR. By stretching § 314(d) to bar not only appeals from institution decisions, but also any other action entailing an analysis of "statutes related to" the institution decision, Appx10-11, the district court distorted the statutory text and contravened Supreme Court precedent, which has expressly rejected such a broad reading. *See SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018). The court also disregarded the presumption of reviewability. Statutory bars on judicial review are

to be construed narrowly, not expanded to preclude cases not covered by their plain terms. *See Department of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020).

Moreover, even where § 314(d) applies, "judicial review remains available consistent with the [APA]," *SAS*, 138 S. Ct. at 1359, when a litigant asserts that the PTO has "exceed[ed] its statutory bounds," *id.*, challenges agency action as "arbitrary [and] capricious," *Cuozzo*, 579 U.S. at 275, or raises questions not "closely tied to the application and interpretation of statutes related to" the institution decision, *id.* at 261. Those exceptions apply here, yet the district court considered none of them. If § 314(d) does not bar review of such claims even when raised on direct appeal of a specific institution decision, then *a fortiori* it does not bar them here.

The district court construed § 314(d) to do precisely what the Supreme Court has said it does not do: "enable the [PTO] to act outside its statutory limits." *Cuozzo*, 579 U.S. at 275. Under the district court's expansive reading, the PTO could adopt any rule setting standards to govern institution free from any judicial scrutiny—no matter how unlawful. The agency could adopt rules decreeing that IPR petitions must be resolved by a coin flip; that all IPR petitions must be denied unless filed within 30 days after service of an infringement complaint; or that all IPR petitions should be denied automatically. Neither the AIA nor the APA

permits, much less requires, such a result. By treating such rules as if they are immune from judicial review, the district court's decision undermines IPR as a tool that Congress determined to be essential to the integrity of the patent system. The decision below should be reversed and the case remanded for resolution of Appellants' claims on the merits.

## STATEMENT OF ISSUE ON APPEAL

Whether 35 U.S.C. § 314(d) bars Appellants' challenge to the *NHK-Fintiv* Rule, where Appellants' suit does not seek to appeal any institution decision but instead seeks to set the Rule aside under the APA on the grounds that the Rule exceeds the Director's authority, is arbitrary and capricious, and was unlawfully adopted without notice-and-comment rulemaking.

## STATEMENT OF THE CASE

### A. IPR's Role In The Patent System

More than a decade ago, Congress became "concerned about overpatenting and its diminishment of competition," *Thryv, Inc.* v. *Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020), concluding after extensive study and debate that "questionable patents [were] too easily obtained and … too difficult to challenge," H.R. Rep. No. 112-98, at 39-40 (2011) ("House Report"). In response, Congress enacted the AIA to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation

costs." *Id*. at 40. A centerpiece of the AIA's reforms was IPR, an administrative process by which the PTAB reconsiders the patentability of previously granted patents. 35 U.S.C. § 311; *see Thryv*, 140 S. Ct. at 1370.

Congress intended IPR to provide a "cost effective alternative[] to litigation" over patent validity, House Report at 40, 48, that takes advantage of "the expertise of the Patent Office on questions of patentability," 157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) (Sen. Udall); *see also, e.g.*, House Report at 40 (IPR "limit[s] unnecessary and counterproductive litigation costs"). Unlike a jury's general verdict, the PTAB's final written decision in an IPR facilitates more informed appellate review by this Court of patentability issues. IPR is also more streamlined than litigation: An IPR petitioner may challenge a patent "only" on limited grounds, 35 U.S.C. § 311(b); discovery is limited, *id.* § 316(a)(5); 37 C.F.R. § 42.51; and strict deadlines generally require resolution of IPR within 18 months after a petition is filed, 35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. §§ 42.100, 42.107. Section 314(d) in turn cabins appeals to ensure that final written decisions cannot be "unwound" after IPR is complete based on technical defects in the institution decision. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016).

IPR thus plays a vital role in the patent system by allowing any person, including an accused patent infringer, to ask the PTO to reconsider the patentability of a previously granted patent to "weed out bad patent claims" that

never should have issued. *Thryv*, 140 S. Ct. at 1374. Indeed, the Director has conceded that restricting access to IPR would "caus[e] serious harm to any party seeking to lawfully challenge patent claims via [IPR]." Appx1094.

**B. AIA Provisions Coordinating IPR And Litigation**

Congress expected that IPR would often proceed in parallel with litigation in which the same patent is at issue—particularly where an infringement defendant challenges the asserted patent through IPR. Indeed, IPR was "designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J., sitting by designation). Several provisions of the AIA reflect that expectation by dictating when and how IPR may be conducted when parallel litigation involving the same patent is pending.

Of particular relevance, the AIA prohibits IPR if the petition "is filed more than 1 year after the date on which the petitioner … is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b). That provision thus permits IPR with regard to patent claims asserted in a pending infringement suit so long as the petition is filed within the one-year window. Through § 315(b), Congress addressed the potential for overlap by balancing the potential harms of

delay against IPR petitioners' need for time to identify and evaluate the patent claims relevant to the litigation. *See* 157 Cong. Rec. S1326 (daily ed. Mar. 7, 2011) (Sen. Sessions); 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (Sen. Kyl). Congress accordingly rejected a proposed requirement that IPR petitions be filed within just six months after an infringement suit's start. *Id.*; *see* S. 23, 112th Cong. Sec. 5(a), § 315(b) (2011) (engrossed bill setting six-month limit).

The AIA further specifies when and how IPR may proceed when parallel litigation is pending. For example, the Director "may not" institute IPR if the petitioner previously "filed a civil action challenging the validity of a claim of the [same] patent," 35 U.S.C. § 315(a)(1), but that bar does not apply if the petitioner's previous challenge to the patent was made by counterclaim to an infringement suit, *id.* § 315(a)(3). And if the petitioner files a civil action challenging a patent *after* petitioning for IPR, the lawsuit is "automatically stayed"—unless and "until" the patent owner asserts an infringement claim against the IPR petitioner, at which point the stay is lifted and the infringement litigation may proceed, *id.* § 315(a)(2)(B).

Congress thus left no doubt that an accused infringer may obtain IPR in parallel with an infringement lawsuit involving the same patent, as long as the IPR petition is timely filed. That contrasts sharply with how the AIA handles other types of parallel proceedings, which the statute expressly entrusts to the Director's

discretion. The AIA states that "[i]n determining whether to institute [IPR], the Director may … reject the petition … because[] the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d). And the AIA provides that the Director "may … stay … or terminat[e]" IPR "if another proceeding or matter involving the [same] patent is before the Office." *Id.* § 315(d). But no comparable provision authorizes the Director to decline to conduct IPR based on overlap with a pending infringement lawsuit.

### C. The *NHK-Fintiv* Rule

The Director has delegated authority to institute IPR to the PTAB, *see* 37 C.F.R. §§ 42.2, 42.4(a), 42.108, and for several years after the AIA took effect, the PTAB applied the AIA's statutory criteria (and other standards adopted through duly promulgated regulations) to grant or deny IPR petitions without regard to related litigation. When litigation coincided with administrative proceedings, courts routinely stayed the litigation to "'effectuate[] the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patent-in-suit before costly litigation continues.'" *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1038 (N.D. Cal. 2015); *see id.* at 1035 (recognizing "'liberal policy'" in favor of stays pending PTO proceedings).

Beginning in 2018, however—seven years after the AIA's enactment—the PTAB began asserting authority to deny IPR petitions based on the pendency of infringement litigation involving the same patent claims, even where the IPR petition was filed within § 315(b)'s one-year limit and meets all other statutory prerequisites. In *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, the PTAB stated that "the advanced state of the [overlapping] district court proceeding is an additional factor that weighs in favor of denying the [IPR] Petition." No. IPR2018-00752, 2018 WL 4373643, at *7 (P.T.A.B. Sept. 12, 2018). Based on the projected trial date in an overlapping infringement suit, the PTAB concluded that conducting IPR "would be an inefficient use of Board resources." *Id.* As authority for denying the IPR petition based on the pending overlapping litigation, the PTAB cited only 35 U.S.C. § 314(a). *Id.* That provision states that "the Director may not" institute IPR "unless" the Director finds a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

In *Apple Inc. v. Fintiv, Inc.*, the PTAB elaborated on *NHK*, enumerating six factors it would weigh in deciding whether to deny an IPR petition in light of overlapping infringement litigation. No. IPR2020-00019, 2020 WL 2126495, at *2 (P.T.A.B. Mar. 20, 2020). Those factors, none of which appears in the AIA, are:

1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;
2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;
3. investment in the parallel proceeding by the court and the parties;
4. overlap between issues raised in the petition and in the parallel proceeding;
5. whether the petitioner and the defendant in the parallel proceeding are the same party; and
6. other circumstances that impact the Board's exercise of discretion, including the merits.

