No. 22-1249

IN THE
# United States Court of Appeals for the Federal Circuit

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,

*Plaintiffs-Appellants*,

*v.*

ANDREW HIRSHFELD, Performing the Functions and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of California
Judge Edward J. Davila in Case No. 20-06128

## BRIEF OF DELL INC., SAS INSTITUTE INC., SYMMETRY, LLC, ALLIANCE FOR AUTOMOTIVE INNOVATION, AND 9 OTHER LEADING INNOVATORS AND ORGANIZATIONS AS *AMICI CURIAE* IN SUPPORT OF APPELANTS

Alexandra Bursak
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-3737

Mark S. Davies
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8464

*Counsel for Amici Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1249

**Short Case Caption** Apple Inc., et al. v. Hirshfeld

**Filing Party/Entity** Amici Curiae

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/15/2022

Signature: /s/ Mark S. Davies

Name: Mark S. Davies

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Alliance for Automotive Innovation | n/a | n/a |
| Verizon Services Corp. | n/a | Verizon Services Corp. is 100% owned by Verizon Communications Inc. |
| VMware, Inc. | n/a | n/a |
| Computer and Communication Industry Association | n/a | n/a |
| VIZIO, Inc. | n/a | VIZIO Holding Corp. owns 100% of VIZIO stock. |
| Garmin International, Inc. | n/a | Garmin Interntional, Inc. is a wholly owned subsidiary of Garmin International Ltd. |
| Juniper Networks, Inc. | n/a | Dodge & Cox<br>The Vanguard Group |
| Micron Technology, Inc. | n/a | n/a |
| SAS Institute Inc. | n/a | n/a |
| Symmetry LLC | n/a | n/a |
| Taiwan Semiconductor Manufacturing Company, Ltd. | n/a | n/a |
| | | |

☑ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

| **1. Represented Entities. Fed. Cir. R. 47.4(a)(1).** | **2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2).** | **3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3).** |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| Acushnet Company | n/a | Acushnet Holdings Corp. (NYSE: GOLF)<br>Magnus Holdings Co., Ltd.<br>Fila Holdings Corp. |
| Comcast Cable Communications, LLC | n/a | Comcast Cable Communications, LLC is a wholly-owned, direct subsidiary of Comcast Holdings Corporation. Comcast Holdings Corporation is a wholly-owned, direct subsidiary of Comcast Corporation. No publicly held company owns 10% or more of the stock in Comcast Corporation. |
| Dell Inc. | n/a | Dell Inc. is a wholly-owned subsidiary of Denali Intermediate Inc., which is a wholly-owned subsidiary of Dell Technologies Inc. No publicly-traded company owns 10% or more of the stock of Dell Technologies Inc. |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..... i
TABLE OF AUTHORITIES ..... vi
STATEMENT OF INTEREST ..... 1
INTRODUCTION ..... 2
ARGUMENT ..... 5
I. Congress Created IPR For District Court Defendants To Challenge Bad Patents, But The *NHK-Fintiv* Rule Locks Them Out. ..... 5
A. Congress charged the PTO with addressing serious problems with the patent system through IPR. ..... 5
B. The *NHK-Fintiv* rule turns Congress's directive on its head. ..... 11
II. The *NHK-Fintiv* Rule Raises Constitutional Concerns. ..... 16
A. The *NHK-Fintiv* rule undermines Congress's authority. ..... 16
B. The *NHK-Fintiv* rule is fundamentally at odds with the AIA and the Progress clause. ..... 20
III. The *NHK-Fintiv* Rule Is Destructive For The Patent System. ..... 22
A. The *NHK-Fintiv* rule undermines the efficiency of the patent system ..... 22
B. The *NHK-Fintiv* rule undermines the integrity of the patent system ..... 28
CONCLUSION ..... 34
CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Fintiv, Inc.*,
No. IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) .......... 3, 22, 25

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) .......... 10

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*,
No. IPR2020-00123, Paper 14 (P.T.A.B. May 15, 2020) .......... 12, 30

*Comcast Cable Commc'ns., LLC v. Rovi Guides, Inc.*,
Nos. IPR2020-00800, IPR2020-00801, IPR2020-00802, Paper 10 (P.T.A.B. Oct. 22, 2020) .......... 14

*Cuozzo Speed Techs. v. Lee*,
579 U.S. 261 (2016) .......... 6, 17, 18, 20, 27

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) .......... 16

*Fitbit, Inc. v. Philips N. Am. LLC*,
No. IPR2020-00828, Paper 13 (P.T.A.B. Nov. 3, 2020) .......... 14

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) .......... 19, 21

*Gundy v. United States*,
139 S. Ct. 2116 (2019) .......... 19

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) .......... 26

*Mistretta v. United States*,
488 U.S. 361 (1989) .......... 20

*Mohasco Corp. v. Silver*,
447 U.S. 807 (1980) .......... 27

*Mylan Labs. Ltd. v. Janssen Pharm. NV*,
No. IPR2020-00440, Paper 17 (P.T.A.B. Sept. 16, 2020) .................. 13

*NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*,
No. IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) ....................... 3

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S. Ct. 1365 (2018) .................................. 5, 6, 16, 17, 18, 19, 20, 21

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) ........................................................................ 26

*Philip Morris Prods. v. RAI Strategic Holdings*,
No. IPR2020-00921, Paper 9 (P.T.A.B. Nov. 16, 2020) ....................... 32

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ......................................................... 6, 7, 17, 23

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) .......................................................................... 6

*Sotera Wireless, Inc. v. Masimo Corp.*,
No. IPR2020-01019, Paper 12 (P.T.A.B. Dec. 1, 2020) ................. 31, 32

*Thryv, Inc. v. Click-To-Call Techs., LP*,
140 S. Ct. 1367 (2020) ..................................................... 5, 7, 8, 20, 21

*United States v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021) ...................................................................... 10

*Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*,
No. IPR2020-01290, Paper 14 (P.T.A.B. Jan. 25, 2021) ............... 25, 32

*Webster v. Doe*,
486 U.S. 592 (1988) ........................................................................ 16

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ........................................................................ 17

