No. 2022-1249

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

APPLE INC., *et al.*,

Plaintiffs-Appellants,

v.

KATHERINE K. VIDAL,
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office,

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of California in Case No. 20-cv-6128,
Judge Edward J. Davila

# BRIEF FOR APPELLEE


MICHAEL D. GRANSTON
*Deputy Assistant Attorney General*

DANIEL TENNY
WEILI J. SHAW
*Attorneys, Appellate Staff*
*Civil Division, Room 7240*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*(202) 514-1371*

*Of Counsel:*

THOMAS W. KRAUSE
*Solicitor*

FARHEENA Y. RASHEED
*Deputy Solicitor*

MICHAEL S. FORMAN
*Associate Solicitor*
*Office of the Solicitor*
*U.S. Patent and Trademark Office*
*Mail Stop 8, P.O. Box 1450*
*Alexandria, Virginia 22313*
*(571) 272-9035*

# TABLE OF CONTENTS

**Page**


STATEMENT OF RELATED CASES ..... ix

STATEMENT OF JURISDICTION ..... 1

STATEMENT OF THE ISSUES ..... 1

STATEMENT OF THE CASE ..... 2

A. Statutory and Regulatory Background ..... 2

B. District Court Proceedings ..... 7

SUMMARY OF ARGUMENT ..... 10

ARGUMENT ..... 12

I. Standard of Review ..... 12

II. Plaintiffs Lack Standing to Challenge Factors Considered in Exercising the Director's Unreviewable Discretion to Decline Institution ..... 13

A. Plaintiffs Bear the Burden of Establishing Injury in Fact, Causation, and Redressability ..... 13

B. Plaintiffs Have Not Established an Injury in Fact ..... 15

C. Plaintiffs Have Not Established Causation or Redressability ..... 24

III. Plaintiffs' Claims Are Not Justiciable Under the APA ..... 25

A. The AIA Precludes Judicial Review ..... 26

B. The Challenged Actions Are Committed to Agency Discretion by Law ..... 36

CONCLUSION ..... 39

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*ABS Glob., Inc. v. Cytonome/ST, LLC*,
984 F.3d 1017 (Fed. Cir. 2021) ........................................16

*Alarm.com Inc. v. Hirshfeld*,
26 F.4th 1348 (Fed. Cir. 2022) ........................................27

*Almond Bros. Lumber Co. v. United States*,
721 F.3d 1320 (Fed. Cir. 2013) ........................................37

*Apple Inc. v. Fintiv, Inc.*,
No. IPR2020-19, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020)........6, 7

*Apple Inc. v. Qualcomm Inc.*,
992 F.3d 1378 (Fed. Cir. 2021) ........................................ 18, 20

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ........................................15

*AVX Corp. v. Presidio Components, Inc.*,
923 F.3d 1357 (Fed. Cir. 2019) ........................................ 16, 18

*Block v. Community Nutrition Inst.*,
467 U.S. 340 (1984) ........................................26

*Cisco Sys. Inc., In re*,
834 F. App'x 571 (Fed. Cir. 2020)........................................8

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........................................36-37

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........................................20

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................ 22, 23

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) ........................................ 3, 4, 5, 9, 28, 32, 35

*Department of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) ....................31

*Elgin v. Department of Treasury*,
567 U.S. 1 (2012) ....................26

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) .................... 15, 24

*General Elec. Co. v. United Techs. Corp.*,
928 F.3d 1349 (Fed. Cir. 2019)....................16

*Heckler v. Chaney*,
470 U.S. 821 (1985) .................... 30, 36, 37, 38

*Hinck v. United States*,
550 U.S. 501 (2007) ....................26

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ....................37

*Lindahl v. Office of Pers. Mgmt.*,
470 U.S. 768 (1985) ....................31

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................... 14, 15, 24

*Military-Veterans Advocacy v. Secretary of Veterans Affairs*,
7 F.4th 1110 (Fed. Cir. 2021)....................19

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
989 F.3d 1375 (Fed. Cir. 2021), *cert. denied*,
142 S. Ct. 874 (2022) .................... 4, 21, 27, 34, 37

*NHK Spring Co. v. Intri-Plex Techs., Inc.*,
No. IPR2018-752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018)....................6

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*,
962 F.2d 27 (D.C. Cir. 1992) ....................22

*Pregis Corp. v. Kappos*,
700 F.3d 1348 (Fed. Cir. 2012) ........................................................ 12, 33

*SAS Inst. Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ........................................................................4

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) ..........................................................................13

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ..........................................................36

*SIPCO, LLC v. Emerson Elec. Co.*,
980 F.3d 865 (Fed. Cir. 2020) ............................................................36

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..........................................................................14

*Stauffer v. Brooks Bros., Inc.*,
619 F.3d 1321 (Fed. Cir. 2010) ..........................................................12

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ............................................. 13, 14, 16, 18, 19, 20

*Thryv, Inc. v. Click-To-Call Techs., LP*,
140 S. Ct. 1367 (2020) ............................................ 4, 5, 27, 34, 35, 36

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ......................................................................20

*United States v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021) ................................................... 1, 4, 21, 26

*United States v. Richardson*,
418 U.S. 166 (1974) ..........................................................................14

*Webster v. Doe*,
486 U.S. 592 (1988) ..........................................................................37

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) .................................................................... 22, 23

**Statutes:**

Administrative Procedure Act:
5 U.S.C. § 701 *et seq.* ....................2
5 U.S.C. § 701(a) ....................25, 33
5 U.S.C. § 701(a)(2) ....................36

Leahy-Smith America Invents Act,
Pub. L. No. 112-29, 125 Stat. 284 (2011) ....................1

Patent Act of 1952:
35 U.S.C. § 1 *et seq.* ....................2
35 U.S.C. § 3(a)(2) ....................5
35 U.S.C. § 6 ....................4
35 U.S.C. § 131 ....................2
35 U.S.C. § 141(c) ....................30
35 U.S.C. § 305(c) ....................27
35 U.S.C. § 311 ....................3
35 U.S.C. § 314(a) ....................3, 4, 23, 27
35 U.S.C. § 314(d) ....................4, 9, 27
35 U.S.C. § 315(e) ....................5, 30
35 U.S.C. § 315(e)(1) ....................17
35 U.S.C. § 316 ....................4
35 U.S.C. § 316(a) ....................3
35 U.S.C. § 316(a)(2) ....................29, 32
35 U.S.C. § 316(a)(4) ....................32
35 U.S.C. § 316(a)(11) ....................5
35 U.S.C. § 316(b) ....................29
35 U.S.C. § 318(a) ....................5
35 U.S.C. § 318(b) ....................30
35 U.S.C. § 319 ....................5, 30
35 U.S.C. § 324(a) ....................4

