**No. 2022-1249**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,

*Plaintiffs-Appellants*,

*v.*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of California in Case No. 5:20-cv-06128-EJD, Judge Edward J. Davila

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, AND EDWARDS LIFESCIENCES LLC

CHRISTY G. LEA
JOHN B. SGANGA
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

*Attorneys for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC*

NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-3343

*Attorney for Plaintiff-Appellant Google LLC*

June 10, 2022

MARK D. SELWYN
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

CATHERINE M.A. CARROLL
DAVID M. LEHN
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

*ADDITIONAL ATTORNEYS LISTED ON INSIDE COVER*

ANDREW T. DUFRESNE
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7492

*Attorney for Plaintiff-Appellant Google LLC*

ALYSON M. ZUREICK
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

REBECCA M. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1002

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

## CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc., Cisco Systems, Inc., and Intel Corporation.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: June 10, 2022

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Google LLC certifies the following:

**1.** **Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Google LLC.

**2.** **Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3.** **Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

XXVI Holdings Inc.; Alphabet Inc.

**4.** **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

PERKINS COIE LLP: Daniel T. Shvodian, Theresa Nguyen.

**5.** **Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: June 10, 2022

/s/ Nathan K. Kelley
NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 800
Washington, D.C. 20005
(202) 654-3343

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Edwards Lifesciences Corporation and Edwards Lifesciences LLC.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: June 10, 2022

/s/ Christy Green Lea

CHRISTY GREEN LEA
KNOBBE, MARTENS, OLSON
& BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ... viii

INTRODUCTION ... 1

ARGUMENT ... 2

I. APPELLANTS HAVE ARTICLE III STANDING ... 2

A. Appellants Have Shown Injury-in-Fact ... 2

1. Appellants' allegations are sufficient ... 2

2. The Director's arguments lack merit ... 8

B. Appellants Have Shown Causation And Redressability ... 16

II. NO STATUTE PRECLUDES JUDICIAL REVIEW OF THE *NHK-FINTIV* RULE ... 17

A. Section 314(d) Does Not Bar Review Of Appellants' Claims ... 17

1. Section 314(d) does not apply to rules governing institution ... 17

2. In any event, Appellants' claims fall within § 314(d)'s exceptions ... 22

B. Section 701(a)(2) Of The APA Does Not Bar Appellants' Claims ... 24

CONCLUSION ... 30

STATEMENT OF CONSENT

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abboud v. Immigration & Naturalization Service*,
140 F.3d 843 (9th Cir. 1998) ........ 5-6

*ABS Global, Inc. v. Cytonome/ST, LLC*,
984 F.3d 1017 (Fed. Cir. 2021) ........ 11

*Apple Inc. v. Qualcomm Inc.*,
992 F.3d 1378 (Fed. Cir. 2021) ........ 11

*AVX Corp. v. Presidio Components, Inc.*,
923 F.3d 1357 (Fed. Cir. 2019) ........ 12

*Babbitt v. United Farm Workers National Union*,
442 U.S. 289 (1979) ........ 7-8, 11

*Block v. Community Nutrition Institute*,
467 U.S. 340 (1984) ........ 18

*Bowen v. Michigan Academy of Family Physicians*,
476 U.S. 667 (1986) ........ 22

*Bryant v. Compass Group USA, Inc.*,
958 F.3d 617 (7th Cir. 2020), *as amended on denial of reh'g* (June 30, 2020) ........ 9

*Cedars-Sinai Medical Center v. Watkins*,
11 F.3d 1573 (Fed. Cir. 1993) ........ 4

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........ 12

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ........ 14-15

*Cuozzo Speed Technologies, LLC v. Lee*,
579 U.S. 261 (2016) ........ 21, 23, 29

*Czyzewski v. Jevic Holding Corp.*,
137 S. Ct. 973 (2017)....................4, 5

*Department of Homeland Security v. Regents of University of California*,
140 S. Ct. 1891 (2020)....................19

*General Electric Co. v. United Technologies Corp.*,
928 F.3d 1349 (Fed. Cir. 2019) .................... 11-12

*Heckler v. Chaney*,
470 U.S. 821 (1985)....................28, 30

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010)....................8

*Hyatt v. Office of Management & Budget*,
908 F.3d 1165 (9th Cir. 2018) ....................19

*In re Vivint, Inc.*,
14 F.4th 1342 (Fed. Cir. 2021) ....................24, 25, 26

*International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*,
783 F.2d 237 (D.C. Cir. 1986)....................26

*James v. J2 Cloud Services, LLC*,
887 F.3d 1368 (Fed. Cir. 2018) ....................11

*Jeffries v. Volume Services America, Inc.*,
928 F.3d 1059 (D.C. Cir. 2019)....................10

*Jibril v. Mayorkas*,
20 F.4th 804 (D.C. Cir. 2021)....................8, 11

*Judulang v. Holder*,
565 U.S. 42 (2011)....................30

*Lincoln v. Vigil*,
508 U.S. 182 (1993)....................25, 27

*Lindahl v. Office of Personnel Management*,
470 U.S. 768 (1985)....................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................6, 11

*Mach Mining, LLC v. Equal Employment Opportunity Commission*,
575 U.S. 480 (2015)........................................................................................17

*Make The Road New York v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020)........................................................................26

*Military-Veterans Advocacy v. Secretary of Veterans Affairs*,
7 F.4th 1110 (Fed. Cir. 2021) ...................................................................6, 7, 12

*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983)..........................................................................................26

*Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*,
989 F.3d 1375 (Fed. Cir. 2021) ...........................................................24, 27, 29

*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*,
508 U.S. 656 (1993)..........................................................................................5

*Perez Perez v. Wolf*,
943 F.3d 853 (9th Cir. 2019) ...............................................................24, 25, 26

*Pregis Corp. v. Kappos*,
700 F.3d 1348 (Fed. Cir. 2012) .......................................................................22

*Robertson v. Allied Solutions, LLC*,
902 F.3d 690 (7th Cir. 2018) ........................................................................4, 6

*Sackett v. Environmental Protection Agency*,
566 U.S. 120 (2012)........................................................................................20

*SAS Institute Inc. v. Iancu*,
138 S. Ct. 1348 (2018).......................................................................20, 21, 23