*Id.* These factors, the PTAB suggested, "relate to whether efficiency, fairness, and the merits support the exercise of authority to deny institution in view of an earlier trial date in the parallel proceeding." *Id.* at *3.

As in *NHK*, the PTAB in *Fintiv* purported to derive authority for its approach and the nonstatutory factors from 35 U.S.C. § 314(a). *See Fintiv*, 2020 WL 2126495, at *1-3. The PTAB also cited 35 U.S.C. § 316(b), which provides that "[i]n prescribing regulations under [§ 316], the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system,

the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter." *Id.* at *3.

"[B]y default," PTAB decisions are not binding in later cases. SOP-2, at 3, 8-9. The Director, however, has authority to designate PTAB decisions as "precedential," which makes them "binding" on the PTAB "in subsequent matters involving similar facts or issues." *Id.* at 11. Without providing public notice or opportunity for comment, and without providing any explanation for his action, the Director designated *NHK* "precedential" in May 2019 and did the same with *Fintiv* in May 2020, *see* 2018 WL 4373643; 2020 WL 2126495. The Director thus made those decisions binding on the PTAB and thereby adopted the *NHK-Fintiv* Rule, which embodies the policy that IPR petitions must be denied where the PTAB determines that conducting IPR would be inefficient in light of pending overlapping infringement litigation. Appx1140.

In the short time since the Rule's adoption, the PTAB has applied the *NHK-Fintiv* Rule to deny hundreds of IPR petitions. *See* Unified Patents, "Portal," https://tinyurl.com/xwmajkyx. Although IPR petitioners have argued that focusing on trial dates is misplaced and that early trial dates do not necessarily mean that instituting IPR would be inefficient, the PTAB has declined even to consider those arguments because it is bound by the *NHK-Fintiv* Rule. *E.g.*, *Supercell Oy v. GREE Inc.*, No. IPR2020-00513, 2020 WL 3455515, at *7 (P.T.A.B. June 24,

2020); *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00203, 2020 WL 3662522, at *7 (P.T.A.B. July 6, 2020).

In scores of cases, the PTAB has accordingly denied IPR petitions based on the scheduled date for trial in overlapping infringement litigation, only for trial to be rescheduled—often after it is too late for the IPR petitioner to seek reconsideration of the PTAB's decision. Appx1140-1143; *see, e.g.*, *Edwards Lifesciences Corp. v. Evalve, Inc.*, Nos. IPR2019-01479, 2020 WL 927867 (P.T.A.B. Feb. 26, 2020), and IPR2019-01546, 2020 WL 1486766 (P.T.A.B. Mar. 19, 2020); *Google LLC v. Uniloc 2017 LLC*, No. IPR2020-00115, 2020 WL 1523248 (P.T.A.B. Mar. 27, 2020); *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00122, 2020 WL 2511246, at *4 (P.T.A.B. May 15, 2020); *but see Google LLC v. Ikorongo Tech. LLC*, Nos. IPR2021-00204, Paper 16 (P.T.A.B. Jan. 25, 2022), and IPR2021-00205, Paper 16 (P.T.A.B. Jan. 25, 2022) (initially denying petition based on trial schedule but then instituting only because that schedule changed before the PTAB rehearing window closed). In *Fintiv* itself, for example, the PTAB denied Apple's timely IPR petition based on the *NHK-Fintiv* Rule, explaining:

> [T]rial is scheduled to begin two months before we would reach a final decision …, the District Court has expended effort resolving substantive issues in the case, the identical claims are challenged based on the same prior art in both the Petition and in the District Court, and the defendant in District Court and the Petitioner here are the same party.

*Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2486683, at *3, *7 (P.T.A.B. May 13, 2020). But after the PTAB denied Apple's IPR petition in reliance on the upcoming trial date, trial was postponed. Had the PTAB instituted the IPR in *Fintiv*, the PTAB would have completed IPR by May 2021, well before the district court trial occurred—in fact, the trial still has not occurred.

Similarly, in *Intel Corp. v. VLSI Technology LLC*, the PTAB denied several of Intel's IPR petitions pursuant to the *NHK-Fintiv* Rule because, at the time of the PTAB's decision, trials in three different infringement lawsuits involving overlapping patent claims were all scheduled to begin in the same court on October 5, 2020, which would have preceded the PTAB's deadline to issue a final written decision if IPR were instituted. No. IPR2020-00106, 2020 WL 2201828, at *3 (P.T.A.B. May 5, 2020). The PTAB acknowledged the obvious fact that the three trials could not possibly all begin on October 5. *Id.* But it concluded that the bare possibility that one trial might begin before the IPR would conclude weighed against institution. *Id.* In the end, all three trials were delayed into 2021, and in one instance, trial was rescheduled to December 2021—months after the deadline for an IPR decision—and then postponed again until April 2022, eighteen months after the original date the PTAB relied on. Order Setting Jury Selection and Trial, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-977, Dkt. 596 (W.D. Tex. Jan. 25, 2022); Order Canceling Jury Selection & Trial, *id.*, Dkt. 568 (W.D. Tex. Nov. 12,

2021); *see also VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00299, Dkt. 549 (W.D. Tex. Apr. 21, 2021) (verdict); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057, Dkt. 564 (W.D. Tex. Mar. 2, 2021) (verdict).

### D. Proceedings Below

Appellants are worldwide leaders in developing transformative, cutting-edge technologies that depend on a strong patent system to protect the massive research and development investments that fuel Appellants' innovative products and services. Appx1131; Appx1134-1136. As frequent targets of patent-infringement suits, Appellants regularly file IPR petitions that relate to overlapping infringement litigation. Appx1131; Appx1140-1144. Since the Director's adoption of the *NHK-Fintiv* Rule, however, Appellants have had numerous IPR petitions denied under that Rule based on the pendency of parallel patent-infringement litigation, and they face the likely prospect that their IPR petitions will continue to be denied under the Rule in the future. Appx1140-1144.

Appellants accordingly brought this suit challenging the *NHK-Fintiv* Rule as unlawful and seeking to set it aside under the APA. Appx1132; Appx1144-1150. Appellants asserted three claims. Count I alleged that the *NHK-Fintiv* Rule exceeds the Director's statutory authority because the AIA, construed in light of its plain text, context, and purpose, prohibits the Director from denying IPR petitions based on overlap with pending patent-infringement litigation as long as the petition

is filed within one year after service of the complaint. Appx1144-1146; Appx1148-1149. Whatever discretion the Director has to decide whether to institute IPR, he cannot exercise that discretion in a manner that violates the statute. And here, the AIA contemplates that IPR and related litigation may proceed together and establishes specific rules governing parallel suits while giving the Director no authority to deny institution based on a parallel lawsuit. Appx1144-1146; Appx1265-1273.

Count II alleged that the *NHK-Fintiv* Rule is arbitrary and capricious in violation of the APA because it rests on irrational factors—most notably the PTAB's speculation about the likely course of overlapping patent-infringement trials—and produces irrational outcomes that undermine efficiency, encourage forum-shopping by infringement plaintiffs, and thwart the purposes of IPR. Appx1146-1150; Appx1273-1278. The Director provided no explanation at all to address these problems or justify the Rule, much less the reasoned explanation that the APA requires. Appx1146-1150; Appx1273-1278.

Finally, Count III alleged that the *NHK-Fintiv* Rule violates the APA because it was adopted without notice-and-comment rulemaking. Appx1148; Appx1150. The *NHK-Fintiv* Rule is a substantive rule that is binding on the PTAB in all cases and affects the interests of IPR petitioners by restricting the circumstances in which the PTAB may institute IPR. The APA required the

Director to provide notice and an opportunity for comment before adopting such a rule, but he provided neither. Appx1148; Appx1150; Appx1278-1280.

Appellants sought an order declaring the *NHK-Fintiv* Rule unlawful, setting the Rule aside, and permanently enjoining the Director (and, through him, the PTAB) from relying on the Rule or its nonstatutory factors to deny institution of IPR. Appx1150. Appellants did not challenge or seek relief with respect to any particular decision denying any particular IPR petition. *Id.*

The district court granted the Director's motion to dismiss. The court first held that Appellants have Article III standing. The court rejected the Director's assertion that his supposedly "unreviewable discretion" over institution decisions precluded any finding of standing, emphasizing that Appellants do not assert harms flowing from a "*denial* of IPR," but instead identify harms "result[ing] from the Director's allegedly unlawful use of the *NHK-Fintiv* rule." Appx7. Citing case law establishing that "the denial of an opportunity to obtain a benefit is itself an injury-in-fact," the court concluded that the Director's reliance on an unlawful rule that restricts access to IPR, thereby depriving Appellants of the opportunity to obtain cancellation of invalid patents through IPR, constituted sufficient injury-in-fact, caused by the *NHK-Fintiv* Rule, that would be redressed if the court enjoined the agency's reliance on that Rule. Appx8-9.