**Constitutional Provisions, Statutes, and Regulations**

U.S. Const. art. I, § 8, cl. 8 ......................................................... 6, 16, 20

35 U.S.C. § 311(b) ........ 24, 32

35 U.S.C. § 313 ........ 8

35 U.S.C. § 314(a) ........ 7, 11, 31

35 U.S.C. § 314(b) ........ 23

35 U.S.C. § 314(d) ........ 4

35 U.S.C. § 315(a)(1) ........ 9

35 U.S.C. § 315(a)(2) ........ 9

35 U.S.C. § 315(b) ........ 8, 26, 28

35 U.S.C. § 315(d) ........ 9

35 U.S.C. § 315(e) ........ 9

35 U.S.C. § 316(a)(5) ........ 24

35 U.S.C. § 316(a)(11) ........ 23

35 U.S.C. § 325(d) ........ 8

37 C.F.R. § 42.51 ........ 24

**Other Authorities**

157 Cong. Rec. S1352 (2011) ........ 7

157 Cong. Rec. S1363 (2011) ........ 26

157 Cong. Rec. S5429 (2011) ........ 8

*2019 Year In Review*, Docket Navigator 22, https://tinyurl.com/y6rmnldw ........ 26

*2021 Patent Dispute Report: Year in Review*, Unified Pats. (Jan. 3, 2022), https://tinyurl.com/nhcvu8au ........ 30, 33

*A Guide to Patent Litigation in Federal Court*, Fish & Richardson (2019), https://tinyurl.com/y658goqf................................ 33

Am. Intell. Prop. Law Ass'n, *2021 Report of the Economic Survey* ................................................................................ 24

Dan Bagatell, *Fed. Cir. Patent Decisions In 2021: An Empirical Review* (Jan. 6, 2022), https://tinyurl.com/yckr4zmn ............................................................ 11

Daniel B. Weinger et al., *Tip #1 for Avoiding IPR Institution: Litigation Venue Selection*, Mintz (Oct. 29, 2020), https://tinyurl.com/2p8zps96 ............................................................ 28

David Ruschke & William V. Saindon, *Chat with the Chief: An Analysis of Multiple Petitions in AIA Trials*, USPTO (Oct. 24, 2017), https://tinyurl.com/y7h9gzzb ..................................... 10

Emily N. Weber, *Balancing Purpose, Power, and Discretion Between Article III Courts and the Patent Office*, 86 Mo. L. Rev. 1019 (2021)............................................................... 19, 20

H.R. Rep. No. 112-98, pt. 1 (2011) .......................................... 6, 21, 22, 23

HTIA, *Comments of The High Tech Investors Alliance in Response to Request for Comments*, USPTO (Dec. 6, 2020), https://tinyurl.com/ye55kkbu ............................................................ 30

*Institution Rates Continue Their Downward Slide as NHK-Fintiv Rule Limits IPR Access*, Rational Pat. (Oct. 20, 2021), https://tinyurl.com/yckryfzp .................................................. 13

J. Jonas Anderson & Paul R. Gugliuzza, *Federal Judge Seeks Patent Cases*, 71 Duke L.J. 419 (2021)............................................... 29

Joseph Matal, *PTAB Discretionary Denials Are Unpredictable and Illegal* (Dec. 13, 2021), https://tinyurl.com/2p8c3684 .................................................. 13, 14, 15

Josh Landau, *Inter Partes Review: Five Years, Over $2 Billion Saved*, Pat. Progress (Sept. 14, 2017), https://tinyurl.com/y64yrjhq ........ 24

Josh Landau, *IPR Successes: Scan-To-Email Defeated By Scanner Makers*, Pat. Progress (Oct. 4, 2017), https://tinyurl.com/3nhz63ss ........ 34

Josh Landau, *PTAB Denies IPR Petitions Filed Less Than One Month After Lawsuit*, Pat. Progress (Nov. 19, 2020), https://tinyurl.com/2p97prtd ........ 15

*Litigation Analytics*, Unified Pats., https://tinyurl.com/5fcfm7vr (last visited Feb. 5, 2022) ........ 29

Perryman Group, *An Assessment of the Impact of the America Invents Act and the Patent Trial and Appeal Board on the US Economy* (June 2020), https://tinyurl.com/5bxpxtud ........ 24

PTAB, *PTAB Trial Statistics: FY21 End of Year Outcome Roundup*, USPTO, https://tinyurl.com/bdhtvzbw ........ 10

*PTAB Uses Discretion, Fintiv to Deny Petitions 38% in 2021 to Date*, Unified Pats. (Sept. 22, 2021), https://tinyurl.com/587ke9cr ........ 13

S. Rep. No. 110-259 (2008) ........ 30

Sasha Moss et al., *Inter Partes Review as a Means to Improve Patent Quality*, 46 R Street Shorts 1 (Sept. 2017), https://tinyurl.com/yya2n86u ........ 11

## STATEMENT OF INTEREST[1]

*Amici* are (or as organizations, represent) the world's top innovators and market leaders: Acushnet Company, Alliance for Automotive Innovation (AAI), Comcast Cable Communications, LLC, Computer and Communications Industry Association (CCIA), Dell Inc., Garmin International, Inc., Juniper Networks, Inc., Micron Technology, Inc., SAS Institute Inc., Symmetry, LLC, Taiwan Semiconductor Manufacturing Company, Ltd. (TSMC), Verizon Services Corp., VIZIO, Inc., and VMware, Inc. Although *amici* have disparate interests, all depend on a healthy patent system that promotes and protects technological investment and development while preserving access to market alternatives and lawful competition. Inter partes review (IPR) is a vital part of that system. It efficiently and expertly weeds out the bad patents that stand behind abusive litigation and in the way of real innovation and fair competition.