28 U.S.C. § 1295(a)(1) ....................1

28 U.S.C. § 1331 ....................1

**Regulation:**

37 C.F.R. § 42.4(a) ....................5

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ....................................................................................1

**Legislative Material:**

H.R. Rep. No. 112-98, pt. 1 (2011).............................................................................2

**Other Authorities:**

John R. Allison, et al.,
*Our Divided Patent System*, 82 U. Chi. L. Rev. 1073 (2015) ..............................23

Jonathan H. Ashtor,
*Does Patented Information Promote the Progress of Technology?*,
113 Nw. U. L. Rev. 943 (2019)............................................................................23

Changes to Implement Inter Partes Review Proceedings, Post-Grant Review
Proceedings, and Transitional Program for Covered Business Method Patents,
77 Fed. Reg. 48,680 (Aug. 14, 2012)......................................................................3

Patent Trial and Appeal Board,
Standard Operating Procedure 2 (Revision 10) (Sept. 20, 2018),
https://go.usa.gov/xwXem......................................................................... 5-6

USPTO,
*PTAB Trial Statistics FY21 End of Year Outcome Roundup, IPR, PGR, CBM*,
https://go.usa.gov/xunaP...........................................................................23

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

## STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court pursuant to 28 U.S.C. § 1331. JA 1133, ¶ 10. Plaintiffs' Article III standing is contested. *See infra* part II. The district court dismissed plaintiffs' complaint for lack of subject matter jurisdiction on November 10, 2021, JA 11, and entered final judgment on December 13, 2021, JA 12. On December 8, 2021, plaintiffs timely filed a notice of appeal to this Court. JA 1546-47; *see* Fed. R. App. P. 4(a)(1)(B) (60-day time limit). The Court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

Under the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, § 6, 125 Stat. 284, 299-306 (2011), the Director of the U.S. Patent and Trademark Office (USPTO) may institute inter partes review (IPR) proceedings only if the petitioner satisfies minimum statutory criteria. Even when the petitioner satisfies those minimum criteria, the Director has discretion to deny institution of IPR proceedings. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1977 (2021) ("Congress has committed the [institution] decision … to the Director's unreviewable discretion.").

The Director has identified certain non-exclusive factors to consider in exercising her discretion when pending district court proceedings involve the same patent. Plaintiffs-appellants seek to challenge those factors under the

Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*. The issues presented are:

1. Whether plaintiffs, who allege that they sometimes file IPR petitions but have not identified any specific patent they intend to challenge, lack standing to seek judicial review of the factors the Director considers in exercising her discretion to deny institution of IPR proceedings.

2. Whether APA review of these factors is precluded by the AIA or because the factors considered in exercising the Director's discretion are committed to her discretion by law.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

1. The Patent Act of 1952 (Patent Act), 35 U.S.C. § 1 *et seq.*, charges the USPTO with examining applications for patents and directs the USPTO to issue a patent if the statutory criteria are satisfied. *Id.* § 131. Federal law has long permitted the USPTO to reconsider the patentability of inventions claimed in previously-issued patents. In the AIA, Congress substantially expanded those procedures in an effort to "establish a more efficient and streamlined patent system." H.R. Rep. No. 112-98, pt. 1, at 39-40 (2011). Among other changes, the AIA established IPR, which "allows a third party to ask the [USPTO] to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds

to be unpatentable in light of prior art." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 265 (2016); *see* 35 U.S.C. § 311.

When a petition for IPR is filed, the USPTO Director must determine whether or not to institute an IPR proceeding. That determination has two parts. First, the AIA establishes minimum criteria that must be satisfied for the Director to grant review: "[t]he Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition … shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition." 35 U.S.C. § 314(a). The AIA requires the Director to "prescribe regulations … setting forth the standards for the showing of sufficient grounds to institute a review." *Id.* § 316(a). The USPTO has complied with this requirement by promulgating regulations through notice-and-comment rulemaking that, among other things, specify "the standards for showing of sufficient grounds to institute an *inter partes* review." Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48,680, 48,680 (Aug. 14, 2012). Those regulations are not at issue here.

Second, even when a petition meets these standards, the Director may exercise her discretion to decline to institute review. The AIA contains "no

mandate to institute review." *Cuozzo*, 579 U.S. at 273; *see also SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1356 (2018). Instead, "Congress has committed the [institution] decision … to the Director's unreviewable discretion." *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1977 (2021); *see also* 35 U.S.C. §§ 314(a), 324(a). The AIA contains no requirement that the Director prescribe regulations with respect to the exercise of her discretion to decline institution. *See id.* § 316.

Neither part of the Director's determination is subject to judicial review. The AIA declares that the Director's determination whether to institute review is "final and nonappealable." 35 U.S.C. § 314(d). The Supreme Court has explained that this provision precludes efforts to review the Director's analysis of the statutory prerequisites to an IPR proceeding. *See Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1373-76 (2020). And as noted, the Supreme Court has also recognized that the Director's exercise of discretion regarding whether to institute IPR proceedings is not subject to judicial review. *See Arthrex*, 141 S. Ct. at 1977.[1]

If the Director institutes an IPR proceeding, the Patent Trial and Appeal Board (Board) conducts a trial on the patentability of the challenged claims. *See* 35 U.S.C. §§ 6, 316. Generally, the Board must issue a final written decision on

[1] This Court has recognized the possibility of mandamus review for "colorable constitutional claims." *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 874 (2022).

the claims within one year after institution of the proceeding. *See id.* § 316(a)(11); *see also Cuozzo*, 579 U.S. at 268. Unlike the threshold institution decision, final written decisions affect the substantive legal rights of the parties. Such a decision can cancel patent claims as well as estop the petitioner from asserting in future litigation "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during" the review proceeding. 35 U.S.C. §§ 315(e), 318(a). The AIA authorizes dissatisfied parties to appeal the Board's final written decision on patentability to this Court. *Id.* §§ 318(a), 319. In such appeals, however, parties cannot contend "that the agency should have refused to institute inter partes review." *Thryv*, 140 S. Ct. at 1377.

2. The Director has delegated to the Board her discretionary authority to determine, when a petition for IPR is filed, whether IPR proceedings should be instituted. 37 C.F.R. § 42.4(a). The Director is "responsible for providing policy direction and management supervision for the Office," 35 U.S.C. § 3(a)(2), and does so in various ways, including by publishing guidance materials and issuing memoranda on the handling of recurring issues before the Board. Most relevant here, the Director may also designate particular Board opinions as precedential, thus making those opinions "binding Board authority in subsequent matters involving similar facts or issues." Patent Trial and Appeal Board, Standard

Operating Procedure 2 (Revision 10), at 8-11 (Sept. 20, 2018), https://go.usa.gov/xwXem.