*Serrato v. Clark*,
486 F.3d 560 (9th Cir. 2007) ..........................................................................26

*Settles v. United States Parole Commission*,
429 F.3d 1098 (D.C. Cir. 2005)........................................................................5

*Sierra Club v. Trump*,
963 F.3d 874 (9th Cir. 2020) ....................................................................28

*SIPCO, LLC v. Emerson Electric Co.*,
980 F.3d 865 (Fed. Cir. 2020) ..................................................................23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).........................................................................................6

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009).........................................................................9, 10, 12

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2016)...........................................................................2, 7, 14

*Thryv, Inc v. Click-To-Call Technologies, LP*,
140 S. Ct. 1367 (2020)....................................................................16, 23, 24

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
529 F.3d 1352 (Fed. Cir. 2008) ................................................................28

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021).................................................................................4, 9

*United States v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021).....................................................................................27

*University of South Florida Research Foundation, Inc. v. Fujifilm Medical Systems U.S.A., Inc.*,
19 F.4th 1315 (Fed. Cir. 2021) .........................................................................6

*Utility Air Regulatory Group v. Environmental Protection Agency*,
573 U.S. 302 (2014).........................................................................................29

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977).........................................................................................15

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014) ..........................................................................4

*Weyerhaeuser Co. v. United States Fish & Wildlife Service*,
139 S. Ct. 361 (2018).......................................................................................25

## STATUTES

5 U.S.C.
§ 701 ........ *passim*
§ 706 ........ 23, 25

35 U.S.C.
§ 141 ........ 20
§ 314 ........ *passim*
§ 315 ........ 23, 25
§ 316 ........ 20, 21
§ 319 ........ 20

## P.T.A.B. PROCEEDINGS

*Apple Inc. v. Smart Mobile Technologies LLC*,
No. IPR2022-00982, Paper No. 3 (P.T.A.B. May 9, 2022) ........ 3

*Apple Inc. v. Optis Cellular Technology, LLC*,
No. IPR2020-00465, 2020 WL 5580473 (P.T.A.B. Sept. 17, 2020) ........ 3

*Apple Inc. v. Pinn, Inc.*,
No. IPR2020-00999, 2020 WL 7233338 (P.T.A.B. Dec. 8, 2020) ........ 13

*Cisco Systems, Inc. v. Oyster Optics, LLC*,
No. IPR2021-00319, 2021 WL 2350054 (P.T.A.B. June 8, 2021) ........ 3

*Cisco Systems, Inc. v. XR Communications LLC*,
No. IPR2022-00958, Paper No. 2 (P.T.A.B. May 4, 2022) ........ 3-4

*Edwards Lifesciences Corp. v. Aortic Innovations, LLC*,
No. IPR2022-00556, Paper No. 1 (P.T.A.B. Feb. 7, 2022) ........ 4

*Google LLC v. EcoFactor, Inc.*,
No. IPR2021-01578, 2022 WL 945681 (P.T.A.B. Mar. 18, 2022) ........ 3

*Google LLC v. Personalized Media Communications, LLC*,
No. IPR2020-00720, 2020 WL 6530766 (P.T.A.B. Nov. 5, 2020) ........ 14

*Google LLC v. Voip-Pal.com, Inc.*,
No. IPR2022-01072, Paper No. 1 (P.T.A.B. June 3, 2022) ........ 4

*Intel Corporation v. Koninklijke Philips N.V.*,
No. IPR2021-00328, 2021 WL 3039198 (P.T.A.B. July 16, 2021).....................3

*Oracle Corp. v. Sonrai Memory Ltd.*,
No. IPR2022-00303, Paper No. 1 (P.T.A.B. Dec. 9, 2021) .................................4

**OTHER AUTHORITIES**

Lex Machina, *PTAB Trials Which Reached Institution Decisions* (Petitions Filed Between 2012-09-16 and 2022-05-27), https://rb.gy/amn3xd (visited June 10, 2022) ....................................................16

*Fintiv, Inc. v. Apple Inc.*, No. 1:21-cv-00896-ADA (W.D. Tex. June 7, 2022), ECF No. 433 ..........................................................................................28

## INTRODUCTION

The Director offers little defense of the district court's misinterpretation of 35 U.S.C. § 314(d). She cites no statutory evidence sufficient to overcome the strong presumption of reviewability. Nor does she justify stretching § 314(d) to preclude review of agency rules governing institution decisions.

Indeed, most of the Director's § 314(d) arguments simply echo the contention that review is precluded under § 701(a)(2) of the APA because institution decisions are (supposedly) committed to her discretion by law. The district court did not rely on that argument, and for good reason: that theory again conflates review of individual institution decisions with review of an agency rule governing institution generally. Appellants' suit involves only the latter, and is therefore not subject to § 701(a)(2), which precludes review only where there is no law for the court to apply. There is unquestionably law to apply to determine whether the *NHK-Fintiv* rule exceeds the PTO's authority under the AIA (a basic question of statutory interpretation) or violates the APA (a basic application of the APA's familiar requirements of reasoned decisionmaking and notice-and-comment rulemaking).

The Director accordingly resorts to questioning Appellants' Article III standing. But the district court correctly rejected that argument, recognizing that Appellants' allegations establish a particularized, cognizable injury resulting from

the Director's application of an unlawful rule to constrict the availability of IPR, depriving Appellants of the very benefits Congress intended to provide. Although the district court cited many supporting decisions, the Director conspicuously fails even to acknowledge them. Appellants' claims should be reinstated for consideration on the merits.

## ARGUMENT

### I. APPELLANTS HAVE ARTICLE III STANDING

As the district court correctly determined, Appellants have alleged an injury-in-fact that is fairly traceable to the *NHK-Fintiv* rule and that will be redressed by the *NHK-Fintiv* rule's invalidation—namely, that "the Director is using unlawful considerations that increase the risk of denial [of IPR], thereby depriving [Appellants] of the *benefits* of IPR." Appx8. The Director's responses disregard controlling precedent and distort Appellants' claims.