Turning to justiciability, however, the district court agreed with the Director that 35 U.S.C. § 314(d) precludes judicial review of the *NHK-Fintiv* Rule under the APA. The court acknowledged that the text of § 314(d) bars review only of "'determination[s] … whether to institute an [IPR].'" Appx9 (quoting § 314(d)). The court further acknowledged that Appellants' suit does not challenge any "deni[al] [of] IPR" but instead challenges a rule establishing "unlawful considerations" to govern all institution decisions. Appx8. But the court held that § 314(d) nonetheless bars review because determining the lawfulness of the *NHK-Fintiv* Rule would require the court to "analyze 'questions that are closely tied to the application and interpretation of statutes related to'" institution decisions. Appx10-11. The court could discern no "principled reason" for distinguishing between review of institution decisions—which are specifically addressed by § 314(d)—and review of any other agency action or rule that would entail analysis of institution-related statutes. *Id.*

The district court recognized that *Cuozzo* identified exceptions to § 314(d), but the court viewed those exceptions as limited to "constitutional challenges or jurisdictional violations" and therefore inapplicable. Appx10 (citing *Cuozzo*, 579 U.S. at 274-275). The court did not address the Supreme Court's admonition that "judicial review remains available consistent with the [APA]" where a litigant challenges agency action as exceeding statutory bounds, arbitrary and capricious,

or procedurally invalid under the APA. *SAS Inst. v. Iancu*, 138 S. Ct. 1348, 1359 (2018); *see Cuozzo*, 579 U.S. at 274-275. The court accordingly dismissed the suit for lack of subject-matter jurisdiction. Appx11; Appx12.[3]

## SUMMARY OF THE ARGUMENT

The APA embodies a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). That presumption is overcome only where "'clear and convincing evidence' of a contrary legislative intent" is fairly discernible in the statutory scheme. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140-141 (1967); *see Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984). Consistent with that presumption, Appellants' claims are justiciable under the APA.

A. Section 314(d) does not indicate any congressional intent to preclude review. That provision makes "[t]he determination by the Director whether to institute an inter partes review … final and nonappealable." 35 U.S.C. § 314(d). As the plain text indicates, and the statutory context and purposes confirm, § 314(d) bars review only of "determination[s] … whether to institute [IPR]" and

[3] The district court did not address the Director's additional arguments that APA review is unavailable on the grounds that institution decisions are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and that the Director's adoption of the *NHK-Fintiv* Rule was not final agency action, *id.* § 704. To the extent the Director asserts those defenses here as alternative grounds for affirmance, Appellants reserve the right to respond in reply.

does not extend to claims challenging PTO rules and regulations that set standards to govern institution decisions. *Id.*

Contrary to the district court's analysis, *Cuozzo* and *Thryv* do not support a broader reading of § 314(d). Those cases did not hold or even suggest that § 314(d) would bar review any time an APA suit requires analysis of institution-related statutes. Indeed, *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018)—which held that § 314(d) did not bar review of a claim involving analysis of an institution-related statute—forecloses that interpretation.

Moreover, the district court's reasoning violates the presumption of reviewability. Precedent applying that presumption makes clear that statutory bars to judicial review are to be construed narrowly and that an express prohibition against reviewing one type of agency action does not support an inference that other types of agency action are also unreviewable. *See Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020). The district court's interpretation of § 314(d) would leave the PTO's rules and regulations governing institution of IPR completely immune from judicial scrutiny—an "implausible" result, *id.*, that would "enable the [PTO] to act outside its statutory limits" in exactly the manner *Cuozzo* disclaimed, 579 U.S. at 275.

B. Even if § 314(d) could be extended to bar APA challenges to rules governing institution, it still would not bar Appellants' suit because each claim falls within the exceptions to § 314(d) recognized in *Cuozzo*.

Counts II and III, alleging that the *NHK-Fintiv* Rule is arbitrary and capricious and that it was unlawfully adopted without required notice-and-comment rulemaking, do not involve "questions that are closely tied to the application and interpretation of" institution-related statutes. Appx10-11 (quoting *Cuozzo*, 579 U.S. at 274-275). They turn instead on the APA, which establishes the legal requirements of reasoned decision making and notice-and-comment procedures and provides the legal standards to evaluate whether the *NHK-Fintiv* Rule complies with those requirements. The district court did not even consider whether claims that depend on the APA should be barred.

Count I, alleging that the *NHK-Fintiv* Rule exceeds the Director's authority under the AIA, is likewise justiciable under *Cuozzo*. To the extent that claim turns on analysis of the AIA's institution-related provisions, the Supreme Court has held that "judicial review remains available" despite § 314(d) where a claim seeks to "set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority, or limitations,'" *SAS*, 138 S. Ct. at 1359 (quoting 5 U.S.C. § 706(2)(A), (C)); *accord Cuozzo*, 579 U.S. at 275. The Supreme Court applied

that exception in *SAS* to review whether the PTO's practice of partial institution violated the institution-related provisions of the AIA.

The district court erred in asserting that this exception is limited to "constitutional challenges or jurisdictional violations." Appx10. *Cuozzo* and *SAS* make clear that it applies as well to claims that the PTO exceeded its statutory authority—a result consistent with the background principle, on which *Cuozzo* specifically relied, that statutory bars to judicial review should not be construed to preclude review of claims that an agency acted ultra vires absent clear evidence to the contrary. *See Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985); *Cuozzo*, 579 U.S. at 274-275. Even accepting the district court's erroneous interpretation of § 314(d), therefore, Appellants' claims can proceed.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews the district court's dismissal for lack of subject-matter jurisdiction de novo. *Hyatt v. U.S. PTO*, 797 F.3d 1374, 1379 (Fed. Cir. 2015). Where, as here, a defendant asserts a facial challenge to the court's jurisdiction and the justiciability of the plaintiff's claims without presenting extrinsic evidence or contesting jurisdictional facts, the Court must "assume [the plaintiff's] allegations to be true and draw all reasonable inferences in [its] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see Stephens v. United States*, 884 F.3d 1151,

1155 (Fed. Cir. 2018). This Court applies its own law to issues of patent law and applies the law of the regional circuit to procedural issues not unique to patent law. *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1108 (Fed. Cir. 2020). "APA claims against the PTO 'raise[] a substantial question of patent law.'" *Id.*

## II. APPELLANTS' CLAIMS ARE JUSTICIABLE UNDER THE APA

The APA embodies a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). Under the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," is "entitled to judicial review thereof," 5 U.S.C. § 702, and "final agency action for which there is no other adequate remedy in a court" is presumptively "subject to judicial review," *id.* § 704. Although that presumption is overcome where Congress precludes judicial review by statute, *id.* § 701(a)(1), an "agency bears a heavy burden in attempting to show that Congress prohibit[ed] all judicial review," *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (quotation marks omitted). Because Congress intended the APA's "generous review provisions" to cover "a broad spectrum of administrative actions," a "showing of 'clear and convincing evidence' of a contrary legislative intent" is required to restrict access to judicial review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140-141 (1967).

Here, Appellants are harmed by the *NHK-Fintiv* Rule and accordingly sought an order "hold[ing] [the Rule] unlawful" and "set[ting] [it] aside" on the grounds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; that it exceeds "statutory jurisdiction, authority, or limitations"; and that it was adopted "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). This case is thus a classic APA challenge to an agency rule and falls squarely within the presumption of reviewability.

Contrary to the district court's analysis, which failed even to acknowledge the presumption of reviewability, § 314(d) does not evince any congressional intent to preclude review here—let alone the "clear and convincing evidence" required to overcome the presumption. *Abbott Labs.*, 387 U.S. at 140-141. As set forth below, § 314(d) applies only in cases challenging "determination[s] by the Director whether to institute an [IPR]," 35 U.S.C. § 314(d), and the district court erred in stretching the statute's preclusive scope beyond its text to bar review not only of institution decisions but also of rules adopted to govern the institution decision. Moreover, even if § 314(d) could in some cases bar judicial review of the PTO's rules and regulations setting standards for instituting IPR, the Supreme Court has recognized that § 314(d) allows judicial review, "consistent with the APA," of exactly the types of claims Appellants assert here. *SAS*, 138 S. Ct. at 1359; *see Cuozzo*, 579 U.S. at 275.