[1] No party's counsel authored this brief in whole or in part. No party, party's counsel, or any person other than amicus or its counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

*Amici* know firsthand how the binding *NHK-Fintiv* rule—which empowers the Patent Trial and Appeal Board (the Board) to deny IPR petitions based on the pendency of parallel infringement litigation—and the district court's refusal to question it have hobbled IPR. Some *amici* are defendants in infringement suits and have sought out IPR, only to have their meritorious petitions challenged, and too frequently denied, on account of the *NHK-Fintiv* rule. For other *amici*, the *NHK-Fintiv* rule has had a chilling effect on the filing of meritorious petitions altogether. Early disclosure of invalidity arguments places petitioners at a strategic disadvantage in parallel litigation, and makes little sense if IPR is unlikely to be instituted. By cutting off access to IPR, the *NHK-Fintiv* rule not only hurts *amici*, but also hurts the patent system as a whole, undermining its efficiency and integrity.

## INTRODUCTION

For several years now, the Patent Office has been defying its statutory duty to scrutinize the validity of previously issued patents in IPR. It does so based on the status of related district court litigation, a criterion it invented out of whole cloth and enacted outside the procedural bounds of the Administrative Procedure Act (APA). Yet with

scarcely more than a page of reasoning, the decision below placed the Patent Office's rule fully outside the bounds of judicial review. That is exactly the opposite of what Congress had in mind.

Congress expressly contemplated that IPR may coincide with parallel district court proceedings. After all, IPR was designed in part to head off wasteful patent litigation. Specifically, Congress determined that if a district court defendant filed for IPR within one year of being served with a complaint—and met other institution conditions—IPR would be available. That system worked: In its first five years alone, IPR saved participants in the patent system billions of dollars in deadweight legal costs.

And yet, pursuant to the rule the Director adopted by designating as precedential the decisions in *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*, No. IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) (*NHK*), and *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (*Fintiv*), the Director of the PTO, acting through the Board, has been denying meritorious IPR petitions just because IPR petitioners are also defendants in district court infringement actions. Since the mine-run of IPR petitions arise in the

context of a parallel infringement action, the *NHK-Fintiv* rule is dispositive in many cases of whether IPR is instituted at all.

As Appellants note, the *NHK-Fintiv* rule contravenes Congress's deliberate decision in the AIA to allow IPR to advance notwithstanding parallel proceedings. Appellants' Br. 5-6. The rule is also arbitrary and capricious and, in any event, required notice-and-comment rulemaking under the APA. Appellants' Br. 6-7. The district court did not reach those serious problems, instead ruling that the *NHK-Fintiv* rule was unreviewable. As Appellants explain, that is wrong. The district court's decision not to address the merits of this case is also consequential: The *NHK-Fintiv* rule is frustrating Congress's aim of providing a more efficient alternative to litigation and yielding unintended and irrational results.

Absent reversal by this Court, the district court's mistaken application of the § 314(d) jurisdictional bar to Appellants' APA claims ensures that the *NHK-Fintiv* rule continues to harm the patent system as a whole. This is not a one-shot refusal to institute a single IPR proceeding. The *NHK-Fintiv* rule raises the costs of challenging poor-quality patents where Congress meant to lower them, encourages

gamesmanship and abusive litigation, and ultimately "leav[es] bad patents enforceable." *Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020). Congress "qualifie[d] any property rights that a patent owner has in an issued patent" with the possibility that they may be subject to cancelation in IPR. *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1375 (2018). By cutting down IPR in circumstances where Congress expressly contemplated that it would take place, the PTO has undermined the patent "scheme" Congress devised—effectively revising the terms of patents themselves. *Id.* at 1376. In other words, the *NHK-Fintiv* rule reshapes the patent system in a way that threatens its integrity and raises constitutional concerns. Congress did not immunize a rule with such far-reaching effects from judicial scrutiny.

## ARGUMENT

### I. Congress Created IPR For District Court Defendants To Challenge Bad Patents, But The *NHK-Fintiv* Rule Locks Them Out.

#### A. Congress charged the PTO with addressing serious problems with the patent system through IPR.

The Constitution assigns Congress the "power" to create and maintain a patent system that "promote[s] the Progress of Science and

useful Arts." *Oil States*, 138 S. Ct. at 1374 (quoting U.S. Const. art. I, § 8, cl. 8). In exercising that power, Congress must strike a "difficult balance between the interest of authors and inventors in the control and exploitation of their writings and discoveries on the one hand, and society's competing interest in the free flow of ideas, information, and commerce on the other hand." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984); *cf. Cuozzo Speed Techs. v. Lee*, 579 U.S. 261, 281 (2016) (explaining tradeoff between "draw[ing] useful information from the disclosed invention" and "tying up … knowledge"). In other words, the charge of Congress is to promote progress, issuing patents only when doing so supports that aim.

Over a decade ago, Congress recognized that "difficult balance" was in trouble. There were too many "bad patents" out there. *See* H.R. Rep. No. 112-98, pt. 1, at 39 (2011) (House Report) (describing "a growing sense that questionable patents are too easily obtained and are too difficult to challenge"); *see also SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018). And the costs of challenging them were extremely high. *Cf.* House Report at 40. Patent Assertion Entities—companies whose only assets are patents acquired from third parties—were taking

advantage of patent prosecution strategies to create thickets of patents they never used, instead only asserting them to generate revenue.

The AIA was Congress's effort to solve that serious problem. The solution it created was IPR, a trial-like "procedure [that] allows private parties to challenge previously issued patent claims" before the Patent Office. *SAS*, 138 S. Ct. at 1352. In putting "questions of patentability" before an administrative agency with the "expertise" a lay jury lacks, Congress expected IPR proceedings to reliably and efficiently arrive at the right result. 157 Cong. Rec. S1352 (2011) (Sen. Udall); *see Thryv*, 140 S. Ct. at 1374. With IPR as an option, companies facing nuisance infringement suits would no longer feel forced to settle due to the high costs of district court litigation; they could instead turn to the Board to quickly, affordably, and reliably cancel patents that the Patent Office never should have issued.

In chapter 31 of Title 35, Congress laid out the factors the Director of the Patent and Trademark Office must and may consider when deciding whether to institute IPRs. *E.g.*, 35 U.S.C. § 314(a) (the Director must consider whether "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims

challenged in the petition"); *id.* § 325(d) (the Director "may" consider whether "the same or substantially the same prior art or arguments previously were presented to the Office").