At issue here is the Director's designation as precedential of two Board decisions that identify criteria to consider when exercising the Director's discretion to deny IPR. *See NHK Spring Co. v. Intri-Plex Techs., Inc.*, No. IPR2018-752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018); *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-19, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020). In particular, the decisions concern the exercise of that discretion when a parallel proceeding involving the same patent is pending in district court. In *NHK*, the Board noted that efficiency weighed in favor of denying review when a "district court proceeding will analyze the same issues and will be resolved before any trial on the [inter partes review p]etition concludes." 2018 WL 4373643, at *7. The Board expanded on *NHK* in *Fintiv*, explaining that "an early trial date" is one "non-dispositive factor[]" that "should be weighed as part of a 'balanced assessment of all relevant circumstances of the case, including the merits,'" in determining whether to institute review. 2020 WL 2126495, at *2. The Board in *Fintiv* identified six factors the Board had previously considered "relat[ing] to whether efficiency, fairness, and the merits support the exercise of authority to deny institution in view of an earlier trial date in the parallel proceeding":

> 1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;

> 2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;
>
> 3. investment in the parallel proceeding by the court and the parties;
>
> 4. overlap between issues raised in the petition and in the parallel proceeding;
>
> 5. whether the petitioner and the defendant in the parallel proceeding are the same party; and
>
> 6. other circumstances that impact the Board's exercise of discretion, including the merits.

*Id.* at *2-3. "[I]n evaluating the factors," the decision in *Fintiv* explained, "the Board takes a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review." *Id.* at *3.[2]

### B. District Court Proceedings

Plaintiffs are technology companies that have filed IPR petitions in the past. JA 1134-35, ¶¶ 24-27; JA 1143, ¶ 62. In some of those cases, the USPTO declined to institute IPR proceedings after considering the *Fintiv* factors in light of pending district court proceedings addressing the validity of the same patent claim. JA 1141-43, ¶¶ 56-61. Plaintiffs brought this suit seeking to set aside the Director's designation of *Fintiv* and *NHK* as precedential and to foreclose reliance on the *Fintiv* factors in the future. JA 1150.

---

[2] For brevity, this brief refers to the principles explicated in *NHK* and *Fintiv* as the *Fintiv* factors.

Prior to this case, plaintiffs had repeatedly tried to challenge the *Fintiv* factors through appeals from USPTO decisions denying institution of IPR proceedings. This Court rejected each of those challenges on jurisdictional grounds. Among other reasons, this Court held that challenges to "whether the Board has authority to consider the status of parallel district court proceedings … in deciding whether to deny institution," whether "procedural" or "substantive," "rank as questions closely tied to the application and interpretation of statutes relating to the Patent Office's decision whether to initiate review, and hence are outside of our jurisdiction." *In re Cisco Sys. Inc.*, 834 F. App'x 571, 573 (Fed. Cir. 2020) (unpublished).

In this case, plaintiffs filed a complaint in district court, seeking to challenge the *Fintiv* factors under the APA. Count I alleges that the *Fintiv* factors are contrary to the AIA because the AIA purportedly prohibits the Director from considering parallel district court proceedings when exercising her discretion to deny institution. JA 1148-49, ¶¶ 82-86. Count II alleges that the *Fintiv* factors are arbitrary, capricious, and an abuse of discretion because they purportedly create unpredictable, irrational, or inefficient results. JA 1149-50, ¶¶ 87-91. Count III alleges that consideration of the *Fintiv* factors is unlawful because the Director did not promulgate them through notice-and-comment rulemaking. JA 1150, ¶¶ 92-95.

The district court granted the government's motion to dismiss. JA 11. The court first concluded that plaintiffs had standing to challenge the *Fintiv* factors. JA 6-9. The court reasoned that the *Fintiv* factors increase the risk that plaintiffs will be denied the benefits of IPR, and "the denial of an opportunity to obtain a benefit is itself an injury-in-fact"; the court found causation and redressability satisfied for the same reasons. JA 8-9.

The district court concluded, however, that judicial review was barred by 35 U.S.C. § 314(d), which provides that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." The court explained that, under Supreme Court precedent, "§ 314(d) applies where the grounds for challenging the Director's institution decision 'consist of questions that are closely tied to the application and interpretation of statutes related to [the Director's] decision to initiate inter partes review.'" JA 9-10 (alteration in original) (quoting *Cuozzo*, 579 U.S. at 275). The court concluded that it "cannot deduce a principled reason why preclusion of judicial review under § 314(d) would not extend to the Director's determination that parallel litigation is a factor in denying IPR," because deciding the *Fintiv* factors' lawfulness would require the court to decide precisely such questions. JA 10-11.

## SUMMARY OF ARGUMENT

1. Plaintiffs lack standing to challenge the *Fintiv* factors. Plaintiffs claim standing on the theory that the *Fintiv* factors increase the likelihood that the Director will exercise her discretion to deny institution of future IPR proceedings and thus that plaintiffs will lose the "benefits of IPR" in unspecified future cases. That alleged harm is not concrete and particularized enough to constitute an injury in fact. Indeed, this Court has held that even complete loss of the benefits of IPR through an adverse final written decision is insufficient, standing alone, to establish a concrete and particularized injury for standing purposes. Rather, Article III standing must be premised on specific and concrete real-world harm, such as inability to execute plans to develop an infringing product. Plaintiffs' claim of merely an increased probability of losing IPR's benefits with respect to unspecified future claims cannot suffice absent the type of detailed allegations this Court has required for appeals from final written decisions.

Plaintiffs' alleged injury is also too speculative to be "actual or imminent." Plaintiffs have not offered factual allegations that would permit an inference that the *Fintiv* factors are likely to prompt denial of institution in particular cases or that they are likely to achieve worse outcomes in district court litigation than in IPR. Moreover, plaintiffs' theory requires impermissible speculation about how the Director will exercise her discretion in the absence of the *Fintiv* factors, and about

how the results of IPR proceedings will compare to other procedures for litigating patent validity. For largely the same reasons, plaintiffs cannot establish causation or redressability.