#### A. Appellants Have Shown Injury-in-Fact

##### 1. Appellants' allegations are sufficient

The injury-in-fact requirement "ensure[s] that the plaintiff has a personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-158 (2016) (quotation marks omitted). Appellants met that requirement by alleging that they have lost and will lose future opportunities to use IPR to cancel some patents. In addition to citing dozens of cases in which the

Board has already applied the *NHK-Fintiv* rule to deny institution of Appellants' IPR petitions, Appx1141-1143, Appellants alleged that:

(1) they "develop[] transformative, cutting-edge technologies," Appx1136; *see also* Appx1134-1135;

(2) as a result, they are "frequent targets" of patent "infringement suits," Appx1131;

(3) they "regularly file IPR petitions" in response to such suits and "are currently awaiting institution decisions on IPR petitions that relate to pending infringement litigation," Appx1143; and

(4) the Board "will be bound to apply the *NHK-Fintiv* rule" to decide whether to institute Appellants' pending and future IPR petitions and "is likely to deny at least some of [Appellants'] pending or future IPR petitions under the *NHK-Fintiv* rule based on the pendency of litigation," *id.*

And since filing their complaint, Appellants have collectively had numerous IPR petitions denied under the *NHK-Fintiv* rule. *See, e.g.*, *Google LLC v. EcoFactor, Inc.*, No. IPR2021-01578, 2022 WL 945681, at *5 (P.T.A.B. Mar. 18, 2022); *Intel Corporation v. Koninklijke Philips N.V.*, No. IPR2021-00328, 2021 WL 3039198 (P.T.A.B. July 16, 2021); *Cisco Sys., Inc. v. Oyster Optics, LLC*, No. IPR2021-00319, 2021 WL 2350054, at *7 (P.T.A.B. June 8, 2021); *Apple Inc. v. Optis Cellular Tech., LLC*, No. IPR2020-00465, 2020 WL 5580473 (P.T.A.B. Sept. 17, 2020). Appellants also await decisions on institution of more than 15 pending IPR petitions. *See, e.g.*, *Apple Inc. v. Smart Mobile Techs. LLC*, No. IPR2022-00982 (P.T.A.B. May 9, 2022); *Cisco Sys., Inc. v. XR Commc'ns LLC*, No. IPR2022-

00958 (P.T.A.B. May 4, 2022); *Edwards Lifesciences Corp. v. Aortic Innovations, LLC*, No. IPR2022-00556 (P.T.A.B. Feb. 7, 2022); *Google LLC v. Voip-Pal.com, Inc.*, No. IPR2022-01072 (P.T.A.B. June 3, 2022); *Oracle Corp. v. Sonrai Memory Ltd.*, No. IPR2022-00303 (P.T.A.B. Dec. 9, 2021) (Intel as real party in interest).[1]

Appellants thus do not "merely seek[] to ensure … compliance with regulatory law," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021) (quotation marks omitted), but seek to remedy a concrete injury to their ability to obtain the benefits of IPR. As the Supreme Court and many circuits have recognized, a plaintiff identifies a concrete injury by alleging, as Appellants do here, that it "was deprived of a chance to obtain a benefit." *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 697 (7th Cir. 2018). Although the district court cited many such cases, *see* Appx8, the Director does not even acknowledge them—let alone attempt to distinguish them or explain why this Court should create a conflict with its sister circuits.

For example, in *Czyzewski v. Jevic Holding Corp.*, the Supreme Court held that creditors had standing to challenge a bankruptcy court's "structured dismissal"

---

[1] "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings…." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993); *see also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1312 (Fed. Cir. 2014) ("we may take judicial notice of the fact that a filing was made before the PTAB").

that distributed estate assets in a manner that violated the Bankruptcy Code's priority rules and ensured the creditors would receive nothing on a pending lawsuit against the estate. Injury-in-fact existed because the dismissal order "cost [the creditors] … a chance to obtain a settlement that respected their priority" or "the power to bring their own lawsuit." 137 S. Ct. 973, 983 (2017). Although "the lawsuit … might [have] prove[d] fruitless," the "mere possibility of failure d[id] not eliminate the value of the claim or [the creditors'] injury in being unable to bring it." *Id.*; *cf. Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1101-1103 (D.C. Cir. 2005) (plaintiff had standing to challenge regulation making it more difficult for him to gain benefit of parole).

Circuit courts have taken the same approach. In *Abboud v. INS*, the Ninth Circuit held that the plaintiff had standing to challenge the denial of an immigration petition that caused him to "los[e] a significant opportunity to receive

an immigrant visa." 140 F.3d 843, 847 (9th Cir. 1998).[2] In *Robertson*, the Seventh Circuit found standing because the defendant's action allegedly "limited [plaintiff's] ability to review the basis of the adverse employment decision and impeded her opportunity to respond." 902 F.3d at 695. And in *Military-Veterans Advocacy v. Secretary of Veterans Affairs*, this Court found standing to challenge a regulation that barred plaintiff from filing a supplemental claim for veterans benefits because of a pending judicial appeal, "thereby preventing him from timely applying for (and receiving) benefits based on this new evidence." 7 F.4th 1110, 1124 (Fed. Cir. 2021).

Case law similarly confirms that Appellants' alleged injury is sufficiently particularized because it "affect[s] [them] in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Appellants do not invoke a harm that is "undifferentiated and common to all members of the public." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 575 (1992) (quotation marks omitted). Rather, they focus on their own use of IPR to attempt to invalidate patents asserted against them and the consequences of the *NHK-Fintiv* rule for those IPR petitions and patents.

---

[2] In evaluating Article III standing, this Court applies regional circuit law unless the issue is unique to patent law. *University of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021).

Appellants' alleged injury is likewise imminent, because "there is a substantial risk that [it] will occur." *Driehaus*, 573 U.S. at 158 (quotation marks omitted). When a plaintiff challenges a rule prospectively, a sufficient risk of future injury exists if there is a "credible threat," *id*. at 159, 164, or "realistic danger," *Military-Veterans Advocacy*, 7 F.4th at 1122 (quotation marks omitted), that the allegedly injurious rule will be applied against the plaintiff. Appellants satisfied this requirement by alleging that, in the *NHK-Fintiv* rule's short existence, the Board has applied it to deny hundreds of IPR petitions, Appellants' Br. 16, "many" of which were filed by Appellants, Appx1140; *see* Appx1141-1143; Appellants' Br. 17-19; that Appellants have filed and expect to file more IPR petitions falling within the rule's ambit; that Appellants develop leading technologies, making them frequent targets of infringement suits based on weak patents; that, in those circumstances, Appellants routinely petition for IPR; and that the Board will—because it must—apply the *NHK-Fintiv* rule to those petitions. Appx1131; Appx1134-1136; Appx1140; Appx1143; Appellants' Br. 16.