### A. Section 314(d) Does Not Apply

#### 1. Section 314(d) applies only to determinations whether to institute IPR

To determine "[w]hether and to what extent a particular statute precludes judicial review" under the APA, courts consider "its express language," as well as "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984). An intent to preclude review must be "fairly discernible in the statutory scheme." *Id.* at 351 (quotation marks omitted). If examination of these sources leaves any substantial doubt whether Congress intended to preclude review, "the general presumption favoring judicial review of administrative action is controlling." *Id.*

Here, nothing in the statutory scheme provides a "'clear and convincing'" indication that Congress intended to preclude review of any agency action other than "determination[s] … whether to institute [IPR]." *Abbott Labs.*, 387 U.S. at 140-141. Beginning with the statutory text, § 314(d), as noted, makes the Director's "determination … whether to institute an inter partes review … final and non-appealable." As this Court has held, this provision "prevents 'appeal' from a decision denying institution." *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1378 (Fed. Cir. 2021), *cert. denied*, __ S. Ct. __, 2022 WL 145242 (Jan. 18, 2022) (Mem.). It does no more than that and therefore does not

apply here because this case presents no "'appeal' from a decision denying institution." *Id.* As even the district court acknowledged, Appx8, Appellants do not challenge any decision denying IPR but instead challenge a rule adopted to govern the PTO's consideration of all IPR petitions. The text of § 314(d) nowhere purports to foreclose such a challenge. To the contrary, by expressly making "determination[s] … whether to institute [IPR] … final and nonappealable," 35 U.S.C. § 314(d), Congress indicated that it "knew how to draft the kind of statutory language" necessary to preclude review and "would have said so" if it had intended a broader preclusion. *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 443-444 (2016).

The AIA's context and structure, and the nature of the challenged agency action, confirm that § 314(d) does not apply. *Block*, 467 U.S. at 345. Instead, the statutory context indicates that Congress intended to subject the PTO's rules to the requirements of the APA, and judicial review of agency rules is at the heart of the APA. In particular, Congress authorized the PTO to adopt rules by "establish[ing] regulations … made in accordance with" the APA, 35 U.S.C. § 2(b)(2)(B) (cross-referencing 5 U.S.C. § 553). And with respect to IPR specifically, the AIA states that "[t]he Director shall prescribe *regulations* … governing inter partes review," 35 U.S.C. § 316(a)(4) (emphasis added)—a term referring to rules issued "pursuant to the notice-and-comment requirements of [the] APA," *U.S. Telecom Ass'n v.*

*FCC*, 400 F.3d 29, 38, 40 (D.C. Cir. 2005) (holding that notice-and-comment rulemaking was required where statute obligated agency to act through "regulations"); *see also* 35 U.S.C. § 316(a)(2); *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1349-1351 (Fed. Cir. 2020) (additional views of Prost, C.J., Plager & O'Malley, JJ.).

Far from evincing any intent to insulate PTO rules governing IPR from judicial review, these provisions make the APA directly applicable, strongly indicating that Congress intended to preserve judicial review. After all, if the Director had promulgated the *NHK-Fintiv* Rule through notice-and-comment rulemaking—as he was required to do—the resulting regulation would undoubtedly have been subject to judicial review. *See* 5 U.S.C. § 704; *see, e.g.*, *Cuozzo*, 579 U.S. at 275-283 (reviewing whether PTO regulation governing IPR was a reasonable exercise of the agency's rulemaking authority). Congress should not be presumed to have intended a reading of § 314(d) that would allow the Director to evade review by flouting his obligations under the APA.

Congress's objectives in the AIA likewise make clear that § 314(d) applies only when an institution decision is challenged. *See Block*, 467 U.S. at 345. As the Supreme Court has explained, Congress's objective in § 314(d) was to ensure that final written decisions in completed IPRs cannot be "unwound" based on some "minor statutory technicality" in the institution decision. *Cuozzo*, 579 U.S. at 272.

The "goal" of the provision was to "prevent[] appeals that would frustrate efficient resolution of patentability" of specific patents under review. *Thryv*, 140 S. Ct. at 1376. Because those concerns arise only where a litigant seeks to undo a determination whether to institute a particular IPR, no purpose would be served by additionally precluding review of PTO rules setting standards to govern institution decisions. To the contrary, preserving judicial review of those rules is the only way to ensure that the PTO adheres to its statutory limits and does not restrict access to IPR in violation of congressional intent.

Accordingly, no clear intent to preclude review is fairly discernible in the AIA. *Block*, 467 U.S. at 351. This is not a case where such an intent can be inferred from an express remedial scheme that impliedly forecloses alternative avenues of review. *See, e.g.*, *Sackett v. EPA*, 566 U.S. 120, 129-130 (2012) (recognizing that express statutory language providing for particular manner of review of agency action can support an inference that the agency action is not reviewable by other means). For example, in *Pregis Corp. v. Kappos*, 700 F.3d 1348 (Fed. Cir. 2012), this Court held that the Patent Act precludes APA review of the PTO's decision to issue a patent because the Patent Act expressly "presents several mechanisms by which third parties may challenge the PTO's decision to issue a patent." *Id.* at 1358. The Court contrasted that scheme with "cases in which preclusion of a suit under the APA would leave an agency action entirely

free from judicial review." *Id.* at 1358-1359. Here, no provision of the AIA provides any alternative to APA review for challenging PTO rules governing institution. If § 314(d) were construed to foreclose Appellants' APA suit, there would be "*no* forum to adjudicate [Appellants'] statutory … challenge" to the *NHK-Fintiv* Rule, *id.* at 1358—particularly in light of this Court's holding that decisions denying institution based on that Rule cannot be reviewed by appeal or mandamus, *see Mylan*, 989 F.3d at 1377. "[I]t is implausible to think [Congress] intended" such a result. *Pregis*, 700 F.3d at 1358. The "general presumption favoring judicial review of administrative action is [therefore] controlling." *Block*, 467 U.S. at 351.

#### 2. The district court erred in stretching § 314(d) to bar review of PTO rules governing the institution decision

With little analysis and without even acknowledging the presumption of reviewability or the standards that must be met to overcome it, the district court held that § 314(d) bars review not only of decisions whether to institute IPR, but also of any rule establishing standards governing those decisions. Appx10-11. The court relied on *Cuozzo*'s and *Thryv*'s holdings that § 314(d) barred review of institution decisions where the grounds for challenging institution "'consist[ed] of questions that are closely tied to the application and interpretation of statutes related to [the Director's] decision to initiate [IPR].'" Appx9-10 (quoting *Cuozzo*, 579 U.S. at 274-275). But those decisions do not support the district court's

decision. Indeed, the Supreme Court's decision in *SAS* forecloses the court's analysis.

*Cuozzo* and *Thryv* had no occasion to consider and did not decide whether § 314(d) would bar review of an agency rule establishing standards to govern institution decisions. In each case, the question was limited to whether § 314(d) "bar[red] … judicial review of the agency's decision to institute inter partes review." *Thryv*, 140 S. Ct. at 1370; *see Cuozzo*, 579 U.S. at 265-266. *Cuozzo* and *Thryv* thus provide no authority for the district court's extension of § 314(d) to bar claims that do not challenge any institution decision. To the contrary, *Cuozzo* reaffirmed the "strong presumption in favor of judicial review," emphasizing that it may be overcome only by "clear and convincing indications, drawn from specific language, specific legislative history, and inferences of intent drawn from the statutory scheme as a whole, that Congress intended to bar review." 579 U.S. at 273 (quotation marks omitted).

*Saint Regis Mohawk Tribe v. Mylan Pharmaceuticals, Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018), on which the district court also relied, Appx10, is even further afield. *Saint Regis* addressed only whether tribal sovereign immunity can be asserted in IPR. 896 F.3d at 1329. That case involved no issues of reviewability under the APA at all and never cited or discussed § 314(d). *See id.* at 1324-1329.

The district court could discern no "principled reason" for distinguishing between judicial review of the "determination[s] … whether to institute [IPR]" at issue in *Cuozzo* and *Thryv* and review in a traditional APA action of agency rules governing institution decisions. In the court's view, both types of claims require analysis of statutes closely tied to the institution decision, so both types of claims should be precluded. But nowhere in *Cuozzo* or *Thryv* did the Supreme Court purport to expand § 314(d) to bar judicial review beyond the context of institution decisions. Those cases merely delineated which institution decisions are covered by the bar.