Congress chose not to include the progress of a co-pending district court infringement action in that list. To the contrary, Congress expressly provided that a district court defendant could file an IPR petition for an entire year following the initiation of a district court infringement action. *Id.* § 315(b). Only if the defendant waits longer is the agency supposed to deny institution. *Cf.* 35 U.S.C. § 313 (limiting non-institution arguments in the patent owner's preliminary response to "failure of the petition to meet any requirement *of this chapter*" (emphasis added)). Congress considered how IPR and district court litigation would work side by side, and it determined the one-year timeline would best "minimize burdensome overlap between inter partes review and patent-infringement litigation." *Thryv*, 140 S. Ct. at 1375; *see* 157 Cong. Rec. S5429 (2011) (Sen. Kyl) (explaining the § 315(b) time frame was extended from 6 months to 1 year to "afford defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation"). Section 315(b) built

in time specifically so that a district court defendant could turn to the Board to efficiently invalidate bad patents asserted against it in court.

Other provisions of the AIA confirm that Congress did not want the Director to consider the progress of district court litigation in institution decisions. *See* Appellants' Br. 11-13. After all, Congress knows how to tell the agency to take account of related actions. It authorized the Director to alter, and even "terminat[e]," an IPR if a related matter is also pending before the PTO. 35 U.S.C. § 315(d). Similarly, it chose to bar institution where a petitioner had previously challenged the patent's validity in a declaratory action, *id.* § 315(a)(1), and to automatically stay declaratory actions if patent challengers file them after petitioning for IPR, *id.* § 315(a)(2). And Congress laid out the preclusive effects of IPR for district court litigation. *Id.* § 315(e). In short, the statute shows that Congress was aware of potential overlap between proceedings—it was no doubt aware, too, of the supposed "rocket dockets" out there—yet Congress specifically chose not to preclude institution on the basis of a parallel district court infringement action.

For years, that is how IPR worked: District court defendants turned to the Patent Office when faced with bad patent claims. Most instituted petitions—85%—involved a co-pending district court case.[2] And IPR worked well: The PTO instituted IPRs in response to meritorious petitions and cleared out obstacles to innovation. According to data from the PTO, when an IPR resulted in a final written decision, 68% of the challenged claims were invalidated.[3] Overall, the PTO reported that only 21% of petitions that ended with a final written decision concluded all challenged claims were rightly patented.[4]

This Court has recognized the Board's decisions are generally of "high[] quality," too, bearing out Congress's expectation that administrative patent judges' "technical expertise and experience" would give them a comparative advantage over district courts in assessing patent validity. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941

---

[2] *See* David Ruschke & William V. Saindon, *Chat with the Chief: An Analysis of Multiple Petitions in AIA Trials* 10, USPTO (Oct. 24, 2017), https://tinyurl.com/y7h9gzzb (reporting that "85% of IPRs in Fiscal Year 2017 have a co-pending district court case").

[3] *See* PTAB, *PTAB Trial Statistics: FY21 End of Year Outcome Roundup* 13, USPTO, https://tinyurl.com/bdhtvzbw.

[4] *PTAB Trial Statistics* 11, *supra*, n.3.

F.3d 1320, 1336 (Fed. Cir. 2019), *vacated and remanded sub nom. United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021).[5] Overall, IPR was hailed as "a significant improvement over district court litigation" and "clearly" successful "as a means to increase patent quality."[6]

### B. The *NHK-Fintiv* rule turns Congress's directive on its head.

Pursuant to the *NHK-Fintiv* rule, the Director of the PTO, acting through the Board, now denies institution of petitions just because petitioners are defendants in district court infringement actions. These denials have nothing to do with the merits of a petition for IPR; if the petitions were not meritorious, they would be denied instead for lack of "a reasonable likelihood that the petitioner w[ill] prevail." 35 U.S.C. § 314(a). The *NHK-Fintiv* rule replaces Congress's bright-line rule *permitting* IPR when parallel infringement litigation is pending with a

---

[5] *See also* Dan Bagatell, *Fed. Cir. Patent Decisions In 2021: An Empirical Review*, Law360 (Jan. 6, 2022), https://tinyurl.com/yckr4zmn (demonstrating this Court affirms Board decisions at a higher rate than district court decisions).

[6] *See* Sasha Moss et al., *Inter Partes Review as a Means to Improve Patent Quality*, 46 R Street Shorts 1, 4 (Sept. 2017), https://tinyurl.com/yya2n86u.

speculative, malleable standard that *blocks* IPR because of parallel infringement actions.

But Congress knew—and codified its view—that IPR is more important, not less, when there is co-pending litigation. Nothing in the text of the AIA permits the Director to deny IPR on the basis of co-pending district court litigation; to the contrary, the AIA contemplates that IPR and district court litigation will operate in tandem. *See* Appellants' Br. at 11-13; *supra* § I.A. As Administrative Patent Judge (and Board member) Crumbley put it, the *NHK-Fintiv* rule is "contrary to [Congress's] goal of providing district court litigants an alternative venue to resolve questions of patentability." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00123, Paper 14 at 11 (P.T.A.B. May 15, 2020) (dissenting); *id.* (The rule "tip[s] the scales against a petitioner merely for being a defendant in the district court," without any "basis … either in the text of the statute or in the intent of Congress in passing it.").

The prior Director's decision to deny IPRs based on co-pending litigation quickly created harmful effects on the patent system. IPR

institutions have plummeted,[7] thanks largely to the rule. The *NHK-Fintiv* rule has deterred many petitioners, some *amici* included, from even turning to IPR to challenge invalid patents in many instances. Many accused infringers have opted not to preview their detailed invalidity arguments in an IPR petition, knowing that the petition is unlikely to be granted. And when they do file IPR challenges, they face steep denial rates. In the first three quarters of 2021, procedural denials accounted for almost 40% of all denials, and 73% of those were based on *NHK-Fintiv*.[8]

The Director is applying the rule more capriciously than ever. Even a former Acting Director of the PTO has decried the rule for creating "an unprecedented degree of chaos and uncertainty."[9] The Director has been denying institution where the related proceedings include cases that do not even involve the petitioner. *See Mylan Labs.*

---

[7] *See, e.g.*, *Institution Rates Continue Their Downward Slide as NHK-Fintiv Rule Limits IPR Access*, Rational Pat. (Oct. 20, 2021), https://tinyurl.com/yckryfzp.