2. On the merits, the district court correctly concluded that plaintiffs' claims are not justiciable under the APA. The AIA grants the Director unreviewable discretion to deny institution of IPR, and the Supreme Court has held that the statute's preclusion of review encompasses the application and interpretation of statutes closely related to institution. The statutory scheme thus makes it evident that the Director's determination whether to institute IPR proceedings does not involve a role for the judiciary, at least absent constitutional claims not present here. To the contrary, the institution decision, which does not alter any substantive rights, remains within the purview of the Director, and judicial review in the IPR context is limited to other issues, such as the Board's ultimate determination of patentability in a final written decision.

Plaintiffs cannot obtain judicial review of these unreviewable questions merely by pursuing it through a circuitous route. Their complaint seeks judicial review of questions that would be barred in an appeal from a final written decision. Plaintiffs are not entitled to insert the judiciary into the process at a different stage, seeking a court order that would constrain the Director's exercise of discretion across the board.

APA review is also unavailable because the challenged agency action is committed to agency discretion by law. The Director's determination regarding whether to institute proceedings when such proceedings are authorized, but not required, by statute is a classic example of the exercise of enforcement discretion that is not susceptible to judicial review. The Supreme Court has thus already concluded that the Director's discretionary denial authority is committed to agency discretion. The Director's identification of relevant considerations in exercising this discretion is likewise committed to agency discretion. Plaintiffs cannot obtain judicial intervention in the exercise of the Director's discretion through the mere device of suing prospectively to dictate what she may or may not consider in exercising that discretion.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews standing questions de novo. *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010). The Court reviews de novo whether the district court lacked subject matter jurisdiction because plaintiffs' claims are not subject to judicial review under the APA. *See Pregis Corp. v. Kappos*, 700 F.3d 1348, 1354, 1356-61 (Fed. Cir. 2012).

## II. PLAINTIFFS LACK STANDING TO CHALLENGE FACTORS CONSIDERED IN EXERCISING THE DIRECTOR'S UNREVIEWABLE DISCRETION TO DECLINE INSTITUTION

Although the district court correctly dismissed plaintiffs' suit, it erred in holding that plaintiffs had standing to pursue their claims. Plaintiffs have not established a concrete injury in fact sufficient to establish standing; they also cannot establish that any injury is fairly traceable to the USPTO's actions or likely to be redressed by vacating the *Fintiv* factors. Plaintiffs accordingly lack standing to invoke the power of judicial review in this case.

### A. Plaintiffs Bear the Burden of Establishing Injury in Fact, Causation, and Redressability

"In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). The standing requirement, which "reflect[s] this fundamental limitation," "assures that" jurisdiction is limited to circumstances in which "'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" *Id.* at 493, 494 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974)). "Where that need does not exist, allowing courts to oversee legislative or executive action 'would significantly alter the allocation of power … away from a democratic form of

government.'" *Id.* at 493 (alteration in original) (quoting *United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring)).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must establish "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* (footnote and citations omitted). Where the plaintiff seeks injunctive relief, the plaintiff cannot rely on "past injury," but must establish "imminent future injury that is sought to be enjoined." *Summers*, 555 U.S. at 495. Second, the plaintiff must establish "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant.'" *Lujan*, 504 U.S. at 560 (alterations in original). Third, the plaintiff must establish that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.

The plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers*, 555 U.S. at 493. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration in original). Even at the pleading stage, courts "do not assume the truth of legal conclusions,

nor do [they] accept inferences that are unsupported by the facts set out in the complaint." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). Thus, "'[w]hen considering any chain of allegations for standing purposes, [courts] may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties).'" *Id.* (first alteration in original) (quoting *Arpaio*, 797 F.3d at 21).

**B. Plaintiffs Have Not Established an Injury in Fact**

In this case, plaintiffs' alleged injury is that the *Fintiv* factors "create[] a substantial risk that any given IPR petition will be denied, and Plaintiffs will thereby be deprived of IPR's benefits." JA 1387. That purported injury is not "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (footnote and citations omitted).

1. At the outset, it is important to be clear about what concrete interests are sufficient to provide a basis for standing in connection with an IPR proceeding. The inability to obtain invalidation of a patent through IPR is not, in and of itself, an Article III injury. That much is clear from this Court's cases that have repeatedly held that even an IPR petitioner who has lost on its invalidity claims after a full IPR proceeding does not, without more, have standing to seek judicial

review. *See AVX Corp. v. Presidio Components, Inc.*, 923 F.3d 1357, 1361 (Fed. Cir. 2019). Unless the petitioner can offer additional evidence of "a real, particularized injury, [it] lacks standing to appeal the IPR decision." *General Elec. Co. v. United Techs. Corp.*, 928 F.3d 1349, 1354 (Fed. Cir. 2019).

This is so because, for purposes of the case or controversy requirement of Article III, the IPR proceeding is not an end unto itself, but a means to redress a concrete injury. *See Summers*, 555 U.S. at 496 (A "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."). A party can have standing to seek invalidation of a patent if, for example, it has concrete plans to develop a product that practices the patent. The inability to practice the patent without the threat of liability for patent infringement is the plaintiff's injury in fact; that injury is redressed by invalidation of the patent. But where the existence of the patent does not cause any concrete injury, the loss of an IPR proceeding provides no basis for standing. *See ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1024-25 (Fed. Cir. 2021) (concluding that IPR petitioner who lost challenges after full proceeding lacked standing to seek judicial review because it did not allege that it "is developing or has plans to develop any potentially infringing product, or that the … patent claims impeded its ability to

develop any products or meet customer needs," or that "it incurred additional costs as a result of trying to design around the … patent claims").

Plaintiffs' alleged injuries from hypothetical future denials of IPR institution are even less concrete and particularized than those of the IPR petitioners in the cases in which this Court has found standing to be lacking. Having lost after a full IPR proceeding, each petitioner in those cases was denied the benefit that is the principal objective of seeking IPR—invalidation of the challenged patent claims. Moreover, each petitioner also lost the ability to challenge the relevant patent in future IPR proceedings "with respect to [the challenged claims] on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(1). Such petitioners have thus lost all of the "benefits of IPR," and not just an opportunity to obtain those benefits. Plaintiffs, by contrast, allege only a "risk" that they will lose the opportunity to proceed via IPR rather than through district-court proceedings with respect to some hypothetical set of future patent claims; that injury is even less concrete and particularized. In particular, even if plaintiffs could establish that they had a concrete interest in a particular IPR proceeding, to establish standing they would need to demonstrate a nonspeculative likelihood that the *Fintiv* factors would make the difference

between institution and non-institution, and that the proceeding, if instituted, would ultimately lead to invalidation of the patent.[3]

2. The district court mistakenly concluded that plaintiffs' injury is the denial of the "benefits of IPR," and that "the denial of an opportunity to obtain a benefit is itself an injury-in-fact." JA 8. As an initial matter, as discussed above, the denial of an IPR proceeding does not itself create an injury in fact, unless the plaintiff can make a concrete showing that its primary conduct—for example, concrete plans to practice a particular patent—is affected.