Courts consistently adjudge such allegations sufficient. For example, in *Babbitt v. United Farm Workers National Union*, the Supreme Court found standing to challenge a statute penalizing false speech discouraging consumers from purchasing certain products where plaintiffs alleged that they had "engaged in [such consumer] campaigns in the past," that they intended to "continue[] to" do

so, and that, although they did "not plan to propagate untruths," some "erroneous statement [would be] inevitable" in the future. 442 U.S. 289, 301-303 (1979). Similarly, in *Jibril v. Mayorkas*, the D.C. Circuit concluded that plaintiffs had standing to challenge their apparent inclusion on the government's terrorist watchlist because their "history of traveling to Jordan every two years to visit family, combined with their professed desire to continue that pattern, strongly suggests that they will travel internationally within the next year or two." 20 F.4th 804, 814 (D.C. Cir. 2021); *see also, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15-16 (2010) (finding standing where plaintiff alleged it had previously engaged in covered conduct, government had repeatedly applied law to similar conduct, and plaintiff planned to engage in covered conduct again). Here, too, Appellants have documented the Board's history of applying the *NHK-Fintiv* rule to deny institution of IPR based on pending litigation and have alleged that they now have pending and will file in the future more IPR petitions likely to be denied under the rule. Article III requires no more.

**2. The Director's arguments lack merit**

a. The Director disregards Appellants' allegations and the case law supporting the district court's analysis. She first argues that the lost opportunity to pursue patent cancellation through IPR is not a cognizable injury because "the IPR proceeding is not an end unto itself" and "'the deprivation [of a] procedural right *in*

*vacuo* … is insufficient.'" Director Br. 16 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)); *see also id.* at 18. To the extent the Director means that the loss of an opportunity to obtain a benefit cannot satisfy Article III, that argument is refuted by the above precedents, which the Director tellingly ignores. *Supra* pp. 4-6. The same precedent likewise forecloses the Director's contention (at 10, 15-17) that the only relevant injury an IPR petitioner might suffer is the inability to develop and market an infringing product because of the allegedly invalid patent. All those cases involved an injury to the plaintiff's ability to pursue a benefit through a *process* that the challenged government action foreclosed or made more difficult: in *Jevic*, the creditors lost access to a settlement or litigation process through which they might have realized a return on their claims against the estate; in *Military-Veterans Advocacy*, the plaintiff lost access to a supplemental process for seeking veterans' benefits; in *Robertson*, the plaintiff lost access to a review-and-response process that might have reversed an adverse employment action; in *Abboud*, the plaintiff lost access to a process for obtaining an immigrant visa.

To be sure, a "*bare* procedural violation," on which "nothing … substantive" "hinge[s]," does not establish a concrete injury. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 625-626 (7th Cir. 2020), *as amended on denial of reh'g* (June 30, 2020); *see also, e.g.*, *TransUnion*, 141 S. Ct. at 2213 (finding "bare procedural

violation" where "plaintiffs put forth no evidence … that [they] would have tried to correct their credit files … had they been sent the information in the proper format"). That is because such injuries are "nothing more than an abstract 'interest in the proper administration of the law.'" *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (quoting *Summers*, 555 U.S. at 497). But here—as in the other cases finding standing based on the denial of an opportunity to obtain a benefit—a significant substantive benefit (cancellation of a patent) would potentially be attainable through the procedure that the challenged rule eliminates or restricts.[3]

b. The Director counters (at 18-19) that Appellants lack standing because they "have not identified a single patent claim as to which IPR is likely to be denied based on the *Fintiv* factors." But no such showing is required. Article III is satisfied by showing a pattern of challenged conduct that has an appreciable likelihood of continuing and affecting the plaintiff personally. The Supreme Court in *Babbitt* thus found injury-in-fact even though the plaintiffs did not identify whether any specific future statements in their consumer campaign would be false and thus could "[]not be sure whether criminal sanctions may be visited upon them

[3] The Director asserts (at 18 n.3) that "[m]ere differences in procedures" between IPR and litigation are also "insufficient," but again, plaintiffs' injury is not the deprivation of IPR procedures alone, but the lost chance to obtain the ultimate benefit of IPR—i.e., patent cancellation.

for pursuing any such conduct." 442 U.S. at 301-303. In *Jibril*, the court reached the same conclusion even though the plaintiffs never identified a future trip that could subject them to unreasonable screening because of their inclusion on a terrorist watchlist. 20 F.4th at 814-815. Moreover, at the pleading stage, "'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.'" *James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018) (quoting *Lujan*, 504 U.S. at 561).

The Director cites decisions holding that IPR petitioners lacked standing to appeal final written decisions upholding patentability because the petitioners failed to show any "'plans to develop'" a product that would "'potentially infring[e]'" a challenged patent. Director Br. 16 (quoting *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1024-1025 (Fed. Cir. 2021)); *id.* at 18 n.3, 20. But the *NHK-Fintiv* rule by definition affects only those petitioners who have already been accused of infringement. And in any event, those cases involved not challenges to a general rule to be applied in the future, but challenges to final written decisions regarding individual patents. In such circumstances, the injury—if any—related only to the particular patents at issue. *See Apple Inc. v. Qualcomm Inc.*, 992 F.3d 1378, 1385 (Fed. Cir. 2021); *ABS*, 984 F.3d at 1024-1025; *General Elec. Co. v. United Techs.*

*Corp.*, 928 F.3d 1349, 1354 (Fed. Cir. 2019); *AVX Corp. v. Presidio Components, Inc.*, 923 F.3d 1357, 1361 (Fed. Cir. 2019).

The Director also misunderstands (at 19) *Military-Veterans Advocacy* and *Summers*. In the former, this Court found a lack of standing because the plaintiff did not even identify "an example claim" showing "how [a] rule may cause such injury." 7 F.4th at 1132. In the latter, the Supreme Court faulted the "failure to allege that *any* particular … project claimed to be unlawfully subject to the regulations will impede a specific and concrete plan of [the plaintiff association's member] to enjoy the national forests" because, without such specificity, there was "hardly a likelihood," only a theoretical possibility, of injury. 555 U.S. at 495. By contrast, Appellants have alleged that the Board will necessarily apply the *NHK-Fintiv* rule to their pending and future IPR petitions.