Moreover, *SAS* expressly rejected a reading of § 314(d) that would bar review in every case in which institution-related statutes are at issue. SAS had petitioned for IPR of sixteen patent claims. 138 S. Ct. at 1354. The PTO "instituted [IPR] on only some [claims] and denied review on the rest" pursuant to a "regulation that purported to recognize a power of 'partial institution.'" *Id.* at 1351, 1354. SAS claimed that partial institution exceeded the PTO's authority under an array of institution-related provisions of the AIA. *Id*. at 1354-1357. The government responded—similar to the district court's holding here—that § 314(d) "foreclos[es] judicial review of any legal question bearing on the institution of inter partes review," but the Supreme Court rejected that view, holding that "nothing in § 314(d) or *Cuozzo* withdr[ew] [the Court's] power" to hear SAS's

appeal, even though that appeal asserted that the PTO's determination violated institution-related statutory provisions. *Id.* at 1359.

*SAS* defeats the district court's conclusion that § 314(d) bars any suit requiring analysis of questions closely tied to the application and interpretation of institution-related statutes. *See* Appx10-11. If the district court's interpretation of § 314(d) were correct, *SAS* would have come out the other way, because SAS's challenge required exactly that type of analysis—*i.e.*, interpreting and applying the AIA's institution-related provisions to determine whether they authorized partial institution. 138 S. Ct. at 1354-1360.

More broadly, the district court's reasoning turns the presumption of reviewability on its head. Statutory bars to judicial review are construed narrowly, and precedent forecloses the district court's inference that an express prohibition on judicial review of one type of agency action ("determination[s] … whether to institute an inter partes review") impliedly precludes review of other agency actions (substantive rules governing institution decisions). For instance, in *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), the government argued that its rescission of the Deferred Action for Childhood Arrivals ("DACA") program was not subject to review under the APA, invoking a provision of the immigration laws barring review of cases arising from "decisions 'to commence proceedings, adjudicate cases, or execute

removal orders.'" *Id.* (quoting 8 U.S.C. § 1252(g)). The Supreme Court "rejected as 'implausible'" the government's interpretation of that provision as "cover[ing] 'all claims'" or "impos[ing] 'a general jurisdictional limitation.'" *Id.* at 1907. Because the challenged rescission of DACA was "not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order," the challenge was not barred. *Id.*

The Supreme Court likewise rejected the government's reliance on a neighboring provision that precluded judicial review of "claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *Regents*, 140 S. Ct. at 1907 (quoting 8 U.S.C. § 1252(b)(9)). The Court held that the "targeted language" of that provision was "certainly not a bar where … the parties [we]re not challenging any removal proceedings" but instead challenged a change in the rules governing the decision whether to initiate removal proceedings. *Id.*; *see also id.* at 1901-1902.

Here, as in *Regents*, § 314(d) addresses the reviewability of "determination[s] … whether to institute an inter partes review," 35 U.S.C. § 314(d), but Appellants do not challenge such a determination. Section 314(d)'s "targeted language is not aimed at this sort of case," which instead seeks review of a rule governing institution decisions. *Regents*, 140 S. Ct. at 1907.

Similarly, in *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985), the Supreme Court considered the preclusive effect of a provision of the Retirement Act making review of OPM's "decisions … concerning" questions of disability and dependency "final and conclusive and … not subject to review." *Id.* at 771 (quoting 5 U.S.C. § 8347(c)). The petitioner claimed that OPM had misallocated the burden of proof in determining that he was not disabled. *Id.* at 776. Although this Court found it "difficult to conceive of a more clear-cut statement of congressional intent to preclude review," *id.* at 779 (quotation marks omitted), the Supreme Court reversed, holding that the provision did not foreclose review, *id.* at 791. Even granting that the appeal bar could "plausibly … be read as imposing an absolute bar to judicial review," the Supreme Court noted that the statute "also quite naturally c[ould] be read" to have a narrower scope. *Id.* at 779. And given the strong presumption of judicial review, as well as the text and context of the Retirement Act as a whole, the Court adopted that narrower reading, concluding that the statute precluded review only of the agency's "*factual* determinations about 'questions of disability and dependency.'" *Id.*

Here, the case for judicial review is even stronger because, unlike in *Lindahl*, there is no plausible reading of § 314(d)'s text that would bar review of a claim that does not challenge any "determination … whether to institute [IPR]." 35 U.S.C. § 314(d). But even if such a reading were plausible, any doubt must be

resolved in favor of the narrower reading. *Lindahl*, 470 U.S. at 779; *see also, e.g.*, *Block*, 467 U.S. at 351 (in case of doubt, "the general presumption favoring judicial review of administrative action is controlling"); *Hyatt v. OMB*, 908 F.3d 1165, 1171 (9th Cir. 2018) (construing statute precluding judicial review to cover only those types of decisions falling within its "narrow" scope; "[a]ny other decision remains subject to judicial review").

Section 314(d) thus does not bar review where, as here, a claim does not seek review of a "determination … whether to institute [IPR]," 35 U.S.C. § 314(d), and the district court erred in relying on it to dismiss Appellants' claims.

### B. Even If § 314(d) Applied In The First Place, Appellants' Claims Would Fall Within Established Exceptions To That Bar

Even if § 314(d) were applicable, Appellants' grounds for challenging the *NHK-Fintiv* Rule fall squarely within exceptions to that provision that the Supreme Court identified in *Cuozzo* and its progeny. While interpreting § 314(d) to "appl[y] where the grounds for attacking the decision to institute [IPR] consist of questions that are closely tied to the application and interpretation" of institution-related statutes, *Cuozzo*, 579 U.S. at 274-275; *see also Thryv*, 140 S. Ct. at 1373, the Supreme Court indicated that § 314(d) would not bar appeals "that depend on other less closely related statutes," *Cuozzo*, 579 U.S. at 275. The Court further held that § 314(d) does not bar review—even of a "determination … whether to institute [IPR]"—where an appeal claims that, in making the challenged institution

decision, the PTO "act[ed] outside its statutory limits." *Id.* at 275. Rather, despite § 314(d), "judicial review remains available consistent with the [APA], which directs courts to set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority, or limitations,'" *SAS*, 138 S. Ct. at 1359 (quoting 5 U.S.C. § 706(2)(A), (C)); *accord Cuozzo*, 579 U.S. at 275. Likewise, the Supreme Court stated that judicial review remains available despite § 314(d) over claims that agency action is "arbitrary [and] capricious" or procedurally unlawful under the APA. *Cuozzo*, 579 U.S. at 275 (quoting 5 U.S.C. § 706(2)(A)-(C) (alteration in original) and citing *id.* § 706(2)(D)). As explained below, Appellants' claims fall within these exceptions—even assuming § 314(d) applies in the first place—and the district court erred in concluding otherwise.

#### 1. Section 314(d) does not foreclose Appellants' arbitrary-and-capricious and notice-and-comment claims

The district court first erred in assuming that "inquir[ing] into the lawfulness of the *NHK-Fintiv* rule" would require the court to "analyze 'questions that are closely tied to the application and interpretation of statutes related to the [Director's] decision to initiate inter partes review.'" Appx10-11 (quoting *Cuozzo*, 579 U.S. at 274-275). That assumption overlooked that Appellants brought two claims (Counts II and III of the amended complaint) asserting that the *NHK-Fintiv* Rule is arbitrary and capricious in violation of the APA and that the Rule was unlawfully adopted without the notice-and-comment rulemaking required by the

APA. Appx1146-1150. Neither claim presents a question "closely tied to the application and interpretation" of any institution-related statute. Under *Cuozzo*, then—and even on the district court's own terms—§ 314(d) does not bar review of those claims. *See Cuozzo*, 579 U.S. at 275; *SAS*, 138 S. Ct. at 1359.

In particular, Appellants' claim that the Director adopted the *NHK-Fintiv* Rule without the required notice-and-comment procedures depends on the APA, not any institution-related provisions of the AIA. Under the APA, the Director may adopt substantive rules only by promulgating regulations through notice-and-comment rulemaking. *See* 5 U.S.C. § 553; *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) (APA "mandates that an agency use notice-and-comment procedures before issuing legislative rules"). Determining on the merits whether the Director complied with that requirement turns on an analysis of the APA's rulemaking standards, not on any interpretation or application of an institution-related statute. *See* 5 U.S.C. § 706(2)(D) (requiring a reviewing court to set aside agency action adopted "without observance of procedure required by law"). Thus, in litigating Appellants' motion for summary judgment on the notice-and-comment claim, the parties joined issue principally on whether the *NHK-Fintiv* Rule is the type of substantive rule that is subject to notice-and-comment requirements. Appx1278-1280; Appx1352-1357. To the extent any AIA provision bears on the notice-and-comment claim, it is not the AIA's institution-related provisions, but its

requirement that rules governing IPR must be "regulations" subject to the APA's notice-and-comment procedures—a requirement that contemplates the availability of judicial review. *See* 35 U.S.C. § 316(a)(2), (4); *Facebook*, 973 F.3d at 1349-1353 (additional views of Prost, C.J., Plager & O'Malley, JJ.).