[8] *See PTAB Uses Discretion, Fintiv to Deny Petitions 38% in 2021 to Date*, Unified Pats. (Sept. 22, 2021), https://tinyurl.com/587ke9cr.

[9] *See* Joseph Matal, *PTAB Discretionary Denials Are Unpredictable and Illegal*, Law360 (Dec. 13, 2021), https://tinyurl.com/2p8c3684.

*Ltd. v. Janssen Pharm. NV*, No. IPR2020-00440, Paper 17 at 13-14, 16-17, 19 (P.T.A.B. Sept. 16, 2020); *Fitbit, Inc. v. Philips N. Am. LLC*, No. IPR2020-00828, Paper 13 at 10-12, 15-16 (P.T.A.B. Nov. 3, 2020).

The Director has also extended the *NHK-Fintiv* rule to investigations in the International Trade Commission (ITC), which lacks the legal authority to cancel invalid patent claims. *See, e.g.*, *Comcast Cable Commc'ns., LLC v. Rovi Guides, Inc.*, Nos. IPR2020-00800, IPR2020-00801, IPR2020-00802, Paper 10 (P.T.A.B. Oct. 22, 2020). In fact, in 2021, institution was repeatedly denied because of ITC decisions expected to precede the Board's final decision only by a matter of weeks.[10] This is highly inefficient: When the Board defers to a tribunal that cannot actually invalidate patent claims, parties must still engage in costly district court proceedings to finally cancel the bad patents.

To make matters worse, "while early trial dates remain the most important factor" under *NHK-Fintiv*, "they are no longer a reliable predictor of whether institution will be granted or denied."[11] Last year,

---

[10] *See* Matal, *supra*, n.9 (collecting cases).
[11] *Id.*

the Director instituted IPRs where the district court trial was scheduled to precede the Board's final written decision by three to eleven months—and denied institution where trial was scheduled to precede the Board's final written decision by the same lead time of three to eleven months.[12] The longer the *NHK-Fintiv* rule has stayed on the books, the less predictable the Director's application of the rule has become.

Congress created IPR to efficiently clear bad patents from the path of innovation. The *NHK-Fintiv* rule, however, effectively "eliminat[es]" IPR "as a viable alternative to challenging patents in litigation."[13] The rule has been applied in an increasingly expansive and unpredictable way, leaving petitioners with no reliable way to challenge patent validity as the AIA contemplates. Congress did not empower the Director to disregard its will, immune from judicial review. *See* Appellants' Br. 28-33, 43-46.

---

[12] *Id.*

[13] Josh Landau, *PTAB Denies IPR Petitions Filed Less Than One Month After Lawsuit*, Pat. Progress (Nov. 19, 2020), https://tinyurl.com/2p97prtd.

## II. The *NHK-Fintiv* Rule Raises Constitutional Concerns.

### A. The *NHK-Fintiv* rule undermines Congress's authority.

The *NHK-Fintiv* rule constitutes such a significant departure from the patent scheme devised by Congress, it raises separation-of-powers concerns. By effectively foreclosing IPR in the event of parallel district court litigation, the PTO has rewritten the terms of the public franchises conferred by Congress. And by ceding power over the adjudication of patent validity to the Judiciary, the PTO has upset the balance of power between Congress, the Executive, and the Courts. Because the *NHK-Fintiv* rule implicates constitutional questions, the district court's justiciability ruling is particularly implausible. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012) (noting that a "heightened showing" is required to determine that "Congress intends to preclude judicial review of constitutional claims" (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988))).

The granting of patents is a "constitutional function[]," *Oil States*, 138 S. Ct. at 1374, vested by the Framers in the Legislative Branch. *See* Art. I, § 8, cl. 8. In exercising this function, Congress determined that the possibility of post-grant IPR would be one of the "conditions

and tests for patentability." *Oil States*, 138 S. Ct. at 1377. That is, the "public franchise" bestowed on a patent owner by Congress comes with strings attached: The patent is only "granted subject to the qualification that the PTO has 'the authority to reexamine—and perhaps cancel—a patent claim'" in IPR. *Id.* at 1373-74 (quoting *Cuozzo*, 136 S. Ct. at 2137).

Yet by drastically reducing the availability of IPR, the PTO has altered the terms of patent grants, contrary to the will of Congress. This the Constitution will not permit. *Cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring) (finding Executive power at its lowest ebb where it "takes measures incompatible with the expressed or implied will of Congress"). The PTO lacks any authority—let alone the unreviewable authority the Director claims—to revise the terms under which patents are granted by Congress. Although the AIA vests the Director with a certain amount of discretion over decisions to institute IPR, that does not permit the PTO to "exceed its statutory bounds." *SAS*, 138 S. Ct. at 1352; *see* Appellants' Br. 13. Under the Constitution, authority to confer and

define the scope of patents, including the conditions under which they might be withdrawn, belongs to Congress alone.

Moreover, under the *NHK-Fintiv* rule, the PTO has abdicated its power to adjudicate patent validity, leaving that job to the Judiciary. But that is not the allocation of power chosen by Congress. Congress is entitled to either "'reserve to itself the power to decide [patent validity],' 'delegate that power to executive officers,' or 'commit it to judicial tribunals.'" *Oil States*, 138 S. Ct. at 1378. The IPR scheme in the AIA reflects a careful calibration of those options on the part of Congress. With the *NHK-Fintiv* rule, however, the PTO has supplanted Congress's decision—reshuffling the allocation of power between itself and the courts.