Plaintiffs did not even attempt to make that showing in this case. Plaintiffs have not identified a single patent claim as to which IPR is likely to be denied based on the *Fintiv* factors, let alone made specific allegations regarding plaintiffs'

---

[3] Apart from potential invalidation of the challenged patent claims, the other "benefits of IPR" that plaintiffs allegedly risk losing are merely restatements of the differences between IPR and other procedures for litigating patent validity, such as the use of administrative judges, a different evidentiary standard, and final written decisions on patentability. *See* JA 1387. Mere differences in procedures are insufficient to establish standing absent concrete injury. *See Summers*, 555 U.S. at 496. Any claim that these procedural differences cause concrete harms in and of themselves is precluded by this Court's decisions finding a lack of standing to appeal final written decisions rejecting claims of invalidity. In such cases, the unfavorable Board judgment precludes the petitioner from obtaining the "benefits of IPR" through future IPR proceeding regarding any estopped claims. This Court has nonetheless "'rejected invocation of the estoppel provision as a sufficient basis for standing,'" at least absent any concrete indication that the patent itself causes a cognizable injury. *Apple Inc. v. Qualcomm Inc.*, 992 F.3d 1378, 1385 (Fed. Cir. 2021) (quoting *AVX Corp.*, 923 F.3d 1357, 1362-63). Loss of any procedural benefits from IPR therefore cannot be a sufficient basis for standing.

intentions to practice that claim or design around it. Plaintiffs merely allege generally that they are "currently awaiting institution decisions on IPR petitions that relate to pending infringement litigation," JA 1143, ¶ 62, but offer no specifics to explain why the *Fintiv* factors are likely to prompt the USPTO to deny institution in those cases.

Plaintiffs also allege that "[t]he Board is likely to deny at least some of Plaintiffs' pending or future IPR petitions under the *NHK-Fintiv* rule based on the pendency of litigation," JA 1143, ¶ 62, but this kind of general allegation of future harm is insufficient, *see Military-Veterans Advocacy v. Secretary of Veterans Affairs*, 7 F.4th 1110, 1132 (Fed. Cir. 2021) (finding lack of standing where plaintiff "fails to point to an example claim" subject to rules). Plaintiffs cannot rely on general allegations of potential harm, but must identify the imminent harms with particularity. In *Summers*, for example, the Supreme Court rejected as inadequate an affidavit from a member of the plaintiff organization asserting "that he has visited many national forests and plans to visit several unnamed national forests in the future." 555 U.S. at 495. As the Court explained, although recreational or mere aesthetic interests associated with visiting a national forest that had been harmed by the challenged government action would constitute a sufficient injury for Article III purposes, *id.* at 494, the plaintiffs lacked standing because they had failed to "allege that *any* particular timber sale or other project

claimed to be unlawfully subject to the regulations will impede a specific and concrete plan … to enjoy the national forests," *id.* at 495.

Here, similarly, plaintiffs assert that they have brought IPR proceedings in the past and plan to bring unnamed IPR proceedings in the future, but have not identified any specific and concrete plan to practice a patent that would be challenged in any particular IPR proceeding. *See also Apple Inc.*, 992 F.3d at 1384 ("Apple offers the sparsest of declarations in support of standing, which are devoid of any of the specificity necessary to establish an injury in fact."). To the extent that plaintiffs provide any specifics, they relate to the USPTO's decisions not to institute prior IPR petitions, JA 1143, ¶ 61, which are irrelevant to plaintiffs' claims for prospective relief, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding that party who had allegedly been subject to an unlawful practice in the past lacked standing to seek injunctive relief unless he could show "a real and immediate threat" that he would be subject to the practice again in the future).

3. Plaintiffs also lack standing because any alleged injury is "conjectural" or "hypothetical," rather than "actual or imminent." A plaintiff seeking injunctive relief to prevent a risk of future harm has standing only if "the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). Plaintiffs' vague allegations about

potential future consequences of the *Fintiv* factors do not come close to satisfying that standard.

The framing of plaintiffs' injury as "the denial of an opportunity," JA 8, illustrates the speculative nature of plaintiffs' asserted harm. Plaintiffs' logic is that application of the *Fintiv* factors will reduce the likelihood that the USPTO will institute an IPR proceeding at one of the plaintiffs' behest, and that challenging the relevant patent in district court rather than through IPR in turn will decrease the chances that the relevant plaintiff will successfully invalidate a patent. *See* JA 1387. Plaintiffs' claim to standing is thus built on multiple layers of speculation.

Further illustrating the speculative nature of any potential injury, the *Fintiv* factors merely guide the exercise of discretion; plaintiffs could not demonstrate in any individual case that the Director would have been legally compelled to institute review in the absence of the *Fintiv* factors. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1977 (2021) ("Congress has committed the decision to institute inter partes review to the Director's unreviewable discretion."); *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021) ("The Director is permitted, but never compelled, to institute an IPR."), *cert. denied*, 142 S. Ct. 874 (2022). For the *Fintiv* factors to injure plaintiffs, plaintiffs must establish that the *Fintiv* factors would be the reason the Director would deny institution in plaintiffs' specific (unidentified) cases. Plaintiffs offer nothing but

speculation as a basis for drawing such conclusions, and the Supreme Court has rejected standing where establishing imminence requires speculation about how a government decisionmaker will exercise discretionary authority. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) ("[R]espondents can only speculate as to how the Attorney General and the Director of National Intelligence will exercise their discretion in determining which communications to target.").[4] In such cases, the injury is not "certainly impending," as required for imminence. *Id.*

Plaintiffs' conclusory allegation that they will fare better in IPR proceedings as opposed to other procedures, such as a district court infringement suit or a declaratory judgment action, is also impermissibly speculative. "Allegations of injury based on predictions regarding future legal proceedings are … 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" *Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) (second alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990)). The Supreme Court has likewise warned that "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Clapper*, 568 U.S. at 413-14 (alteration in original) (quoting

[4] The factors, which are non-exclusive and non-determinative, do not remove the Director's discretion. *See* JA 1052-53 (listing "non-dispositive factors," including all "other circumstances that impact the Board's exercise of discretion, including the merits").

*Whitmore*, 495 U.S. at 159-60). The Court has accordingly "decline[d] to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors" like the courts. *Id.* at 414. Plaintiffs' theory that they are injured because they are less likely to prevail in district court than in IPR requires precisely such speculation.