Finally, citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), the Director contends (at 20) that the Board's history of denying IPR petitions is "irrelevant to plaintiffs' claims for prospective relief." But *Lyons* acknowledged that "[p]ast wrongs" can be "evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* at 102 (quotation marks omitted). The plaintiff came up short in *Lyons* only because he showed only a mere "possibility" that he would "encounter" the police in a situation where they might choose to apply a chokehold. *Id*. at 105-106. Appellants, in contrast, have shown a realistic

probability that the Board will deny their IPR petitions under the *NHK-Fintiv* rule—indeed, the Board has done exactly that since Appellants filed their complaint. *See supra* pp. 3-4.

c. Next, the Director suggests (at 17-18) that Appellants have failed to allege "a nonspeculative likelihood that the *Fintiv* factors would make the difference between institution and non-institution" for any pending or future IPR petition. But the notion that the Director adopted a rule with no practical effect is not only improbable, but belied by *NHK-Fintiv* rule itself. The rule expressly invites the Board to deny IPR petitions challenging patents asserted in pending infringement litigation—and requires the Board to deny institution if it determines that IPR would be inefficient in light of the overlapping lawsuit. Appellants' Br. 14-16. And again, the Board has applied the rule to deny hundreds of IPR petitions, including many filed by Appellants, in just a few years. In some instances, the Board determined that the IPR petition likely met § 314(a)'s requirement of a reasonable likelihood of success before denying the petition under the *NHK-Fintiv* rule, suggesting that more petitions would be granted but for the rule.[4] Under these circumstances, there is a substantial likelihood that the rule will cause the denial of at least one IPR petition filed by an Appellant.

---

[4] *See, e.g.*, *Apple Inc. v. Pinn, Inc.*, No. IPR2020-00999, 2020 WL 7233338, at *8 (P.T.A.B. Dec. 8, 2020) (denying institution under *NHK-Fintiv* even though an "initial inspection" of the merits suggested a reasonable likelihood of success on

Still, the Director insists (at 21) that the *NHK-Fintiv* rule "merely guide[s] the exercise of discretion." But the rule is mandatory, and although the Board's evaluation of the rule's factors individually involves some discretion, the rule requires denial if the Board determines that conducting the IPR would be inefficient in light of pending infringement litigation. Appellants' Br. 16. Moreover, the fact that the Board has denied hundreds of IPR petitions under the rule in the short time it has been in effect shows that—whatever discretion the rule affords—there is a substantial likelihood that any IPR petition relating to a pending infringement suit will be denied.

Myriad cases refute the notion that the mere presence of discretion defeats standing to challenge a law prospectively. Were it otherwise, pre-enforcement challenges to criminal laws would be impossible, since the government always has prosecutorial discretion. *See, e.g.*, *Driehaus*, 573 U.S. at 158-161 (collecting criminal cases). Contrary to the Director's suggestion (at 21), standing was absent in *Clapper v. Amnesty International USA* not because the plaintiffs' alleged injury—having to take measures to protect their communications from government

---

at least one claim); *Google LLC v. Personalized Media Commc'ns, LLC*, No. IPR2020-00720, 2020 WL 6530766, at *4 (P.T.A.B. Nov. 5, 2020) ("[E]ven if we assumed that factor 6 [including the merits] weighed toward institution, we would still deny institution because of the significant weight of the other *Fintiv* factors against institution.").

surveillance—turned on the government's exercise of discretion, but because the plaintiffs lacked "any evidence" regarding the government's "practice" of targeting communications for surveillance and offered only their "assumptions," which was unsurprising given that the challenged law expressly prohibited the government from targeting plaintiffs. 568 U.S. 398, 411-412 (2013). By contrast, the *NHK-Fintiv* rule's functioning has been alleged in detail and is largely undisputed.

d. Finally, the Director asserts (at 17-18) that Appellants have failed to show "a nonspeculative likelihood … that the [IPR] proceeding, if instituted, would ultimately lead to invalidation of the patent." But Appellants need not show they would actually prevail in any particular IPR, just as the creditors in *Jevic* did not have to show they would prevail in their lawsuit against the estate. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), is also instructive. The Supreme Court there had "little doubt" that the developer had constitutional standing to challenge the denial of a rezoning application because the zoning restriction was a "barrier to constructi[on]," even though the development's actual construction depended on various other "uncertainties." *Id.* at 261-262.

In any event, IPR does offer a significant opportunity to obtain cancellation of the challenged patent. Appellants showed that 44 percent of all IPRs have resulted in full or partial cancellation of the challenged patent. Appx1387. Only

10 percent of IPRs have fully upheld the challenged patent and the rest did not reach final decision. Lex Machina, *PTAB Trials Which Reached Institution Decisions* (Petitions Filed Between 2012-09-16 and 2022-05-27), https://rb.gy/amn3xd (visited June 10, 2022). Relatedly, the Director challenges (at 22-23) the prediction that Appellants "will fare better in IPR proceedings" than in litigation, but the statistics still show a realistic chance that IPR will yield a more favorable result for Appellants. Appellants' Br. 7. Indeed, the very purpose of IPR is to "weed out bad patent claims efficiently" through a more streamlined process, a lower standard of proof, and expert decisionmakers. *Thryv, Inc v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020); Appellants' Br. 7, 9-10. The *NHK-Fintiv* rule thwarts this congressional design.

### B. Appellants Have Shown Causation And Redressability

As the district court's analysis reflects, causation and redressability here are self-evident. *See* Appx8-9. Appellants' injury is directly traceable to the *NHK-Fintiv* rule because it is the rule's application that deprives Appellants of the opportunity to cancel patents through IPR. And the relief Appellants seek—declaring the rule invalid, setting it aside, and enjoining the PTO from applying the rule or its factors in the future—would redress Appellants' injury by preventing the PTO from denying Appellants the opportunity to cancel patents through IPR on the rule's unlawful grounds.