Similarly, Appellants' claim that the *NHK-Fintiv* Rule is arbitrary and capricious again depends on the APA, not on any institution-related statute. It is the APA that requires agencies to engage in reasoned decision-making, to consider all relevant factors, and to draw a rational connection between the facts found and the choices made. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And it is the APA that provides the standards for judicial review of agency decision-making. 5 U.S.C. § 706(2)(A) (requiring reviewing court to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

Thus, even if the district court were correct that § 314(d) could bar review of claims challenging a PTO rule governing institution—as opposed to simply barring review of "determination[s] … whether to institute [IPR]"—§ 314(d) would not bar review of Counts II and III here. Those claims do not require the court to analyze questions closely tied to any institution-related statute. *Cuozzo* and *SAS* instead make clear that judicial review of such claims "remains available consistent with the [APA]." *SAS*, 138 S. Ct. at 1359; *Cuozzo*, 579 U.S. at 275.

### 2. Section 314(d) does not foreclose Appellants' claim that the *NHK-Fintiv* Rule exceeds the Director's authority under the AIA

The district court further erred in concluding that Count I—Appellants' claim that the *NHK-Fintiv* Rule exceeds the Director's statutory authority and violates the AIA—does not fall within any exception to § 314(d) recognized in *Cuozzo*. To the extent that this claim requires the district court to "analyze 'questions that are closely tied'" to an institution-related statute, Appx10-11, it remains justiciable because it alleges that the agency "act[ed] outside its statutory limits," *Cuozzo*, 579 U.S. at 275, by adopting a rule that cuts off access to IPR in circumstances where the AIA permits it, *see* Appx1130-1152.

*SAS* is again instructive. Although SAS asserted a claim requiring interpretation and application of statutes closely related to institution, the Supreme Court held that § 314(d) did not preclude review. 138 S. Ct. at 1359. Noting *Cuozzo*'s admonition that § 314(d) "does not enable the [PTO] to act outside its statutory limits," the Court determined that that was "exactly the sort of question [it was] called upon to decide": "SAS contends that the Director exceeded his statutory authority by limiting the review to fewer than all of the claims SAS challenged." *Id.* (quotation marks omitted). Therefore, "nothing in § 314(d) or *Cuozzo*" precluded review. *Id.* The same result follows here. To the extent § 314(d) is relevant at all, it does not remove a court's power to review a claim that

the PTO exceeded its statutory authority. *Id.*; *see Cuozzo*, 579 U.S. at 275 ("[s]uch 'shenanigans' may be properly reviewable … under the [APA]").

The district court erred in disregarding this exception to § 314(d). The court noted in passing that "institution decisions that implicate due process concerns or jurisdictional violations are not 'categorically precluded' from judicial review under § 314(d)." Appx10. And the court stated without analysis that Appellants' claims "do[] not fit within the categories of non-precluded review." *Id.* But as just discussed, the exceptions to § 314(d) are not limited to cases of "constitutional challenges or jurisdictional violations." *Id.* Rather, the Supreme Court also preserved judicial review for cases where the agency "act[ed] outside its *statutory* limits," *Cuozzo*, 579 U.S. at 275 (emphasis added)—precisely Appellants' claim in Count I. *SAS* makes this clear: The Supreme Court there reiterated that "judicial review remains available consistent with the [APA]," despite § 314(d), over claims that agency action was "'*not in accordance with law*' or 'in excess of *statutory* jurisdiction, *authority*, or *limitations*.'" 138 S. Ct. at 1359 (quoting 5 U.S.C. § 706(2)(A) & (C)). And the Court then held that § 314(d) did not bar SAS's claim that the PTO exceeded its authority under an institution-related *statute*. 138 S. Ct. at 1359. The district court's decision erroneously eliminates an entire exception to § 314(d) that the Supreme Court confirmed in *Cuozzo* and applied in *SAS*.

Moreover, the district court's interpretation of § 314(d) ignores the background principle—which the Supreme Court invoked in *Cuozzo*—that statutory bars on judicial review of agency action do not apply to claims that an agency acted ultra vires, absent clear evidence that Congress specifically intended to foreclose such challenges. *See Cuozzo*, 579 U.S. at 275 (citing *Johnson* v. *Robison*, 415 U.S. 361, 367 (1974)). *Cuozzo* relied on the Supreme Court's decision in *Lindahl*, which, as discussed, held that the provision making OPM's disability determinations "final and conclusive and … not subject to review" did not bar review of a claim that OPM had violated the governing statute by misallocating the burden of proof. 470 U.S. at 773, 791; *supra* pp. 38-39. *Lindahl* explained that the bar did not apply to questions "whether there has been a substantial departure from important procedural rights, *a misconstruction of the governing legislation*, or some like error going to the heart of the administrative determination." 470 U.S. at 791 (emphasis added; quotation marks omitted). *Cuozzo* made clear that its "interpretation of [§ 314(d)] has the same effect" as the analysis in *Lindahl*. 579 U.S. at 274.

The "categories of non-precluded review" under § 314(d) thus are not limited to constitutional challenges and jurisdictional violations as the district court wrongly assumed, Appx10, but include claims asserting a violation of "governing legislation." *Lindahl*, 470 U.S. at 791. Under the district court's contrary view,

however, § 314(d) would indeed "enable the [PTO] to act outside its statutory limits." *Cuozzo*, 579 U.S. at 275. Particularly in view of this Court's precedent barring appeal and mandamus when the PTO applies an unlawful rule to deny an IPR petition, *see Mylan*, 989 F.3d at 1378, the district court's ruling forecloses the only available avenue for judicial oversight of rules the PTO adopts to govern institution decisions. In this case, that ruling immunizes from judicial scrutiny the *NHK-Fintiv* Rule—a rule adopted with no public input that has yielded absurd results and dramatically curtailed the availability of IPR in cases where it is needed most, in violation of express provisions of the AIA. The district court's approach would similarly shield any other PTO rule setting standards to govern institution of IPR—whether the PTO decreed that the deadline for filing an IPR petition should be 30 days instead of one year; that IPR petitions should be granted only if a coin flip comes up "heads'; or that all IPRs should simply be discontinued. *Cf. Judulang v. Holder*, 565 U.S. 42, 55 (2011) (if agency decided eligibility for discretionary immigration relief "by flipping a coin …, we would reverse the policy in an instant"). It is "implausible to think [Congress] intended" such a result when it enacted the narrowly delineated exception to judicial review in § 314(d). *Pregis*, 700 F.3d at 1358.

## CONCLUSION

The district court's order granting the Director's motion to dismiss should be reversed and the case remanded for resolution of Appellants' claims on the merits.

Respectfully submitted,

/s/ John B. Sganga, Jr.
JOHN B. SGANGA, JR.
CHRISTY G. LEA
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

*Attorneys for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC*

/s/ Nathan K. Kelley
NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-3343

ANDREW T. DUFRESNE
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7492

*Attorneys for Plaintiff-Appellant Google LLC*

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

CATHERINE M.A. CARROLL
DAVID M. LEHN
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

REBECCA M. LEE
WILMER CUTLER PICKERING HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1002

ALYSON M. ZUREICK
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center,
250 Greenwich Street,
New York, NY 10007
(212) 230-8800

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

February 8, 2022

**STATEMENT OF CONSENT**

Pursuant to Federal Circuit Rule 32(g)(3)(B), the undersigned represents that counsel for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC and for Plaintiff-Appellant Google LLC have consented to their signatures on this Brief.

Dated: February 8, 2022

/s/ Mark D. Selwyn

MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

# ADDENDUM

# TABLE OF CONTENTS

**Page(s)**

Order Granting Motion to Dismiss, Terminating Motion for Summary Judgment, Dkt. No. 133 (Nov. 10, 2021).............................. Appx1-11

Final Judgment, Dkt. No. 138 (Dec. 13, 2021)..............................................Appx12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., et al.,

Plaintiffs,

v.

ANDREI IANCU,

Defendant.