While Congress has always permitted the Judiciary to adjudicate patent validity in the context of litigation, IPR is not a "surrogate for court proceedings." *Cuozzo*, 579 U.S. at 278-79. "[T]he purpose of [IPR] is not quite the same" as the purpose of litigation—IPR not only "resolve[s] concrete patent-related disputes among parties," but also keeps "patent monopolies … within their legitimate scope." *Id.* at 279-80 (quotation marks omitted). IPR, unlike district court litigation,

"involves the same interests as the determination to grant a patent in the first instance." *Oil States*, 138 S. Ct. at 1374. In other words, Congress "reserved the PTO's authority" for a particular role within the patent system. *Id.* at 1373. And it is incumbent on the PTO "to give effect to the constitutional standard by appropriate application … of the statutory scheme of the Congress." *Graham v. John Deere Co.*, 383 U.S. 1, 6 (1966). Instead, with the *NHK-Fintiv* rule, the PTO has abdicated its duties.

By purporting to shift responsibility for validity decisions from the PTO to the courts, the *NHK-Fintiv* rule improperly arrogates to the agency the power to define the bounds of its own authority. Courts have long recognized that a branch of government may attempt to "disguise … responsibility for … [its] decisions" by handing them over to another branch. *Gundy v. United States*, 139 S. Ct. 2116, 2135 (2019) (Gorsuch, J., dissenting) (discussing the legislative non-delegation doctrine) (ellipsis in original). And if anything, the *NHK-Fintiv* rule constitutes "[a] significant enlargement of the [PTO's] authority." Emily N. Weber, *Balancing Purpose, Power, and Discretion Between Article III Courts and the Patent Office*, 86 Mo. L. Rev. 1019, 1032

(2021). The discretion the PTO has claimed "departs from the intent of the legislature" and "cultivates the Director's position as one of significant influence and control." *Id.* at 1042.

The Supreme Court has "not hesitated to strike down" legal rules, like the *NHK-Fintiv* rule, that "undermine the authority … of one or another coordinate Branch." *Mistretta v. United States*, 488 U.S. 361, 382 (1989). This Court should not immunize from scrutiny the PTO's challenge to Congress's patent power.

### B. The *NHK-Fintiv* rule is fundamentally at odds with the AIA and the Progress clause.

The *NHK-Fintiv* rule also runs headlong into the premise of the patent grant contemplated in the Constitution: promoting "Progress of Science and useful Arts." U.S. Const. Art. I § 8, cl. 8. IPR eliminates patents that were invalid from the start, but the result of the *NHK-Fintiv* rule is to "leav[e] bad patents enforceable." *Thryv*, 140 S. Ct. at 1374; *see supra* 12-15.

"[T]he Board's inter partes review protects 'the public's paramount interest'" in properly-issued patents. *Oil States*, 138 S. Ct. at 1374 (quoting *Cuozzo*, 136 S. Ct. at 2144). Put simply, the culling process of IPR is critical because bad patents stifle "Progress." Patents remove

"knowledge from the public domain," *Graham*, 383 U.S. at 6, and that cost is worthwhile only if balanced by the benefit of innovation. But bad patents monopolize public knowledge without offering any benefit in return, in fact blocking others from innovating in the field. The Supreme Court has been clear that IPR, no less than initial patent grants, bears on those important constitutional aims. *Oil States*, 138 S. Ct. at 1374.

Congress created IPR in the exercise of its constitutional duty to promote scientific progress. House Report at 40. It knew, too, that "overpatenting" results in the "diminishment of competition." *Thryv*, 140 S. Ct. at 1374. By rewarding and retrenching the abusive tactics of Patent Assertion Entities and blunting the best tool for invalidating dubious patents, the *NHK-Fintiv* rule undermines the most basic aim of the AIA: to "improve patent quality." House Report at 40. This is of particular concern to the *amici* companies, which hold vast patent portfolios. But it is a problem for everyone: Poor-quality patents and litigation abuse diminish investor confidence in patent rights, crowd out real innovation, and ultimately threaten the United States' "competitive edge in the global economy." House Report at 40.

While the Director claims it is within his discretion not to institute meritorious IPRs based on various policy goals, neither Congress nor the Constitution permits his approach. IPR serves an important constitutional function that should not be ignored.

## III. The *NHK-Fintiv* Rule Is Destructive For The Patent System.

In the face of those serious concerns, the Director has justified the *NHK-Fintiv* rule on the grounds that it advances the "efficiency and integrity of the system." *Fintiv*, Paper 11 at 6. In fact, it does just the opposite.

### A. The *NHK-Fintiv* rule undermines the efficiency of the patent system.

To start, the NHK-Fintiv rule does not enhance the "efficiency … of the system." *Fintiv*, Paper 11 at 6; *see* Appellants' Br. 5. As a former Acting Director recently put it, the "efficiency" rationale is "ironic, given that one of the more substantial drains on the board's resources these days" is the *NHK-Fintiv* rule itself.[14]

In the first place, Congress already decided that opening doors to IPR within one year of being served with a district court complaint, not

[14] Matal, *supra*, n.9.

closing them, improves system efficiency. *Supra* § I; *see* Appellants' Br. 9-10. The Director is powerless to second-guess Congress's judgment. *See SAS*, 138 S. Ct. at 1358 ("It is Congress's job to enact policy and it is this Court's job to follow the policy Congress has prescribed.").

In any event, Congress was right: IPR is a more efficient means of getting rid of bad patents. As a quicker and cheaper way to resolve patent validity disputes, IPR "limit[s] unnecessary and counterproductive litigation costs." House Report at 40. Unlike litigation, which typically takes over two years to complete, the Board must render its decision within 12 months of institution.[15] *See* 35 U.S.C. §§ 314(b), 316(a)(11) (agency must make institution decision within three months and reach final written decision within one year of institution). That speed is a function of IPR's streamlined procedures, which (among other things) limit the grounds of invalidity and the extent of discovery. *See* 35 U.S.C. §§ 311(b), 316(a)(5); 37 C.F.R. § 42.51.

---

[15] Moss, *supra*, n.6.

IPR is not only quicker and simpler than litigation, but also markedly less expensive than litigation: For instance, the median cost of an IPR in the electrical or computer sector is $450,000, compared to the $4 million it takes to resolve a comparable case in litigation.[16] All told, IPR saved petitioners and patent owners approximately $2.31 billion in deadweight loss during its first five years.[17] These cost-savings are especially critical to smaller, less-established players who rely on IPR to fight off meritless, though expensive, infringement suits.