Even if they were relevant, plaintiffs' statistics purporting to show a higher cancellation rate in final written decisions after IPR, as opposed to in litigation, suffer from an obvious flaw. The AIA permits institution of IPR proceedings only if "the Director determines that … there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). It is unsurprising that, after such screening at the institution stage, petitions that survive the screening have a higher likelihood of success.[5] Plaintiffs therefore cannot claim injury from a higher success rate in IPR proceedings compared to district court litigation.

---

[5] The USPTO found one or more claims unpatentable in 23% of all challenged patents in fiscal year 2021. USPTO, *PTAB Trial Statistics FY21 End of Year Outcome Roundup, IPR, PGR, CBM*, slide 12, https://go.usa.gov/xunaP (PTAB FY21 Roundup); *see also id.* at slide 13 (16% of claims found unpatentable). Academic studies have found comparable or higher rates of invalidation in judicial proceedings. *See* Jonathan H. Ashtor, *Does Patented Information Promote the Progress of Technology?*, 113 Nw. U. L. Rev. 943, 965 (2019) (54.7% of patents invalidated); John R. Allison, et al., *Our Divided Patent System*, 82 U. Chi. L. Rev. 1073, 1100 (2015) (42.6% invalidated); *see also* PTAB FY21 Roundup at slides 11-12 (considering only institution denials and final

### C. Plaintiffs Have Not Established Causation or Redressability

Plaintiffs' alleged injuries are not fairly traceable to the challenged conduct, nor are they redressable by plaintiffs' suit. To establish causation, plaintiffs must establish that a concrete and imminent injury is "'fairly … trace[able] to the challenged action of the defendant.'" *Lujan*, 504 U.S. at 560 (alterations in original). To establish redressability, plaintiffs must establish that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561. "[W]hen considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (cleaned up).

Plaintiffs cannot establish causation or redressability because their claim that the *Fintiv* factors will cause them imminent injury—and that vacating the factors will alleviate that harm—is based on a lengthy chain of impermissible speculation. Plaintiffs' theory requires the following chain of inferences with respect to an identified patent: (1) that the patent will be the subject of district court litigation; (2) that a plaintiff will file an IPR petition within the maximum one-year time limit from service of the complaint; (3) that the petition will satisfy the minimum

written decisions—excluding settlements and other dispositions—approximately 37% of challenged patents and 35% of AIA petitions resulted in a finding of invalidity for one or more claims).

standards for institution of an IPR proceeding; (4) that the Director will exercise her discretion to decline institution because of the application of the *Fintiv* factors; and (5) that the desired IPR proceed would create a substantially higher probability of cancellation than adjudicating the same claims in district court. Plaintiffs offer no detailed allegations that would permit the Court to make this lengthy chain of inferences.

As explained, the links in this chain are also deeply problematic. As noted, the Supreme Court has rejected standing where the chain of causation depends on speculation about how a government decisionmaker will exercise discretionary authority, or on the outcome of future legal proceedings. Plaintiffs' allegations therefore cannot establish causation or redressability.

## III. Plaintiffs' Claims Are Not Justiciable Under the APA

As discussed above, plaintiffs' claims should be dismissed for lack of standing. But if this Court reaches the merits, it should affirm. As the district court correctly held, plaintiffs' claims are not justiciable under the APA. The APA does not authorize judicial review where "statutes preclude judicial review" or the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Each of these exceptions applies here.

### A. The AIA Precludes Judicial Review

1. The district court correctly concluded that the AIA bars plaintiffs' APA claims. Judicial review under the APA will not lie "whenever the congressional intent to preclude judicial review is fairly discernable in the statutory scheme." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 351 (1984) (quotation marks omitted). Thus, "the presumption favoring judicial review of administrative action may be overcome by inferences of intent drawn from the statutory scheme as a whole." *Id.* at 349. Courts look to the "text, structure, and purpose" of a specialized statutory review scheme to determine whether it is "fairly discernable" that Congress intended to preclude judicial review. *Elgin v. Department of Treasury*, 567 U.S. 1, 10 (2012); *see also Hinck v. United States*, 550 U.S. 501, 504, 506-07 (2007) (statute providing limited authorization for review displaced cause of action under the APA).

In this case, it is evident that Congress intended to preclude judicial review of the factors the Director considers in exercising her discretion to deny institution of IPR proceedings. "Congress has committed the decision to institute inter partes review to the Director's unreviewable discretion." *Arthrex*, 141 S. Ct. at 1977. The Director is "permitted, but never compelled, to institute an IPR," and is "free … to determine that for reasons of administrative efficiency an IPR will not be instituted, as agencies generally are free, for similar reasons, to choose not to

initiate enforcement proceedings." *Mylan Labs.*, 989 F.3d at 1382. And even to the extent that Congress created statutory criteria that must be satisfied before inter partes review proceedings are instituted, *see* 35 U.S.C. § 314(a), judicial review of the Director's application of those criteria is expressly barred. *See id.* § 314(d); *Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1370 (2020); *see also Alarm.com Inc. v. Hirshfeld*, 26 F.4th 1348, 1361 (Fed. Cir. 2022) (contrasting § 314(d)'s "broad non-reviewability bar" in the IPR context with the narrower preclusion of review relating to ex parte reexamination in 35 U.S.C. § 303(c)).

Under this statutory scheme, the Director's "unreviewable discretion" over institution extends to the factors she considers in exercising that authority. To exercise her discretion, the Director must have some conception of what considerations she considers relevant to her decision, whether or not those factors are made available to the public. Denying the Director control over these factors is tantamount to inserting the judiciary into the Director's unreviewable discretion over institution. Moreover, permitting APA suits challenging such factors contradicts Congress's purpose of preventing collateral litigation over institution, a decision with no direct legal effects.

2. This Court has squarely held "that there is no reviewability of the Director's exercise of … discretion to deny institution except for colorable constitutional claims." *Mylan Labs.*, 989 F.3d at 1382. Plaintiffs here do not bring

a constitutional claim, but nonetheless seek judicial supervision of the Director's exercise of her discretion in determining whether to initiate IPR proceedings. In particular, plaintiffs seek to "enjoin" the Director "from relying on the [*Fintiv* factors] or the non-statutory factors [*Fintiv*] incorporates to deny institution of IPR." JA 1150. Such an injunction, and efforts to enforce it, would insert the courts directly into the Director's discretionary decisionmaking regarding which IPR proceedings to institute. And even if a court were to issue a less intrusive remedy, plaintiffs could not obtain any meaningful relief unless the court's decree imposed some meaningful constraint on the Director's exercise of unreviewable discretion. Plaintiffs' suggestion that an Article III court should issue an order constraining the Director's exercise of her discretion over the institution of IPR proceedings cannot be reconciled with the statutory scheme or decisions of the Supreme Court and this Court interpreting that scheme.