The Director repeats the assertion (at 24-25) that Appellants' injury is too speculative to be concrete and imminent, stringing together a series of events that, in the Director's view, must occur before Appellants' injury materializes. But for the reasons discussed above, Appellants have alleged a sufficiently likely—indeed, virtually certain—chain of events establishing an imminent injury traceable to the *NHK-Fintiv* rule.

## II. NO STATUTE PRECLUDES JUDICIAL REVIEW OF THE *NHK-FINTIV* RULE

The Director also claims that § 314(d) of the AIA and § 701(a)(2) of the APA preclude review of Appellants' claims. But the Director's arguments cannot overcome the strong presumption in favor of judicial review of agency action. Like the district court, the Director conflates the reviewability of a particular institution decision in a specific case with the reviewability of an agency rule that governs institution decisions generally. In any event, neither § 314(d) nor § 701(a)(2) would apply given the nature of the *NHK-Fintiv* rule and of Appellants' claims.

### A. Section 314(d) Does Not Bar Review Of Appellants' Claims

#### 1. Section 314(d) does not apply to rules governing institution

The Director "bears a heavy burden in attempting to show that Congress prohibit[ed] all judicial review." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) (quotation marks omitted). Even "where substantial doubt about the

congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 351 (1984). As Appellants showed (Br. 29-32), the statutory text, structure, and purpose make clear that Congress intended 35 U.S.C. § 314(d) to preclude review only of individual institution determinations, not of rules governing institution generally.

The Director offers nothing sufficient to rebut the presumption of reviewability. The Director does not deny that § 314(d) by its terms applies only to individual institution decisions, nor that Congress could have written § 314(d) to preclude review of institution-related rules if it had wanted.[5] Instead, the Director asserts without citation (at 27) that allowing judicial review of the *NHK-Fintiv* rule would be "tantamount to" allowing judicial review of individual institution decisions. That argument fails. A rule governing institution decisions is distinct

[5] Instead of addressing this argument directly, the Director suggests in a footnote (at 32-33 n.6) that the text of § 314(d) is not written more broadly because "the AIA does not require the Director to publish *the factors* she will rely on in exercising her discretionary authority" (emphasis added). But Appellants' argument does not turn on whether the AIA commanded publication of the *factors* to be considered in making institution decisions. Rather, Appellants make the more straightforward point that § 314(d), by its terms, precludes review only of individual institution decisions. If Congress intended § 314(d) to preclude review of institution-related rules as well, Congress could have so stated explicitly, without needing to mention the factors the Director may rely on in exercising authority to deny IPR.

from an individual institution decision. And, as Appellants explained (at 36), the Supreme Court has held that a statute barring review of agency decisions in individual cases does not bar review of agency rules governing such decisions. *See DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1901-1902, 1907 (2020); *Lindahl v. OPM*, 470 U.S. 768, 779 (1985). The district court's contrary holding disregards that precedent and the rule that statutory bars to judicial review should be construed narrowly. *E.g.*, *Hyatt v. OMB*, 908 F.3d 1165, 1171 (9th Cir. 2018). The Director responds (at 31) that *Regents* involved an "affirmative program," whereas the *NHK-Fintiv* rule is "more akin to a non-enforcement policy." That answer, however, goes only to the question whether the institution decision is committed to agency discretion by law—and it is incorrect, as explained below. As to *Lindahl*, the Director simply ignores (at 31) the substantial role the presumption of reviewability played in the Court's analysis.

Moreover, there is no support for the Director's assertion (at 27) that a statutory bar precluding review of specific institution decisions should be "extend[ed]" to preclude review of agency rules. The Director says (at 27, 29-30) that a "decision not to institute IPR is … not the type of agency decision that necessitates an avenue for judicial review" because it "does not alter the rights of private parties." That is irrelevant because plaintiffs challenge a rule, not an institution denial. It also overlooks the fact that, as discussed above, denying IPR

deprives the petitioner of the statutorily established opportunity to cancel a patent through IPR.

Nor is there any evidence that Congress sought to preclude all "collateral litigation over institution." Director Br. 27. That some provisions of the AIA explicitly permit or bar judicial review in various specific circumstances, *see* 35 U.S.C. §§ 141(c), 319, 314(d), does not imply a legislative purpose of generally denying judicial review of all related agency actions. *See Sackett v. EPA*, 566 U.S. 120, 129 (2012) ("if the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all"). Indeed, as Appellants explained (at 35-36) and the Director nowhere disputes, the Supreme Court explicitly rejected the argument that § 314(d) "foreclos[es] judicial review of any legal question bearing on the institution" of IPR. *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018).

Citing 35 U.S.C. § 316, the Director also argues (at 29) that extending § 314(d) to apply to rules governing institution would serve a congressional purpose of "ensur[ing] that the Director could exercise expert judgment as to how to best promote efficiency and other goals of the patent system, without judicial second-guessing." But § 316 does not give the Director a general mandate—let alone unreviewable authority—to promote efficiency or other systemic goals. It

instead commands the Director, when "prescribing regulations," to "consider the effect of any such regulation" on agency efficiency. 35 U.S.C. § 316(b). Leaving aside the irony of the Director's reliance on § 316 given the PTO's defiance of that provision's requirement that rules "governing [IPR]" be adopted by "regulation[]"—*i.e.*, promulgated pursuant to the APA's notice-and-comment requirements, Appellants' Br. 30-31—nothing in § 314(d) prevents courts from assessing whether the PTO's consideration of efficiency when promulgating such rules exceeded the PTO's authority or was arbitrary and capricious. To the contrary, as Appellants explained (at 30-31), § 316 strongly indicates that Congress intended that rules "governing" IPR would be subject to the APA and its judicial review provisions. Br. 30-31. The Director's observation (at 32) that rules dictating how the Director will exercise institution authority are optional misses the point: Congress was clear that, if and when the PTO adopts rules governing IPR, it must do so by regulation, which in turn would be reviewable under the APA.[6]

---

[6] The Director hints that even notice-and-comment regulations governing institution of IPR would not "necessarily" be reviewable, but the Supreme Court has already reviewed PTO regulations governing IPR, *see Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275-283 (2016), including an institution-related regulation, *see SAS*, 138 S. Ct. at 1354. In any event, the Director again bases that suggestion only on the assumption that all institution-related matters are committed to agency discretion by law. The Director has no real argument that § 314(d) would independently preclude review.