Case No. 5:20-cv-06128-EJD

**ORDER GRANTING MOTION TO DISMISS; TERMINATING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 64, 65

Under the Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. § 100 *et seq.*, a party may ask the U.S. Patent and Trademark Office ("the PTO") to review and potentially cancel claims in an already-issued patent that the PTO finds to be unpatentable in light of prior art. *See* 35 U.S.C. §§ 102, 103. This process, called "inter partes review" ("IPR"), is widely used to determine the patentability of patent claims that are the subject of pending patent infringement litigation. Plaintiffs challenge two PTO decisions that establish non-exclusive factors to aid in the PTO's determination of whether to institute IPR and argue that these decisions violate the Administrative Procedure Act ("APA") because they are arbitrary, capricious, and unlawful under the AIA. Defendant contends that the Court cannot reach Plaintiffs' challenge, both because Plaintiffs lack standing and because the issue is not justiciable. The Court must agree with Defendant—while Plaintiffs have standing to pursue their claims, the Court is bound by *Cuozzo Speed Technlogies, LLC v. Lee*, 579 U.S. 261 (2016) and *Thryv, Inc. v. Click-To-Call Tehcnologies*, 140 S. Ct. 1367 (2020), which require the Court to dismiss this action for lack of jurisdiction.

United States District Court
Northern District of California

## I. BACKGROUND

### A. The Inter Partes Review Process

The Constitution grants Congress the power "[t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to this power, Congress created a patent system that grants inventors rights over the manufacture, sale, and use of their inventions. *See* 35 U.S.C. § 100 *et seq.* Inventors can secure a patent by filing an application with the PTO that includes "claims" that describe the invention. A patent examiner then reviews the patent claims, considers the prior art, and determines whether each claim meets the applicable patent law requirements. *See id.* §§ 101, 102, 103, 112. The examiner then accepts the claim or rejects it and explains why. *See id.* § 132(a).

"Sometimes, though, bad patents slip through." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018). To remedy this problem, Congress allows parties to challenge the validity of patent claims in federal court. *See* 35 U.S.C. § 282(b)(2)–(3). Congress also has created an administrative process that allows a patent challenger to ask the PTO to reconsider the validity of an earlier granted patent claim. Specifically, in 2011, Congress enacted the AIA, which modified the "inter partes reexamination" system in favor of "inter partes review." *See* H.R. Rep. No. 112–98, pt. 1, pp. 46–47 (2011) (H.R. Rep.), codified at 35 U.S.C. §§ 311–19.

The IPR regime functions like civil litigation. A party must first file "a petition to institute an inter partes review of [a] patent. 35 U.S.C. § 311(a). The petition "may request to cancel as unpatentable 1 or more claims of [the] patent" on the ground that the claims are obvious or not novel. *Id.* § 311(b). The petition must identify "each claim challenged," the grounds for the challenge, and the evidence supporting the challenge. *Id.* § 312(a)(3). After a petition is filed, the patent owner may respond with "a preliminary response to the petition" to explain "why no inter partes review should be instituted." *Id.* § 313. With the parties' submissions, the Director of the PTO ("the Director") then decides "whether to institute an inter partes review . . . pursuant to [the]

petition." *Id.* § 314(b). Before instituting review, the Director must determine "that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

The Director has delegated this authority to the Patent Trial and Appeal Board ("the PTAB") to exercise on his behalf. 37 C.F.R. § 42.4(a) (2017). The PTAB-patent judges are appointed by the Secretary of Commerce and must be "persons of competent legal knowledge and scientific ability." 35 U.S.C. § 6(a), (c). Once the Director institutes IPR, the case proceeds before the PTAB "with many of the usual trappings of litigation." *SAS Inst.*, 138 S. Ct. at 1354. For example, the parties conduct discovery, issue briefing, and appear before the PTAB for an oral hearing. 35 U.S.C. § 316(a)(5), (6), (8), (10), (13). The parties also may settle the action and end IPR. *Id.* § 317. If, however, IPR is instituted and the action is not settled, the PTAB must "issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner." *Id.* § 318(a).

35 U.S.C. §§ 315 and 316(a)(11) establish time limits for the institution and completion of IPR. For instance, IPR may not be instituted if the "petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b). As a result, the "life-span" of an IPR from the filing of a petition to a final written decision is typically only 18 months. *See* 35 U.S.C. § 316(a)(11); C.F.R. § 42.107(b); Amended Complaint for Declaratory and Injunctive Relief ("Compl."), Dkt. No. 54.

Finally, while the AIA authorizes judicial review of a "final written decision" canceling a patent claim, it does not allow for review of the Director's initial decision whether to institute IPR. *Compare* 35 U.S.C. § 319 (allowing a party dissatisfied with the PTAB's final written decision to appeal the decision), *with id.* § 314(d) ("The determination by the Director whether to institute inter partes review under this section shall be final and appealable.").



United States District Court
Northern District of California

### B. The *NHK/Fintiv* Decisions

By default, the PTAB's decisions in IPR proceedings have no precedential force in future cases. Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) ("SOP-2"), at 3, 8–9 (Sept. 20, 2018). However, the PTO has established a procedure for designating select PTAB decisions as "precedential." SOP-2 at 1–2, 8–12. Specifically, the Director decides whether to designate a Board decision as precedential. SOP-2 at 11. This procedure does not allow for public notice of or public comment on the PTAB's decision to designate an IPR decision as precedential. SOP-2 at 8–11. Decisions designated as precedential are "binding" on the PTAB "in subsequent matters involving similar factors or issues." SOP-2 at 11.

Two recent, precedential PTAB decisions are at issue: *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*, No. IPR2018-00752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018) ("*NHK*") and *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B Mar. 20, 2020) ("*Fintiv*").

In *NHK*, the PTAB exercised its discretion under both 35 U.S.C. §§ 314(a) and 325(d)(6) to deny institution of IPR, in part due to a parallel district court trial that was scheduled six months away. After Intri-Plex Technologies, Inc. sued NHK International and its parent company, NHK Spring, for infringement of U.S. Patent No. 6,183,841 in the Northern District of California, NHK Spring petitioned for IPR. *Intri-Plex Techs., Inc. v. NHK Int'l Corp.*, No. 3-17-cv-1097 (N.D. Cal. 2017). The PTAB denied institution because of the parallel district court proceedings. . The PTAB found that "the advance state of the district court proceeding[s] . . . weigh[ed] in favor of denying [IPR] under § 314(a)" because the petitioner asserted the arguments in both its petition for IPR and before the district court proceeding. *Id.*

In *Fintiv*, the PTAB clarified how it would consider parallel litigation when deciding whether to institute IPR. 2020 WL 2126495. There, Apple sought IPR of patent claims that had been asserted against the company in an infringement suit in federal court. Apple filed the petition less than ten months after the parallel infringement suit began. Building on *NHK*, the PTAB



United States District Court
Northern District of California

stated that in the interests of "system efficiency, fairness, and patent quality," it would "weigh" six factors under 35 U.S.C. § 314(a) when deciding whether to institute IPR. *Id.* at *3 (hereinafter "the *NHK-Fintiv* rule"). Those factors are:

1. Whether the district court granted a stay or evidence exists that a stay may be granted if IPR proceedings are instituted;
2. The proximity of the court's trial date to the PTAB's projected statutory deadline for a final written decision;
3. The investment by the parties and district court in the parallel proceeding;
4. The overlap between the issues raised in the petition and the parallel proceeding;
5. Whether the IPR petitioner and the defendant in the parallel proceeding are the same party; and
6. Other circumstances that impact the Board's exercise of discretion, including the merits of the challenge to patentability.

**C. Plaintiffs' Lawsuit**

Plaintiffs allege that the PTAB has applied *NHK-Fintiv* rule to unlawfully deny numerous IPR petitions, including petitions filed by Plaintiffs. Compl. ¶ 54. Plaintiffs filed this action to challenge the Director's authority to reject petitions for IPR using the *NHK-Fintiv* rule. Compl. ¶¶ 65–71. Plaintiffs assert three claims, each arising under the Administrative Procedure Act ("APA"). First, Plaintiffs argue that pursuant to 5 U.S.C. § 706(2)(C), this Court must "hold unlawful and set aside" the Director's use of the *NHK-Fintiv* rule because the Director exceeded his statutory authority in adopting it. Compl. ¶¶ 82–86 (Count I). Second, Plaintiffs argue that pursuant to 5 U.S.C. § 706(2)(A), this Court must "hold unlawful and set aside" the *NHK-Fintiv* rule because it is is arbitrary, capricious, and violates the AIA. Compl. ¶¶ 87–91 (Count II). Finally, Plaintiffs argue that pursuant to 5 U.S.C. § 706(2)(D), this Court must "hold unlawful and set aside" the *NHK-Fintiv* rule because it is a final, binding rule that was issued without notice and comment. Compl. ¶¶ 92–95 (Count III).