The notion that the *NHK-Fintiv* rule nevertheless improves efficiency rests on the assumption that district courts, because they have scheduled early trial dates, will resolve parallel validity disputes more quickly than the Board will. *Fintiv*, Paper 11 at 9. That is wrong three times over.

---

[16] Am. Intell. Prop. Law Ass'n, *2021 Report of the Economic Survey* 61-62. These numbers may even underestimate the savings in IPR given that there are often multiple litigations concerning the same patent, for instance in district court and before the ITC.

[17] Josh Landau, *Inter Partes Review: Five Years, Over $2 Billion Saved*, Pat. Progress (Sept. 14, 2017), https://tinyurl.com/y64yrjhq; *see also* Perryman Group, *An Assessment of the Impact of the America Invents Act and the Patent Trial and Appeal Board on the US Economy* 4 (June 2020), https://tinyurl.com/5bxpxtud (estimating "direct cost savings over the 2014-19 period of $2.644 billion").

*First*, trial dates are in fact frequently postponed. *See* Appellants' Br. 17-19 (collecting cases). A recent empirical study reveals that of all the discretionary IPR denials between February 2019 and September 2020, "[*o*]*nly one* of the trial dates used in the related institution decisions was accurate." Weber, *supra*, at 1038. Many trials "occurred long after the expected trial date listed in the institution denial," and in a full third of the IPRs studied, the district court case had "*yet to be heard*" at the study's publication—including *Fintiv* itself. *Id.* at 1038-39. When the Board denies institution only for the trial date to be pushed near or past the deadline for a final written decision, any supposed efficiency gains from denying IPR disappear.

If there is a risk of "inefficiency and duplication of efforts," *Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*, No. IPR2020-01290, Paper 14 at 8 (P.T.A.B. Jan. 25, 2021), the appropriate response is not to shut off access to IPR altogether but to stay district court proceedings upon IPR institution. That is what Congress expected would happen. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *3-4 (D. Del. Aug. 21, 2019) (analyzing 157 Cong. Rec. S1363 (2011) (Sen. Schumer) and concluding that for

IPR, "Congress intended for district courts to be liberal in granting stays"). And it is what usually happened before the *NHK-Fintiv* rule took hold.[18] When the district court stays litigation pending an instituted IPR, the parties can avail themselves of the quicker and cheaper administrative process to narrow the issues for the district court or even obviate the need for litigation altogether, just as Congress intended.

*Second*, the *NHK-Fintiv* rule complicates a threshold timeliness decision. Of course, Congress already considered when institution would be timely, and it codified its decision in the one-year limit of § 315(b). There is nothing efficient about the PTO's decision to reconsider the timeliness determination, not least because it lacks the authority to do so. *Cf. Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) (holding additional timeliness requirement of laches may not be invoked where Copyright Act already included timeliness provision).

---

[18] *See 2019 Year In Review*, Docket Navigator 22, https://tinyurl.com/y6rmnldw (71% of stay requests granted in full).

The *NHK-Fintiv* rule is inefficient on its own terms, too, because it "fails [the] basic test of how a timing requirement should operate."[19] The rule transforms a clear and predictable timeline into a multi-factor guessing game about how district court litigation will pan out. *See supra* 13-15 & n.8 (discussing unpredictability of institution decisions under *NHK-Fintiv*). The considerable resources parties, the PTO, and this Court have already spent on the *NHK-Fintiv* rule give lie to any claim of "efficiency"—or equity. *Cf. Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.").

*Finally*, the Director's flawed efficiency calculus loses sight of a key reason Congress created IPR: accurate adjudication of patent validity. *See* House Report at 40 (AIA intended to "improve patent quality"). IPR is a "specialized agency proceeding," *Cuozzo*, 579 U.S. at 279, that places the evaluation of patent claims in the hands of trained patent judges with the relevant technical know-how and experience.

---

[19] Matal, *supra*, n.9.

Congress intended the Board to have priority over lay juries in evaluating patent claims, providing for IPR up to a year following the initiation of a district court infringement action, 35 U.S.C. § 315(b)—regardless of the potential inefficiencies involved. In short, even if the Director were correct that the *NHK-Fintiv* rule services efficiency (which it does not), the rule still frustrates Congress's intent.

### B. The *NHK-Fintiv* rule undermines the integrity of the patent system.

The *NHK-Fintiv* rule further frustrates Congress's goal of improving the integrity of the patent system. The most obvious problem with the *NHK-Fintiv* rule is that it exacerbates the serious problem of forum shopping. *See* Appellants' Br. 4-5. Law firms now advertise: "Tip #1 for Avoiding IPR Institution: Litigation Venue Selection."[20] Because the rule makes institution less likely the sooner a trial date is scheduled, it creates a powerful incentive for plaintiffs (who will generally wish to avoid IPR) to seek out the fora with the speediest dockets and lowest rates of granting stays. Indeed, the data reveals

---

[20] Daniel B. Weinger et al., *Tip #1 for Avoiding IPR Institution: Litigation Venue Selection*, Mintz (Oct. 29, 2020), https://tinyurl.com/2p8zps96.

that patent infringement plaintiffs—especially Patent Assertion Entities that make their money off litigation—are doing exactly that. The Waco Division of the Western District of Texas, for instance, which is known for moving its cases along quickly, has seen a 3,624% increase in patent cases in the last three years,[21] and was host to 30.4% of all litigation brought by Patent Assertion Entities in 2021.[22] The Eastern District of Texas, another "rocket docket," has also seen a disproportionately high share of patent cases.[23] And, because of the *NHK-Fintiv* rule, that forum shopping is being rewarded, in the form of IPR denials: The Western and Eastern Districts of Texas account for

[21] This is based on statistics from Docket Navigator showing 25 cases were filed in 2018 compared to 931 in 2021; *see also* J. Jonas Anderson & Paul R. Gugliuzza, *Federal Judge Seeks Patent Cases*, 71 Duke L.J. 419 (2021).