Plaintiffs suggest that the imposition of judicial review would not contravene Congress's evident intent to provide broad discretion to the Director because the preclusion of review was designed only "to ensure that final written decisions in completed IPRs cannot be 'unwound' based on some 'minor statutory technicality' in the institution decision." Br. 31 (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016)). But that is not the only reason for the preclusion of review. Review is precluded not only of the Director's threshold

determination that the prerequisites for IPR under § 314(a) are satisfied, which could give rise to a "statutory technicality," but also of the entirely discretionary determination of whether to institute review when the Director is permitted, but not required, to do so. In addition, Congress precluded review of denials of IPR even though they produce no final written decision, and thus judicial review of such a denial cannot cause a final written decision to be unwound. Fundamentally, plaintiffs' argument ignores that Congress was not only seeking to streamline the proceedings, but also to ensure that the Director could exercise expert judgment as to how to best promote efficiency and other goals of the patent system, without judicial second-guessing. *Cf.* 35 U.S.C. § 316(a)(2), (b) (providing that, when prescribing regulations governing the distinct question of when a petition satisfies the minimum statutory criteria for institution, the Director should consider "the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter").

Congress's choice to prioritize efficiency and expert judgment over judicial review of the institution decision is sensible because the institution decision itself does not alter substantive rights. If the USPTO declines to exercise its IPR authority, that decision does not alter the rights of private parties; the patent owner's claims are undisturbed and the petitioner remains free to bring a validity

challenge in district court. A decision not to institute IPR is therefore not the type of agency decision that necessitates an avenue for judicial review. "[W]hen an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985); *see also id.* ("[A]n agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch … ."). And even if the USPTO grants institution, no rights are altered until the petitioner's claims are heard in an adjudicative proceeding that is subject to judicial review.

In contrast, a final written decision regarding patentability can invalidate a patent owner's claims or estop a petitioner from challenging those claims in future proceedings. *See* 35 U.S.C. § 318(b) (directing the USPTO to amend or cancel patent claims "[i]f [the Board] issues a final written decision" under § 318(a)); *id.* § 315(e) (estopping a "petitioner in an inter partes review … that results in a final written decision under section 318(a)" from raising certain issues in future USPTO or judicial proceedings). Congress accordingly provided a right of appeal from final written decisions to this Court. *See id.* §§ 141(c), 319.

3. Plaintiffs' cited cases are not to the contrary. In *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1906 (2020), the Supreme Court emphasized that the challenged action "created a program for conferring affirmative immigration relief" rather than "a non-enforcement policy." *Id.* Here, the *Fintiv* factors do not create an affirmative program but rather inform the Director's discretion to deny institution, and are therefore more akin to a non-enforcement policy.

In *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 790 (1985), the Court held that a preclusion-of-review provision extended only to factual determinations and not questions of law or procedure. The Court relied on "legislative history … demonstrat[ing] that Congress was indeed well aware of" prior judicial precedent permitting judicial review as to legal and procedural questions and "intended that [such] review continue." *Id.* at 782-83. *Lindahl* does not establish plaintiffs' proposition (at 38-39) that "any doubt must be resolved in favor of the narrower reading" of the text. To the contrary, the Court held that "the question whether a statute precludes judicial review 'is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Id.* at 779. And the Supreme Court explained in *Cuozzo* that "*Lindahl*'s interpretation of [the relevant] statute preserved the agency's primacy

over its core statutory function in accord with Congress' intent." 579 U.S. at 274. Applying the same principle here would protect the Director's prerogative to make determinations, in the interest of the USPTO, regarding when institution is appropriate.

4. Plaintiffs' other contrary arguments likewise lack merit. Plaintiffs cite (at 30-31) the AIA's requirement that "[t]he Director … prescribe regulations … establishing and governing inter partes review," 35 U.S.C. § 316(a)(4), but nothing in that provision or any other requires the Director to promulgate regulations dictating how she will exercise her discretionary authority to deny institution. The AIA's requirement that the Director establish regulations "setting forth the standards for the showing of *sufficient* grounds to institute a review under section 314(a)," *id.* § 316(a)(2) (emphasis added), plainly refers to the minimum requirements for institution, and not to the Director's discretionary authority to deny institution once those requirements are met. Indeed, it would have been entirely consistent with the statutory scheme for the Director to exercise that authority herself on an ad hoc basis, without delegating it to the Board, and without any written explanation of her reasons or the factors she considers more generally.[6]

[6] Plaintiffs err in drawing (at 30) a negative implication from the fact that the text of § 314(d) does not specifically mention the factors the Director relies on in exercising her discretionary authority. Because the AIA does not require the Director to publish the factors she will rely on in exercising her discretionary

The Director instead delegated her discretion to the Board and provided the Board guidance by designating *NHK* and *Fintiv* as precedential, but those discretionary actions do not change her obligations under the AIA.

Plaintiffs also wrongly assume (at 31) that, if the Director had instead chosen to proceed through notice-and-comment rulemaking or was required to do so under the AIA and the APA, the resulting regulation would necessarily be reviewable under the APA. To the contrary, the limits on APA review in § 701(a) apply without regard to whether the agency action is notice-and-comment rulemaking or takes some other form. *See* 5 U.S.C. § 701(a).

Plaintiffs misunderstand this Court's decision in *Pregis Corp. v. Kappos*, 700 F.3d 1348 (Fed. Cir. 2012), when they assert that review should not be precluded in this case because it "would leave an agency action entirely free from judicial review." Br. 32-33 (quoting *Pregis*, 700 F.3d at 1358-59). In *Pregis*, this Court noted that the ultimate issuance of a patent could be challenged on specified grounds, and that the scheme precluded a challenge under the APA to the USPTO's reasoning in the course of its determination whether to issue the patent. 700 F.3d at 1358-59. Far from suggesting that everything an agency does must be subject to judicial review, the case recognized that Congress could provide for review of an

---

authority, it would have been odd for Congress to include a specific reference to those factors in § 314(d).

agency's substantive decisions while foreclosing review of certain steps the agency may have taken in this process. And here, of course, there would be nothing anomalous about precluding review of the Director's discretionary determinations regarding institution; indeed, that was Congress's objective and is the general rule for enforcement decisions of this type.[7]

Plaintiffs also err in relying (at 35) on the Supreme Court's decision in *SAS*. As the Supreme Court has made clear, that case did not involve review of the determination whether to institute proceedings. *See Thryv*, 140 S. Ct. at 1376. Rather, in requiring that the USPTO conduct IPR with respect to all claims in the petition, *SAS* addressed "the manner in which the agency's review 'proceeds' once instituted," not the institution decision itself. *Id.* There is no argument here that the *Fintiv* factors affect any aspect of the agency's procedures other than the institution decision itself.