The Director does not deny that accepting her invitation to extend § 314(d) to bar review of rules governing institution would insulate such rules—no matter how arbitrary or unlawful—from all judicial review. This Court has already rejected such a view as "implausible," *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1358 (Fed. Cir. 2012), and it cannot be reconciled with the presumption of reviewability, *see Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 678 (1986).

#### 2. In any event, Appellants' claims fall within § 314(d)'s exceptions

Section 314(d) also does not bar review here because Appellants' claims fit squarely within its exceptions. Appellants Br. 39-46. The Director's responses fail.

First, the Director argues (at 34-35) that Appellants' claims raise questions "'closely tied to the application and interpretation of statutes related to' the institution decision" because "[t]he only question in this case is whether the Director's actions in exercising discretion regarding whether to institute proceedings were consistent with the AIA." But Appellants have unmistakably advanced two challenges to the *NHK-Fintiv* rule that arise solely under the APA and thus have nothing to do with the AIA: that the rule is arbitrary and capricious and was unlawfully adopted without notice-and-comment rulemaking. Appellants' Br. 40-42. The Director's effort to place all APA claims within the scope of

§ 314(d)'s bar contravenes Supreme Court decisions expressly declaring that, notwithstanding § 314(d), "judicial review remains available consistent with the Administrative Procedure Act," *SAS*, 138 S. Ct. 1359, "which enables reviewing courts to 'set aside agency action' that is … 'arbitrary and capricious'" or contrary to the APA's procedures, *Cuozzo*, 579 U.S. at 275 (quoting 5 U.S.C. § 706(2)(A)-(C) and citing *id*. § 706(2)(D)).

Second, as to Appellants' claim that the *NHK-Fintiv* rule exceeds the PTO's authority under the AIA, the Director quotes this Court's statement that "*Thryv* held that the 'No Appeal' provision [§ 314(d)] barred judicial review of the threshold decision to institute inter partes review despite the argument that the Board exceeded its statutory authority in doing so." *SIPCO, LLC v. Emerson Elec. Co.*, 980 F.3d 865, 869 (Fed. Cir. 2020). But *Thryv* involved an "ordinary dispute about the *application* of an institution-related statute"—namely, whether "a complaint dismissed without prejudice … trigger[s] §315(b)'s one-year limit" to file an IPR petition. 140 S. Ct. at 1371, 1373-1374. By contrast, Appellants' claim fits the exception for claims that the PTO has "exceed[ed] its statutory bounds," *SAS*, 138 S. Ct. at 1359—an exception *Cuozzo* recognized, 579 U.S. at 275, and *SAS* applied, 138 S. Ct. at 1359. Appellants' Br. 35, 43-44. The Director reads *Thryv* as effectively eliminating those exceptions, but *Thryv* did not purport to

overturn *Cuozzo* or *SAS*; on the contrary, *Thryv* reaffirmed that both "remain governing law," 140 S. Ct. at 1376.

Even if the Director's reading of *Thryv* were sound, it would not foreclose review here because, again, Appellants do not seek review of any individual institution decision. Neither the Supreme Court nor this Court has ever suggested, much less held, that § 314(d) bars any suit other than "direct appeal from a decision denying institution." *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1378 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 874 (2022); *see also, e.g.*, *Thryv*, 140 S. Ct. at 1373, 1376-1377 (holding § 314(d) barred claim that PTO "should have refused to institute" and declining to recognize that § 314(d) extends "beyond the decision to institute"). At a minimum, precedent establishes that § 314(d) does not bar claims that PTO actions other than institution decisions exceeded the PTO's authority, were arbitrary and capricious, or failed to comply with the APA's procedural requirements. Accordingly, § 314(d) does not bar review of Appellants' claims.

**B. Section 701(a)(2) Of The APA Does Not Bar Appellants' Claims**

1. Section 701(a)(2) precludes review of "agency action … committed to agency discretion by law." 5 U.S.C. § 701(a)(2). But "[t]he mere fact that a statute contains discretionary language does not make agency action unreviewable." *Perez Perez v. Wolf*, 943 F.3d 853, 862 (9th Cir. 2019); *accord In*

*re Vivint, Inc.*, 14 F.4th 1342, 1351 (Fed. Cir. 2021) ("permissive language, alone, does not render a question committed to agency discretion under 5 U.S.C. § 701(a)(2)"). The APA expressly permits review to ensure that agency action is not "an abuse of discretion," 5 U.S.C. § 706(2)(A), and courts "routinely" hear APA claims under "discretion-laden standards." *Perez Perez*, 943 F.3d at 862. Section 701(a)(2) precludes judicial review only in the "rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993))—in other words, only where "there is no law to apply," *Vivint*, 14 F.4th at 1351 (quotation marks omitted). Here, there is law to apply to resolve each of Appellants' claims, and therefore § 701(a)(2) does not bar review.

Appellants' first claim is that the *NHK-Fintiv* rule violates Congress's intent as reflected in the text, structure, and purpose of the AIA. Appellants' Br. 19-20. Appellants argue that 35 U.S.C. § 315(b)'s one-year period for petitioning for IPR after being served with an infringement complaint forecloses the *NHK-Fintiv* rule, and that that conclusion is reinforced by other AIA provisions reflecting Congress's careful decisions regarding when and how IPR should proceed in the face of an overlapping proceeding. Appx1265-1270. It is "almost ludicrous to suggest that there is 'no law to apply' in reviewing whether an agency has

reasonably interpreted a law." *International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 783 F.2d 237, 246 (D.C. Cir. 1986).

Appellants' second claim—that the *NHK-Fintiv* rule is arbitrary and capricious, *see* Appx1273-1278—invokes the well-established standards of reasoned decisionmaking. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 42 (1983). Such claims are not barred by § 701(a)(2). *See, e.g.*, *Vivint*, 14 F.4th at 1351; *Perez Perez*, 943 F.3d at 863-864.