Defendant has moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs lack standing or, in the alternative, that Plaintiffs claims are not justiciable under the APA. Plaintiffs have moved for summary judgment. The Court only reaches Defendant's motion to dismiss.

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet his or her burden of establishing subject-matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Dismissal on this basis is appropriate when a plaintiff fails to establish standing, *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009), *abrogated on other grounds by Bonds v. United States*, 564 U.S. 211 (2011), or brings a non-cognizable claim under the APA, *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 591 (9th Cir. 2008).

A defendant may either challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic evidence that demonstrates the lack of jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

**III. DISCUSSION**

**A. Article III Standing**

To satisfy Article III's standing requirements, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."



United States District Court
Northern District of California

United States District Court
Northern District of California

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing that all three requirements are met. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id*. Because Plaintiffs seek prospective relief, they must show that "the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

**1. Injury-in-Fact**

To demonstrate an "injury in fact," a plaintiff must allege that it has sustained "an invasion of a legal protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560 (citations omitted). When, as in this case, a suit challenges the legality of government action or inaction, the nature and extent of facts that must be averred at the pleading stage to establish standing depends upon whether the plaintiff is "himself an object of the action (or foregone action) at issue." *Id.* at 561. If he is, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* 561–62.

Defendant argues that Plaintiffs cannot establish an injury-in-fact because under the AIA they have no protected right to IPR. *See* Motion to Dismiss Plaintiffs' Complaint ("MTD") at 9, Dkt. No. 64. In the Defendant's view, because the Director possesses unreviewable discretion over the initiation decision, Plaintiffs cannot allege that they are harmed by the *NHK-Fintiv* rule. But Plaintiffs do not argue that they are harmed by the *denial* of IPR. Instead, Plaintiffs identify harms that result from the Director's allegedly unlawful use of the *NHK-Fintiv* rule. Specifically, Plaintiffs allege that (1) because the AIA prescribes the factors that the Director can consider during the initiation decision process and allows for IPR during parallel litigation, the *NHK-Fintiv* rule violates the APA as it requires the PTAB to consider factors outside the considerations

prescribed in the AIA; (2) the use of the *NHK-Fintiv* rule imposes an unlawful obstacle to IPR because it increases the risk that an IPR petition (including ones submitted by Plaintiffs) will be denied; (3) which deprives Plaintiffs of the benefits of IPR. *See* Compl. ¶¶ 80–95. Thus, contrary to Defendant's position, Plaintiffs' alleged injury is not that they were denied IPR, but that the Director is using unlawful considerations that increase the risk of denial, thereby depriving them of the *benefits* of IPR. *See* Compl. ¶¶ 31–32, 54–61 (naming benefits of IPR).

Plaintiffs have established that the *NHK-Fintiv* rule have harmed or present a "substantial risk" of harming them. This is a sufficient injury-in-fact. *See Susan B. Anthony*, 573 U.S. at 158; *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 665 (9th Cir. 2021) ("An injury-in-fact is 'an invasion of a legally protected interest,' but this means an interest that is only concrete and particularized and actual or imminent—*not* an interest protected by statute. This distinction prevents Article III standing requirements from collapsing into the merits of a plaintiff's claim . . . ."). Indeed, as courts have previously found, the denial of an opportunity to obtain a benefit is itself an injury-in-fact. *See, e.g., Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998) (holding that a "lost opportunity represents a concrete injury"), *superseded by statute as stated in Hsiao v. Scalia*, 821 F. App'x 680, 683–84 (9th Cir. 2020); *Settles v .U.S. Parole Comm'n*, 429 F.3d 1098, 1101–03 (D.C. Cir. 2005) (holding that the plaintiff had standing to challenge a regulation that made it more difficult for him to gain the benefit of parole); *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 697 (7th Cir. 2018) ("Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit.").

**2. Causation**

There must be a causal connection between the injury and the conduct complained of—"the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S.

26, 41–42 (1976)).

Plaintiffs have met the causation requirement. Their Amended Complaint demonstrates that the *NHK-Fintiv* rule (the conduct complained of) diminishes their opportunity to experience the benefits of IPR (the injury asserted). Compl. ¶¶ 52–62.

**3. Redressability**

It must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Plaintiffs ask the Court to enjoin the Director from applying the *NHK-Fintiv* rule. *See* Compl. at 20. If Plaintiffs prevail, this Court could enjoin the use of the *NHK-Fintiv* rule, which would redress the Plaintiffs' injuries. *See Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995). Plaintiffs have thus established redressability and have met their obligation to establish standing.

**B. Justiciability**

Before reaching the question of whether the use of the *NHK-Fintiv* rule violates the APA, this Court must first ensure that this issue is reviewable considering the Supreme Court's analysis of 35 U.S.C. § 314(d) in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016). Under 35 U.S.C. 314(d), "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."

In *Cuozzo*, the Supreme Court analyzed this "no appeal" provision in the context of a challenge to the Director's decision to institute IPR of two claims. 136 S. Ct. at 2138. There, the Director agreed to reexamine three claims, even though the petition for IPR only expressly challenged one of the claims. *Id.* As in this case, Cuozzo argued that the Directors acted outside his legal authority and violated the APA by instituting IPR with respect to the two unchallenged claims because 35 U.S.C. § 312(a)(3) requires the petition for IPR to identify "in writing and with particularity, each claim challenged." In finding the Director's institution decision unreviewable, the Court determined that § 314(d) applies where the grounds for challenging the Director's institution decision "consist of questions that are closely tied to the application and interpretation

of statutes related to [the Director's] decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141. However, the Court emphasized that its holding did not decide "the precise effect of § 314(d) on appeals that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond [§ 314(d)]." *Id.* The Court explained that institution decisions that implicate due process concerns or jurisdictional violations are not "categorically precluded" from judicial review under § 314(d). *Id.* at 2141–42.

More recently, in *Thryv, Inc. v. Click-to-Call Technologies, LP*, 140 S. Ct. 1367, 1373 (2020), the Supreme Court held that the Director's application of 35 U.S.C. § 315(b)'s time bar is "final and nonappealable" under 35 U.S.C. § 314(d). Relying on *Cuozzo*, the Court determined that the Director's application of the time bar is "closely related to its decision whether to institute inter partes review and is therefore rendered nonappealable by § 314(d)." *Thryv*, 140 S. Ct. at 1370. The Court explained that § 315(b)'s "time limitation is integral to, indeed a condition on, institution" and concluded that "[a] challenge to a petition's timeliness under § 315(b) thus raises an 'ordinary dispute about the application of' an institution-related statute." *Id.* at 1373 (quoting *Cuozzo*, 136 S. Ct. at 2139).

Much like *Thryv*, the *NHK-Fintiv* rule establishes factors that are "closely related to [the Director's decision] whether to institute inter partes review." *Thryv*, 140 S. Ct. at 1370. Plaintiffs' challenge does not fit within the categories of non-precluded review. *See Cuozzo*, S. Ct. at 2141–42 (stating that constitutional challenges or jurisdictional violations are not "categorically precluded"). Thus, in view of *Cuozzo* and *Thryv*, this Court cannot deduce a principled reason why preclusion of judicial review under § 314(d) would not extend to the Director's determination that parallel litigation is a factor in denying IPR. *See Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018) ("If the Director decides not to institute [IPR], *for whatever reason*, there is no review.") (emphasis added)). To inquire into the lawfulness of the *NHK-Fintiv* rule, the Court would have to analyze "questions that are closely tied to the



United States District Court
Northern District of California

application and interpretation of statutes related to the [Director's] decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141–42. *Cuozzo* forbids this and so the Court must conclude that Plaintiffs' challenge to the *NHK-Fintiv* rule is barred by § 314(d).

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss for lack of subject-matter jurisdiction. The Court **TERMINATES** Plaintiffs' motion for summary judgment. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 10, 2021

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

**~~[PROPOSED]~~ FINAL JUDGMENT**

WHEREAS on November 10, 2021, the Court entered an Order granting Defendant's Motion to Dismiss the Amended Complaint and terminating Plaintiffs' Motion for Summary Judgment,

Pursuant to Rule 58 of the Federal Rules of Civil Procedure and in accordance with the foregoing, the Court hereby ORDERS and ENTERS JUDGMENT in favor of the defendant.

The Clerk is directed to close the case.

DATED: December 13, 2021

The Honorable Edward J. Davila
United States District Judge

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 10,741 words.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

February 8, 2022