[22] *Litigation Analytics*, Unified Pats., https://tinyurl.com/5fcfm7vr (last visited Feb. 5, 2022); *2021 Patent Dispute Report: Year in Review*, Unified Pats. (Jan. 3, 2022), https://tinyurl.com/nhcvu8au (83% of patent cases in the Western District of Texas were brought by Patent Assertion Entities).

[23] *Litigation Analytics*, *supra*, n.22 (showing the district is the third most popular venue for Patent Assertion Entities).

the majority of denials under the *NHK-Fintiv* rule.[24] These tactics—the natural and predictable result of the incentives created by the *NHK-Fintiv* rule—feed the "perception that justice in patent cases can be 'gamed,'" an outcome that "does not serve the interests of justice, or the patent system as a whole." S. Rep. No. 110-259, at 53 (2008) (Sen. Specter).

Under the *NHK-Fintiv* rule, there is no good way to counteract that gamesmanship. Well-resourced defendants could try to forgo the statutorily guaranteed one-year petitioning period and seek IPR as soon as they are served with infringement complaints, "hazard[ing] a guess as to the claims that will be asserted by the Patent Owner." *Cisco*, Paper 14 at 12 (Crumbley, APJ., dissenting). (Less-established players may not have the knowledge or means to take this tack.) But, as demonstrated above, that's far from a guarantee of success. *See supra* 15 n.12 (noting denials where IPR petition is filed mere weeks after district court litigation). And Petitioners would be giving their

---

[24] HTIA, *Comments of The High Tech Investors Alliance in Response to Request for Comments* 5, USPTO (Dec. 6, 2020), https://tinyurl.com/ye55kkbu.

opponents a sneak-peak at their legal strategy for the infringement suit and getting nothing in return. Some *amici* have refrained from petitioning for IPR at all while the *NHK-Fintiv* rule reigns.

Even where pushing forward with a rushed petition isn't wholly futile, the costs to petitioners and the Board are substantial. Petitioners who haven't had sufficient time to vet their cases may file shotgun-style petitions instead of carefully crafted rifle shots with their best arguments in their best form. And the Board will have to devote additional resources to resolving these bloated, premature petitions. The time crunch could also cause petitioners with strong claims of invalidity to end up with weak petitions, subject to denial on the merits under 35 U.S.C. § 314(a).

Petitioners have also sought to forestall denials under the *NHK-Fintiv* rule by dropping from the litigation any issues that overlap with the IPR. *See Sotera Wireless, Inc. v. Masimo Corp.*, No. IPR2020-01019, Paper 12 at 18-19 (P.T.A.B. Dec. 1, 2020) (designated precedential Dec. 17, 2020). But a stipulation may limit or even deprive a party of the

ability to make certain meritorious patent invalidity arguments.[25] And as some *amici* can attest, stipulating to drop overlapping issues may not even work. *See, e.g.*, *Verizon*, Paper 14 at 15-18 (denying institution notwithstanding stipulation to drop main overlapping issues); *Philip Morris Prods. v. RAI Strategic Holdings*, No. IPR2020-00921, Paper 9 at 19, 28-29 (P.T.A.B. Nov. 16, 2020) (similar). The Board has offered no clear criteria for what type of stipulation would enable parties to proceed with IPR under *Sotera*, creating even more confusion and unpredictability around IPR.

The rise of *NHK-Fintiv* discretionary denials undermines the integrity of the patent system in still another fundamental way: As the *NHK-Fintiv* rule lowers the likelihood of obtaining IPR, it increases the value of nuisance suits. Some *amici* companies, as leading high-tech

---

[25] For example, a defendant may feel compelled to agree not to raise in a parallel district court infringement action any of the prior art references at issue in the petitioned-for IPR proceedings. But that would foreclose the defendant from making the argument—in *either* forum—that a prior art reference combined with a prior art system renders the patent obvious. The defendant will have forgone their ability to argue on the basis of the relevant prior art references in district court proceedings, and cannot make arguments based on prior art systems in IPR. *See* 35 U.S.C. § 311(b) (claims may be made "only on the basis of prior art consisting of patents or printed publications").

innovators, frequently face frivolous infringement complaints. Indeed, 87% of recent patent disputes involving high tech were filed by Patent Assertion Entities.[26] Cutting off access to IPR eliminates one of the best tools companies like *amici* have for fighting back these specious claims.

With the availability of IPR in doubt, companies, including *amici*, have been and will be redirected resources to fighting or, more realistically, settling these nuisance suits. Fewer than 10% of patent infringement suits are litigated to final judgment.[27] Smaller or newer entrants to the market are especially vulnerable to the extortive efforts of Patent Assertion Entities, as they lack the significant resources needed to shoulder the weight of a full district court action on the merits. Settling may be the right business move, but it leaves questionable patents still standing, ready to be reasserted over and over again.[28]

---

[26] *2021 Patent Dispute Report*, *supra*, n.22.

[27] *A Guide to Patent Litigation in Federal Court*, Fish & Richardson (2019), https://tinyurl.com/y658goqf.

[28] As the case of the Patent Assertion Entity MPHJ illustrates, even FTC action and state laws prohibiting the bad faith assertion of patent

The *NHK-Fintiv* rule has already done serious damage to the patent system and is poised to do yet more. This Court should not leave it outside the scope of review any longer.

## CONCLUSION

For the foregoing reasons and the reasons explained in Appellant's briefs, the Court should reverse.

Dated: February 15, 2022

Respectfully Submitted,
/s/ Mark S. Davies

Alexandra Bursak
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-3737

Mark S. Davies
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8464

*Counsel for Amici Curiae*

---

claims may not be effective where bad patents remain in place. Josh Landau, *IPR Successes: Scan-To-Email Defeated By Scanner Makers*, Pat. Progress (Oct. 4, 2017), https://tinyurl.com/3nhz63ss. Only an IPR action finally shut down MPHJ's bad patents. *Id.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 29(b) and Fed. Cir. R. 32(b), because this brief contains 6,460 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Mark S. Davies*
Mark S. Davies
*Counsel for Amici Curiae*