Plaintiffs contend (at 40-41) that the cases recognizing preclusion of review do not apply to two of their claims—specifically, their claims that the *Fintiv* factors are invalid because they were not promulgated through notice-and-comment

[7] This Court need not decide whether mandamus relief may be available in exceptional circumstances. This Court's holding regarding mandamus relief in *Mylan* also precludes such relief here. 989 F.3d at 1382 ("Mylan lacks a clear and indisputable right to review of the Patent Office's determination to apply the *Fintiv* factors or the Patent Office's choice to apply them in this case through adjudication rather than notice-and-comment rulemaking.").

rulemaking, and that the *Fintiv* factors are arbitrary and capricious—because they are not "'closely tied to the application and interpretation of statutes related to' the institution decision," *Thryv*, 140 S. Ct. at 1373 (quoting *Cuozzo*, 579 U.S. at 275). This argument is difficult to fathom. The only question in this case is whether the Director's actions in exercising discretion regarding whether to institute proceedings were consistent with the AIA. Plaintiffs do not raise claims that "implicate constitutional questions," *Cuozzo*, 579 U.S. at 275, or are premised on other substantive requirements. Their reliance on the APA cannot remove this case from the preclusion of review, as the APA will be involved in virtually any challenge of this type.

Similarly, plaintiffs are mistaken to contend (at 43) that review is not precluded because they assert that considering the *Fintiv* factors "exceeds the Director's statutory authority." The Supreme Court made clear in *Thryv* that the preclusion of review cannot be evaded merely by claiming that the USPTO's actions violate the AIA and are therefore in excess of statutory authority. The patent owner in *Thryv* asserted that the time limit on filing in § 315(b)—the same provision plaintiffs rely on here—was "a clear limit on the Board's institution authority" that the agency exceeded by not applying § 315(b)'s time limit when district-court proceedings are dismissed without prejudice. 140 S. Ct. at 1373. The Supreme Court disagreed, holding that the dispute over whether a complaint

dismissed without prejudice triggers § 315(b)'s limitations period is "'an ordinary dispute about the application of' an institution-related statute" that courts were barred from deciding under § 314(d). *Id.* at 1373-74.

This Court has expressly recognized that "*Thryv* held that the 'No Appeal' provision barred judicial review of the threshold decision to institute inter partes review despite the argument that the Board exceeded its statutory authority in doing so." *SIPCO, LLC v. Emerson Elec. Co.*, 980 F.3d 865, 869 (Fed. Cir. 2020). In this case, plaintiffs interpret § 315(b) to prohibit the consideration of pending court proceedings, whereas the Director does not. That "ordinary dispute" about the interpretation of § 315(b) is the type of issue as to which review is precluded.

**B. The Challenged Actions Are Committed to Agency Discretion by Law**

For similar reasons, judicial review is also barred under the APA because plaintiffs challenge "agency action … committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Although the district court did not rest its justiciability holding on § 701(a)(2), this Court may affirm on any ground supported by the record. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

Under this exception, APA "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830; *see Citizens to*

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *Webster v. Doe*, 486 U.S. 592, 600 (1988). "A decision is more likely to be committed to an agency's discretion when it requires 'a complicated balancing of a number of factors which are peculiarly within its expertise.'" *Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320, 1326 (Fed. Cir. 2013) (quoting *Heckler*, 470 U.S. at 831). The Supreme Court has interpreted § 701(a)(2) to "preclude judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). As relevant here, the Court has declared "an agency's decision not to institute enforcement proceedings to be presumptively unreviewable." *Id.*

As this Court explained in *Mylan*, "the Supreme Court has determined that" the Director's exercise of her discretionary authority to deny review "is committed to agency discretion by law." 989 F.3d at 1382. "The Director is permitted, but never compelled, to institute an IPR," and is "free … to determine that for reasons of administrative efficiency an IPR will not be instituted, as agencies generally are free, for similar reasons, to choose not to initiate enforcement proceedings." *Id.*

Judicial review of the factors the Director considers in exercising this authority is precluded for the same reasons. In an individual case, the Director may identify any number of factors as relevant to her discretion, whether on an ad hoc basis or based on her preexisting views about the significance of various

considerations. Under the precedent of this Court and the Supreme Court, those judgments are unreviewable as committed to agency discretion under § 701(a)(2). Plaintiffs seek to avoid that precedent by intervening prospectively to dictate what factors the Director may consider rather than appealing in an individual case, but attacking the Director's judgments at a different point in the process does not make them any less committed to agency discretion. A contrary conclusion would create an end run around § 701(a)(2), allowing courts to dictate how an agency exercises its discretion so long as they do so prospectively, rather than after the fact.

The identification of considerations relevant to the Director's discretionary denial authority also requires "a complicated balancing of a number of factors which are peculiarly within [her] expertise," which further supports finding that the action is committed to agency discretion. *Heckler*, 470 U.S. at 831. Identifying relevant factors requires both value judgments about the allocation of agency resources and expert predictive judgments about how different choices will impact the patent system. This type of decision, where the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities," is precisely the type that is committed to agency discretion. *Id.* at 831-32 (decisions involving factors like "whether agency resources are best spent on this violation or another" and "whether the particular enforcement action

requested best fits the agency's overall policies" are committed to agency discretion).

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

MICHAEL D. GRANSTON
*Deputy Assistant Attorney General*
DANIEL TENNY

s/ Weili J. Shaw
WEILI J. SHAW
*Attorneys, Appellate Staff*
*Civil Division, Room 7240*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*(202) 514-1371*

*Of Counsel:*

THOMAS W. KRAUSE
*Solicitor*
FARHEENA Y. RASHEED
*Deputy Solicitor*
MICHAEL S. FORMAN
*Associate Solicitor*
*Office of the Solicitor*
*U.S. Patent and Trademark Office*
*Mail Stop 8, P.O. Box 1450*
*Alexandria, Virginia 22313*
*(571) 272-9035*

APRIL 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

s/ Weili J. Shaw
WEILI J. SHAW

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 28.1(e)(2)(A) because it contains 9,072 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font, a proportionally spaced typeface.

s/ Weili J. Shaw
WEILI J. SHAW