Appellants' third claim—that the Director violated the APA by adopting the *NHK-Fintiv* rule without notice-and-comment rulemaking, *see* Appx1278-1280—does not implicate agency discretion at all. "An agency's obligation to comply with the APA's notice and comment provisions is an administrative requirement that must be fulfilled, notwithstanding whether [the] agency's action is susceptible to judicial review." *Serrato v. Clark*, 486 F.3d 560, 569 (9th Cir. 2007); *see also Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 634 (D.C. Cir. 2020) ("under the APA the ultimate availability of substantive judicial review is *distinct* from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply" (quotation marks omitted)). Thus, in *Lincoln*, the Supreme Court addressed the plaintiff's notice-and-comment claim on the merits even though it concluded that the plaintiff's substantive claim was barred under

§ 701(a)(2). 508 U.S. at 190-199. The Director thus does not suggest that this claim is barred by § 701(a)(2).

2. The Director argues (at 27, 38) that § 701(a)(2) should nonetheless bar review because "[i]dentifying relevant factors" governing institution "requires both value judgments about the allocation of agency resources and expert predictive judgments about how different choices will impact the patent system." Nothing in *NHK* or *Fintiv*, however, indicates that the PTO undertook any such balancing in crafting the rule, and the Director cites none. The only balancing found in the rule is in its prescription: the Board must "balance[]" six "factors" to develop a "balanced assessment of all relevant circumstances" in determining whether to grant an individual IPR petition. Appx1181. That is irrelevant because, again, Appellants do not challenge an individual institution decision but the general rule under which those decisions are made.

The Director nevertheless asserts that review is precluded because the Supreme Court and this Court have said that "the Director's exercise of her discretionary authority to deny review 'is committed to agency discretion by law.'" Director Br. 37 (quoting *Mylan*, 989 F.3d at 1382); *see also, e.g.*, *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1977 (2021), *quoted in* Director Br. 26. The Supreme Court's statements that the institution decision is committed to the Director's discretion were dicta that did not consider the § 701(a)(2) standard.

Regardless, the Director's syllogism is incorrect: this suit challenges a rule governing IPR petitions generally, not how the Board applied that rule to a particular IPR petition.[7]

Whatever exercise of discretion the *NHK-Fintiv* rule reflects, it is not immune from judicial scrutiny. Section 701(a)(2) does not "set agencies free to disregard legislative direction in the statutory scheme that the agency administers." *Heckler*, 470 U.S. at 833. "Congress may limit an agency's exercise" of discretion by "circumscribing an agency's power" or "provid[ing] guidelines for the agency to follow in exercising its" discretion, *id.*—precisely as Appellants argue Congress did here. Thus, this Court and other courts have recognized that, notwithstanding § 701(a)(2), courts remain available to ensure that agencies do not exercise their discretion "in a manner that is contrary to a statute." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008); *see also, e.g.*, *Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir. 2020) (when agencies exceed statutory bounds on their discretion, "courts are normally available to reestablish th[ose]

[7] Contrary to the Director's suggestion, none of the *NHK-Fintiv* factors is "peculiarly within [the PTO's] expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). In fact, the Board has proved distinctly bad at evaluating the second factor (regarding the proximity of the trial date to the deadline for a final written decision). *See* Appx1273-1275. For instance, the trial in the underlying *Fintiv* litigation has been yet again postponed, this time to an undetermined date. Order, *Fintiv, Inc. v. Apple Inc.*, No. 1:21-cv-00896-ADA (W.D. Tex. June 7, 2022), ECF No. 433.

limits”); *see also Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 326 (2014). Indeed, *Cuozzo* said both that institution decisions are “committed to [the PTO’s] discretion” and that APA review is available to ensure the PTO does not “act outside its statutory limits.” 579 U.S. at 273, 275.

The Director tries to recast (at 26-27, 30-31) the PTO’s action as agency inaction—*i.e.*, a mere decision not to institute IPR. That effort fails for several reasons. First, the Director again focuses on the wrong decision: this suit challenges the PTO’s adoption of the *NHK-Fintiv* rule—indisputably an affirmative agency action—not a particular decision not to institute IPR. *Cf. Mylan*, 989 F.3d at 1382 (“the Director is free, as in this case, to determine that for reasons of administrative efficiency an IPR will not be instituted, as agencies generally are free, for similar reasons, to choose not to initiate enforcement proceedings”). Second, even viewed as inaction, neither the rule nor an individual non-institution decision would be entirely free from judicial scrutiny. Contrary to the Director’s suggestion (at 26, 37), Appellants do not contend that the PTO would be “compelled” to institute an IPR, but only that the PTO is subject to—and the *NHK-Fintiv* rule violates—constraints on its discretion not to institute. As the Supreme Court has stressed, Congress can “limit” or “circumscrib[e]” not only an agency’s exercise of its affirmative discretion but also its “exercise of enforcement

power" and discretion not to act, and when Congress does so, the courts are available to enforce compliance with those limits. *Heckler*, 470 U.S. at 832-833.

Under the Director's expansive understanding of its unreviewable discretion, the Director could adopt—yet no court could review—a rule specifying that IPR petitions will be decided based on a coin flip or the patent challenger's race, or will be denied across the board without individualized consideration. *But see Judulang v. Holder*, 565 U.S. 42, 55 (2011) (if agency adopted policy of determining eligibility for discretionary immigration relief "by flipping a coin …, we would reverse the policy in an instant"). The Court should reject that view.

## CONCLUSION

The district court's order should be reversed and the case remanded.

Respectfully submitted,

/s/ John B. Sganga, Jr.
JOHN B. SGANGA, JR.
CHRISTY G. LEA
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

*Attorneys for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC*

/s/ Nathan K. Kelley
NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-3343

ANDREW T. DUFRESNE
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7492

*Attorneys for Plaintiff-Appellant Google LLC*

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

CATHERINE M.A. CARROLL
DAVID M. LEHN
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

ALYSON M. ZUREICK
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center,
250 Greenwich Street,
New York, NY 10007
(212) 230-8800

REBECCA M. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1002

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

June 10, 2022

## STATEMENT OF CONSENT

Pursuant to Federal Circuit Rule 32(g)(3)(B), the undersigned represents that counsel for Plaintiffs-Appellants Edwards Lifesciences Corporation and Edwards Lifesciences LLC and for Plaintiff-Appellant Google LLC have consented to their signatures on this Brief.

Dated: June 10, 2022

/s/ Mark D. Selwyn

MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 7,000 words.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400,
Palo Alto, CA 94306
(650) 858-6000

June 10, 2022